**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FELISHATAY ALVARADO | : | |
| Plaintiff | : | Civil Action No. 22-3763 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, *et al.* | : | |

**JOINT PRE-TRIAL MEMORANDUM**

The parties to this action — Plaintiff, Felishatay Alvarado ("Plaintiff" or "Ms. Alvarado"); Defendant, City of Philadelphia ("Defendant City of Philadelphia"); and individual Defendants, Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song (collectively, "the Individual SWAT Unit Officers") (Defendant City of Philadelphia and the Individual SWAT Unit Officers may collectively be referred to as "the Defendants") — through their respective counsel hereby submit this Joint Pre-Trial Memorandum.

**A.     JOINT STATEMENT OF THE NATURE OF THE ACTION AND JURISDICTION**

This civil action is brought under 42 U.S.C. § 1983, hence this Court has federal question jurisdiction under 28 U.S.C. § 1331. Venue is appropriate as all acts alleged in the complaint occurred within the Eastern District of Pennsylvania.

This lawsuit arises from a June 4, 2021, warrant enforcement that allegedly violated Plaintiff's Fourth Amendment rights.  Plaintiff alleges that on June 4, 2021, the Individual SWAT Unit Officers violently forced their entry into her apartment and committed a

warrantless search and seizure of her person and property, including the murder of service dog, and holding her as prisoner for about 30 minutes. The Defendants contend they were executing a search warrant of 4664 Torresdale Avenue, 2nd floor rear and that during the execution of the valid search warrant, they encountered Plaintiff when they mistakenly entered her first-floor apartment without a valid search warrant. The parties have different accounts of the events that took place before and after the Individual SWAT Unit Officers' entry into Plaintiff's apartment, both agree that the individual SWAT Unit Officers mistakenly entered Plaintiff's apartment without a search warrant for her residence while acting under the color of law.

The Court's Memorandum Order that ruled upon the Defendants' Motion for Summary Judgment held that Plaintiff's Fourth Amendment claims against the Individual SWAT Unit Officers may proceed to trial on three theories: "(1) that they unlawfully breached and entered her apartment by unreasonable mistake, (2) that they unlawfully failed to knock and announce before doing so, and (3) that they unlawfully detained her after realizing they were in the wrong unit." See the Court's Memorandum Order, dated, February 27, 2024, at 1. The Court also held that Plaintiff could pursue a potential Monell failure to adequately train claim against Defendant City of Philadelphia on two theories argued by Plaintiff the Individual SWAT Unit Officers': (1) mistaken entry into Ms. Alvarado's apartment and (2) their failure to knock and announce first. Id. The Court precluded Plaintiff from pursuing the Monell claim on the theory that the shooting of Ms. Alvarado's dog was the underlying constitutional violation. Id.

**B.     JOINT STATEMENT OF ISSUES TO BE TRIED**

1.     Whether the Individual SWAT Unit Officers' breach and entrance of Plaintiff's home was the result of an unreasonable mistake.

2.     Whether the Individual SWAT Unit Officers failed to knock and announce before doing so (unless the Court grant's Plaintiff's motion *in limine* concerning this issue).

3.     Whether the Individual SWAT Unit Officers unlawfully detained Plaintiff after realizing they were in the wrong unit.

4.     Whether Defendant Philadelphia failed to adequately train the Individual SWAT Unit Officers regarding warrant execution.

5.     Whether Defendant Philadelphia failed to adequately train the Individual SWAT Unit Officers regarding the Knock and Announce Rule.

6.     The extent of damages suffered by Plaintiff.

**C.     JOINT STATEMENT SUMMARIZING ANY CONTESTED ISSUES OF LAW AND PENDING MOTIONS**

 Plaintiff has filed three pending motions *in limine* and the Defendants have filed five motions *in limine*. The pending motions are summarized as follows:

**Plaintiff's Motions *In Limine***

1.     Plaintiff has filed a motion *in limine*, Doc. No. 48, requesting for the Court to instruct the jury that the Individual SWAT Unit Officers' actions prior to entering Plaintiff's home violated the Knock and Announce Rule.

2.     Plaintiff has filed a motion *in limine*, Doc. No. 52, to preclude the Defendants from challenging Plaintiff's deceased dog's status as a "service animal."

3.      Plaintiff has filed a motion *in limine*, Doc. No. 54, to preclude any reference to Plaintiff's work history.

**Defendants' Motions *In Limine***

1.      The Defendants have filed a motion *in limine*, Doc. No. 49, requesting for the Court to preclude any "evidence concerning employee disciplinary history, disciplinary investigations, or allegations of misconduct not related to the incident giving rise to this suit and the remaining claim."

2.      The Defendants have filed a motion *in limine*, Doc. No. 50, requesting for the Court to preclude any "evidence of Philadelphia Police Department's directives and policies irrelevant to Plaintiff's failure to train Monell claim."

3.      The Defendants have filed a motion *in limine*, Doc. No. 51, to preclude Plaintiff's proposed expert witness, Dr. Veronique Valliere, as an expert.

4.      The Defendants have filed a motion *in limine*, Doc. No. 53, to preclude the testimony and report of Plaintiff's expert witness, Glenn Garrels.

5.      The Defendants have filed a motion *in limine*, Doc. No. 55, to preclude any reference to the facts and circumstances immediately surrounding the shooting of Plaintiff's dog.

**D.      STIPULATIONS OF COUNSEL**

The Parties stipulate that the Individual SWAT Unit Officers were acting under the color of law when they mistakenly entered Plaintiff's apartment while executing a valid search warrant.

**E.     EACH PARTY'S BRIEF STATEMENT OF FACTS AND CONTENTIONS AS TO LIABILITY**

**Plaintiff's Statement**

1.      On the morning of June 4, 2021, Ms. Alvarado resided by herself with two dogs and some other pets in Apartment #1, which was located on the ground floor / Torresdale Avenue side of the apartment building that has a mailing address of 4664 Torresdale Avenue, Philadelphia, PA 19124.

2.      Ms. Alvarado was 31 years old at the time and had woken up at around 5:00 AM to get ready for work.

3.      Although Ms. Alvarado was on disability due to the lingering effects of a childhood illness, and an anxiety condition that was precipitated by the death of her mother, she had recently taken steps to obtain more independence by taking a job sorting items at a local warehouse.

4.      She had also obtained her beloved dog, Akuma, which was a registered service animal, to help treat her anxiety condition.

5.      Ms. Alvarado has never had any legal trouble of any kind in her life and was "a peace-loving, introverted, simple individual who had made a life for herself with a chronic disorder and difficulties with learning."

6.      Suddenly, at approximately 5:30 AM,the Individual SWAT Unit Officers rammed down Ms. Alvarado's front door, summarily executed Akuma, ransacked her home, and held her hostage at gunpoint for approximately 30 minutes.

7.      Getting ready for her new job, Ms. Alvarado had recently gotten out of the shower and was nude except for a towel.

8.      Ms. Alvarado testified that the Individual SWAT Unit Officers did not knock before breaking open her door with a ram.

9.      Ms. Alvarado's testimony is consistent with the objective evidence. Video evidence captured by a neighboring deli incontrovertibly shows that the Individual SWAT Unit Defendants began ramming Ms. Alvarado's front door almost immediately after arriving on the scene. Officer Clark was the SWAT Unit Officer who rammed Ms. Alvarado's front door open. When Officer Clark was deposed and viewed the video, he claimed that it looked to him like Officer Murray knocked on the door with a Halligan tool "at most [ . . .] about seven seconds" before Officer Clark rammed Ms. Alvarado's door open, which he said "complie[d] with the knock and announce rule [ . . .] pursuant to [the] training [he had] received from the Philadelphia Police Department." But even if Officer Clark's interpretation of the video is accurate, a mere seven second pause in a case such as this, with absolutely no exigent circumstances, is a clear violation of the Knock and Announce Rule.

10.      Further, Officer Murray has never claimed to have knocked on the door, and the video is at best ambiguous, thus a reasonable juror could easily conclude that no knock and announce was performed whatsoever.

11.      It is also clear that the Individual SWAT Unit Officers violated Philadelphia Police Department Directive 5.7, titled "Search Warrants," which under a subpart titled, "Knock and Announce Rule," reads:

The courts have not precisely and uniformly determined the exact period of time that can be considered "reasonable." However, recent court decisions have shown that ***30 seconds should be the minimum time police personnel should delay their entry into a property after announcing their presence and purpose.***

12.     When deposed in this case, each of the Individual SWAT Unit Officers conceded that their actions were not in any part the result of any "exigent circumstances."

13.     The Individual SWAT Unit Officers did have a warrant to enter Ms. Alvarado's residence.

14.     Rather, they had obtained a search warrant for the "2nd floor rear" apartment of the apartment building, which allegedly belonged to a criminal suspect ("the Arrestee") who had no connection to Plaintiff.

15.     The affidavit affixed to the search warrant stated that the "2nd floor rear" apartment address for the Arrestee was obtained from the Arrestee's probation officer.

16.     Thus, it was completely unreasonable for the Defendants to have failed to ask the Arrestee's probation officer how to access the apartment, especially since the Arrestee had been on house arrest.

17.     If the Defendants had simply asked the Arrestee's probation officer how the "2nd floor rear" apartment was entered, she would easily have been able to inform them that the only entrance to the Arrestee's apartment was through the "rear" door on the *cul-de-sac* off Margaret Street, as was memorialized in multiple places within the Arrestee's probation records.

18.     In theory, Sgt. Mellody and Officer Clark conducted "reconnaissance" before the SWAT Unit attempted to enforce the search warrant for the "2nd floor rear" apartment by breaking down the front door to Ms. Alvarado's first-floor apartment, but this supposed reconnaissance did not even include learning whether the Arrestee was on probation, which Sgt. Mellody said was consistent with his training.

19.     Of course, as part of the probation process, the probation office had conducted a physical examination of the Arrestee's residence and therefore knew how to physically enter the "second floor rear" apartment.

20.     In fact, the "reconnaissance" was so bad in this case that the Defendants did not even know that the apartment building had a rear door.

21.     Even so, it should have been obvious from a basic visual examination of the building that Ms. Alvarado's front door — which led into a portion of the building that was obviously only one-story tall — did not lead to a "rear second floor" apartment.

22.     As Officer Saba admitted when he was deposed in this case, even a cursory, visual review of the subject building would have shown that the front door to Ms. Alvarado's apartment was not the entrance to the "2nd floor rear" apartment to which the warrant applied.

23.     Besides these unreasonable oversights — such as failing to ask the parole officer how to access the unit, failing to look for a rear door when the word "rear" was in the warrant, and failing to notice that Ms. Alvarado's front door obviously led directly into a first-floor apartment — Plaintiff's well-qualified expert, Glenn Garrels, documented in his report a seemingly-endless list of obviously incompetent decisions or oversights by the

Defendants, and even more damagingly a complete lack of training by the Philadelphia Police Department.

24.     As Mr. Garrels — a retired Lieutenant with the New Jersey State Police — notes, a simple Google Earth search would have revealed that from the overhead view, it was obvious that the Torresdale Avenue door led directly into a portion of the building that was only one-story tall, whereas the door on the *cul-de-sac* off Margaret Street led to the second-floor area.

25.     Further, a directive of the Philadelphia Police Department required that "the executing officer have no doubt as to who or what can be seized and where they may be found," which was plainly violated in this case because all of the Individual SWAT Unit Officers admitted that they did not know where Ms. Alvarado's front door led to.

26.     Indeed, Sgt. Mellody admitted that he could have contacted the property manager or reviewed property records, but he simply declined to do so.

27.     The Defendants have offered no excuse for taking these reckless shortcuts, when they knew there was at least *uncertainty* whether breaching Ms. Alvarado's front door was permissible.

28.     While the Individual SWAT Unit Officers should be held individually liable for their unreasonable conduct, their gross incompetence also resulted from an almost complete failure by Defendant Philadelphia to train them.

29.     After illegally bursting into Ms. Alvarado's apartment without knocking and announcing themselves, the Individual SWAT Unit Officers then set about terrorizing Ms. Alvarado and destroying her property.

30.     Less than eight seconds after Ms. Alvarado's front door was breached, Officer Song shot Ms. Alvarado's service dog, Akuna, in the head.

31.     The Individual SWAT Unit Officers then proceeded to tear Ms. Alvarado's apartment apart, "ripping the curtains" and generally turning her property over.

32.     Then, for about "half an hour," Ms. Alvarado was held prisoner in her apartment, forced at gunpoint to lie face-down on her floor virtually nude.

33.     This illegal search and seizure of Ms. Alvarado's person, home, and property continued despite the fact that the Individual SWAT Unit Officers realized that they were in the wrong apartment almost immediately after breaking Ms. Alvardo's front door, and knew that they were not legally allowed to be in Ms. Alavarado's first-floor apartment.

**Defendants' Statement**

In the evening of June 3, 2024, the Homicide Unit then provided two signed warrants to the Philadelphia Police Department's SWAT Unit for execution. SWAT officers engaged in reconnaissance to determine the external layout of the property, and what teams, officer placement, and tools were required to execute the warrants. Based on the reconnaissance, training, and experience, the Officers reasonably determined that the internal layout of the property likely was that the marked door facing Torresdale Avenue likely led to a communal area where two internal doors would lead to the separate apartments.

The next morning, the SWAT team briefed the execution of the warrant before heading to the location. Upon approach to the front door, the Officers knocked and announced and waited. Expecting the door to lead to a common area, a breach was ordered. Upon entry to the premises, Officer Song was faced with an aggressive Pitbull that he ultimately shot after

being bitten and in fear of additional aggression.[1] Other SWAT officers interacted with Plaintiff regarding access to the second floor, while the remaining members of the entry team finished a protective sweep of the premises to confirm Plaintiff's indication that the second-floor access was through the back of the building. Once the information was confirmed, all but one officer left Ms. Alvarado's apartment. This officer remained in the property to hold the scene. Defense disputes that Ms. Alvarado was seized for 30 minutes and that she was not fully dressed while the property was held.

Defense disputes the allegation that Ms. Alvarado's Fourth Amendment rights were violated, specifically that it was an unreasonable entry and that the knock and announce rule was violated per the Supreme Court's reasonableness standard. Defense further disputes Plaintiff's notion that Ms. Alvarado was held at gun point for over thirty minutes. Finally, Defense disputes the allegation that the City of Philadelphia is liable on a failure to train theory of liability.

F.    DAMAGES

Plaintiff seeks compensatory damages in an amount determined to be just, fair, and reasonable, along with punitive damages. No loss of wage claim is asserted. Plaintiff had to spend monies and time, also, in cleaning up her apartment and deposing of her dead dog.

Defendants have not brought a counterclaim against Plaintiff.

G.    WITNESS LIST

Plaintiff intends to call the following witnesses at the time of trial of this matter:

---

[1] Defendants do not expand on this portion of the day due to the Court's ruling on summary judgment and the pending Motions.

1. Felishatay Alvarado
2. Yara Alvarado
3. Robert Willis, LCSW
4. Veronique Valliere, Psy.D.
5. Glenn Garrels
6. P/O James Ashford
7. P/O Joshua Burkitt
8. Det Michael Cerruti
9. P/O Eric Clark
10. P/O Matthew Fitzpatrick
11.  Det Francis Graf
12. P/O Jose Hamoy
13. Probation/Parole Jaclyn Matteo-Hand
14. Sgt Kevin Mellody
15. Lt. Demetrius Monk
16. P/O Brian Murray
17. P/O Heriberto Quintana
18. P/O Philip Riotto
19. P/O Miguel Rivera
20. P/O Patrick Saba
21. Det Timothy Scally
22. P/O Cyprian Scott
23. Probation/Parole Dana Shannon
34. P/O Edward Song

Plaintiff reserves the right to supplement this list up to and including the time of trial of this matter.

Defendant's witness list is as follows:

1. Named defendants
   a. P/O Jashua Burkitt
   b. P/O Eric Clark
   c. P/O Hose Hamoy
   d. Sgt. Kevin Mellody
   e. Lt. Demetrius Monk
   f. P/O Brian Murray
   g. P/O Patrick Saba
   h. P/O Edward Song
2. Yara Alvarado
3. John Ross, PLEAC
4. Det. Francis Graf
5. Det. Timothy Scally

Defendants reserve the right to supplement this list up to and including the time of trial of this matter.

## H. Deposition Identifications

Plaintiff's do not intend to offer any deposition testimony in their case-in-chief.

Defendants do not intend to offer any deposition testimony in their case-in-chief.

## H.     PLAINTIFF EXHIBIT LIST

Plaintiff intends to introduce the following documents into evidence at the time of trial of this matter.

1.     Defendant PPD PCD Docs produced 07/29/22 BS D000001 to D000010

|  | |
|---|---|
| Use of Force/Hospital Case Summary | D000001 |
| Warrant of Arrest | D000002 |
| Officer Involved Shooting Final Report OISI PS21-05 | D000003 |

2.     Defendant City Answer to Plaintiff's Interrogatories & Requests for Production of Documents 03/10/23

3.     Defendant PO Song Answer to Plaintiff's Interrogatories & Requests for Production of Documents 03/10/23

|  | |
|---|---|
| Office Involved Shooting Invest Unit Summary Of Incident | D000011 |
| Complaint or Incident Report         DC#4-15-040715 | D000012 |
| Complaint or Incident Report DC#21-15-40680 | D000013 |
| Criminal Complaint - Homicide DC#21-15-037016 | D000014 |
| Warrant of Arrest | D000015 |
| Affidavit of Probable Cause (redacted) | D000016 |
| Consent to Search DC#2021-15-040680 | D000019 |
| Crime Scene Log | D000020 |
| Crime Scene Information | D000021 |
| Investigation Interview P/O Burkitt Badge #2091 | D000022 |
| Investigation Interview P/O Ashford Badge #3802 | D000024 |
| Investigation Interview P/O Scott Badge #6689 | D000026 |
| Investigation Interview P/O Murray Badge #6068 | D000029 |
| Investigation Interview P/O Riotto Badge #3984 | D000032 |

| | |
|---|---|
| Investigation Interview Sgt Mellody Badge #285 | D000035 |
| Investigation Interview P/O Smith Badge #2016 | D000036 |
| Investigation Interview P/O Clark Badge #4453 | D000041 |
| Investigation Interview Lt. Monk Badge#279 | D000043 |
| Civilian Interview OISI# | D000046 |
| Investigation Interview P/O Rivera Badge #6797 | D000047 |
| Investigation Interview Record Police Personnel P/O Saba Badge #9823 | D000049 |
| Investigation Interview P/O Hamoy Badge#2984 | D000051 |
| Investigation Interview P/O Fitzpatrick Badge#1565 | D000052 |
| Investigation Interview P/O Quintana Badge#2721 | D000055 |
| Property Receipt from Edward Song#3936 | D000056 |
| Application for Search Warrant #242513 (redacted) | D000058 |
| Statement of Sgt. Mellody Badge#285 7.12.21 | D000061 |
| Statement of Det Scally Badge #791 6.17.21 | D000065 |
| Statement of Det. Graf Badge#9066 6.17.21 | D000068 |
| SWAT Unit Recon Sheet | D000072 |
| Google map of area | D000074 |
| Photo of target | D000075 |
| Phila Police Department Event #121718532 (redacted) | D000076 |
| City of Philadelphia Firearms Identification Unit Laboratory Report | D000077 |
| ML#21-0435 | D000079 |
| Color Photographs crime scene | D000080 |
| Complaint or Incident Report DC#21-15-040715 | D000101 |
| Stray Contract June 4, 2021 ACCT Philly | D000102 |
| Stray Surrender Document | D000103 |
| Officer Involved Shooting Investigation (handwritten) DC#21-15-040680 PS#21-5 | D000105 |
| Officer Involved Shooting Investigation (handwritten) PS#21-5 Scene Notes | D000106 |
| Diagram of apt | D000109 |
| Memorandum 1.03.23 from IAD | D000110 |
| Office Involved Shooting Incident Investigation Unit Summary (appears to be duplicate of D000001) | D000121 |
| Phila Police Dept Case Report DC21-15-040680 | D000123 |
| IAD PS#21-05 Statement of Edward Song Badge#3936 | D000125 |

Song's Hand drawn diagram
    D000131
Firearms Identification Unit Laboratory Report (duplicate?)
    D000132
Property Receipt from Crime Scene Receipt #9030452   D000134
Crime Scene Unit Service Report CSU 21-0435      D000135
Diagram apartment                        D000137
Thumbdrive photos of crime scene
    D000138
Complaint or Incident Report DC#21-15-40822     D000139
Phila PD Incident History (barely legible, parts redacted)D000140
Text message concerning property damage from
    Jason Hendershot to prop owner            D000144
Memorandum IAD 6.11.21 Discharge of Firearm    D000145

4.      Defendant City 4.12.23 response to Plaintiff 4.05.23 discovery deficiencies:

Video of Ring.com footage of dog dead in middle of living room floor 20 sec 04/12/23

### ***CONFIDENTIAL DOCUMENTS PRODUCED 4/19/23***

Warrant of Arrest Com#COM-0002831-2021 (duplicate) D000146
Affidavit of Probable Cause (duplicate)         D000147
Criminal Complaint (duplicate)              D000150
Application for Search Warrant
 (duplicate and **unredacted version**)
D000151

5.      Defendant City 5.05.23 response to Plaintiff correspondence discovery deficiencies.

### ***DOCUMENTS PRODUCED 5/05/23***

Philadelphia Police Directives

**5.7 Search Warrants       Policy Index**
D000154

1.     Policy Updated 7.13.16           D000155
2.     Purpose of Search Warrant        D000155
3.     Procedure for Obtaining Search Warrant (75-175)
D000156

4.      Particularity of the Search Warrant      D000157

5.      Information Obtained from Informants
          Or Third Parties      D000160

6.      Procedure for the Execution of the Search Warrant
D000161

7.      Preparation of Complaint or Incident Report (75-48)
D000164

8.      Distribution of Search Warrant (75-175) and
          Complaint or Incident Report (75-48)      D000165

9.      Search Warrant Control Log (75-390)      D000166

10.    Acquisition and Distribution of the 75-175      D000166

11.    Arrests in Private Residences
D000166

12.    Consent to Search      D000168

13.    Requirements for a Consent to Search      D000169

14.    Scope of Consent to Search      D000170

15.    Procedure for Conducting A Consent Search
D000171

16.    Seizure of Property      D000172

17.    No Seizure of Property      D000172

18.    Search and Seizure of Luggage      D000173

19.    Investigation Report (75-49)      D000174

20.    English/Spanish Consent to Search Forms
D000175

21.    Strip and Body Cavity Searches      D000176

22.    Strip and Search Guidelines      D000178

23.    Body Cavity Search Guidelines      D000179

24.    Strip/Body Cavity Search Procedure
D000180

25.    Distribution of Search (75-48 (Strip/Body
          Cavity Searches)      D000183

26.    Search Warrant Tracking      D000183

27.    Obtaining Warrants from the Police Warehouse      D000185

28.    Distributing Individual Warrants      D000186

29.    Updating Search Warrants      D000186

30.    Internal Affairs Responsibilities      D000187

31.    Reports Control Responsibilities      D000187

        Consent to Search Forms      D000189

**8.6 Disciplinary Procedure (issued 5.01.10)**      D000194

1.      Policy      D000194

2.      Investigation and Reports - Criminal Offences      D000194

3.      Investigations Forwarded to Police Board

                     Of Inquiry Charging Unit              D000195
          4.      Formal Disciplinary Process: Guilty Plea
                     Not Guilty Plea or Commissioners
                     Direct Action                         D000198
          5.      Police Department Employees Arrested
                     Out of Town                           D000199
          6.      Disciplinary Process for Detailed Personnel
D000200
          7.      Outstanding Disciplinary Charges          D000200


          **8.6 Appendix "A" Command Level Discipline
             (issued 5.01.10)**                            D000201

          1.      Policy                                    D000201
          2.      Procedure                                 D000201

          **8.6 Appendix "B" Notice of Suspension with Intent
             To Dismiss (issued 5.01.10)**
                     D000204

          1.      Policy                                    D000202
          2.      Procedure                                 D000202


          Notice of Intention to Dismiss Form
D000203
          Notice of Dismissal form                          D000204
          Rejection Notice During Probationary Period form
D000205
          Firearms Training Unit DFA Information Sheet
                     P/O Edward Song dated 6.09.21
                     Sig Sauer M400 Rifle                   D000206
          Officer Involved Shooting Investigation Unit
                     Summary of Incident (duplicate)        D000207
          Firearms Training Unit P/O Song                   D000212
          Memorandum 6.11.21 POST Discharge of Firearms
                     Training PS#21-05 P/O Song #3936        D000213
          Memorandum 6.10.21 POST - Use of Force Scenario
                     Training                                D000214
          Firearms Training Unit Policy #8 Procedure for the
                     Handling of Officers Involved in Discharge of
                     Firearms (DFA)                          D000215


          **Police Directive 10.1 - 17**

9.    Discharges Involving Animals                    D000217
10.   Release of Information Regarding Officer
          Involved Shootings (OIS)                    D000219


### ***CONFIDENTIAL DOCUMENTS***

SOP#18 (revised 2.14.20) SWAT UNIT
      ROOM CLEARING TECHNIQUES              D000220
SOP#26 SWAT UNIT OPERATIONAL PLANNING   D000223
SOP#28 (revised 4.11.19) SWAT UNIT
      RECONNAISSANCE AND INTELLIGENCE  D000226
SOP#30 SWAT UNIT WARRANT THREAT LEVEL
      GUIDELINES                                    D000229
SOP#31 (revised 10/20/22) SWAT UNIT
      WARRANT SERVICE                      D000230
SOP#36 SWAT UNIT DOG NEUTRALIZING POLICY      D000233
      1(a)(1)

Surveillance Video Produced

A09_20210604053500_001.mp4
A09_20210604053500.mp4
A10_20210604053500_001.mp4
A10_20210604053500_002.mp4
A10_20210604053500.mp4

Body Cam footage of PPD Interview with Plaintiff at Scene


Axon_Capture_Video_2021-06-04_070917.mp4
Axon_Capture_Video_2021-06-04_071356.mp4
Axon_Capture_Video_2021-06-04_072135.mp4

Call logs:

Desk Calls
Radio Transmissions
Straight Run


6.    Additional Documents provided by Defendants via email ***May 12, 2023***

Dog Encounters      D000235
     B. Tools      D000238
     C. Pit Bulls and Large Dogs      D000238
     On this page is a reference to Directive 10.1
     Discharge of Firearms and Directive 10.2 & 10.3
     Use of Force
     D. Protecting Yourself

D000239

     10.28.21 Correspondence to Commissioner Outlaw
     D000242
         From Law Enforcement Accreditation Commission
         For Re-Accreditation on 10/26/21
         (does not specify what the re-accreditation is for)


7.     Additional Documents provided by Defendants via email ***May 19, 2023***

     Swat Unit Recon Sheet      D000244
     Swat Unit Service Report      D000246
     Photos of Front of Alvarado's Apartment      D000248


8.     Additional Documents provided by Defendants via email ***August 15, 2023***

     Internal Affairs Files      D000250


9.     Plaintiff's response to Defendant's Interrogatories & Requests for Production of Documents 04/20/23 BS PLTF000001 - PLTF000010

     Akuma's ACCT Philly Kennel Card      PLTF000011
     ACCT Philly Buddy Intake Date 06/04/21      PLTF000012
     All Pets Cemetery      PLTF000013
     Dutton Road Veterinary Invoice Date 06/04/21      PLTF000014
     Dutton Road Veterinary Invoice Date 06/09/21      PLTF000016
     Dr. Welch Ltrs of Approval for ESA      PLTF000017
     GPHA Medical Records      PLTF000020
     GPHA Itemized Billing      PLTF000037


10.     Transcript of Deposition of Alvarado, Felishatay w/Exhibits
11.     Transcript of Deposition of Alvarado, Yara w/Exhibits
12.     Transcript of Deposition of P/O James Ashford w/Exhibits
13.     Transcript of Deposition of P/O Burkitt, Joshua w/Exhibits
14.     Transcript of Deposition of Det Cerruti, Michael w/Exhibits
15.     Transcript of Deposition of P/O Clark, Eric
16.     Transcript of Deposition of P/O Fitzpatrick, Matthew

17. Transcript of Deposition of Det Graf, Francis w/Exhibits
18. Transcript of Deposition of P/O Hamoy, Jose w/Exhibits
19. Transcript of Deposition of Probation/Parole Matteo-Hand, Jaclyn w/Exhibits
20. Transcript of Deposition of Sgt Mellody, Kevin w/Exhibits
21. Transcript of Deposition of Lt. Monk, Demetrius w/Exhibits
22. Transcript of Deposition of P/O Murray, Brian w/Exhibits
23. Transcript of Deposition of P/O Quintana, Heriberto
24. Transcript of Deposition of P/O Riotto, Phillip w/Exhibits
25. Transcript of Deposition of P/O Rivera, Miguel w/Exhibits
26. Transcript of Deposition of P/O Saba, Patrick
27. Transcript of Deposition of Det Scally, Timothy w/Exhibits
28. Transcript of Deposition of P/O Scott, Cyprian w/Exhibits
29. Transcript of Deposition of Probation/Parole Shannon, Dana PO
30. Transcript of Deposition of P/O Song, Edward
31. Client File Notes received from Probation/Parole Officer Dana Shannon regarding Bernard Lee
32. Adult Probation/Pre Trial Services Home Investigation Interview dated September 25, 2023 - Bernard Lee
33. All pleadings and responses thereto filed in this matter
34. All discovery exchanged by all parties to this matter
35. Expert Report and Curriculum Vitae of Plaintiff's Expert Glenn Garrels
36. Expert Report and Curriculum Vitae of Plaintiff's Expert Veronique Valliere
37. Social Security Administration Records regarding Plaintiff Felishatay Alvarado
38. Joint Rule 26 Conference Memorandum
39. PreTrial Conference Memorandums exchange and/or filed by any party to this matter
40. Photographs and videos of Plaintiff and her beloved dog
41. Any exhibits identified by defendants

Plaintiff reserves the right to supplement this list up to and including the time of trial of this matter.

I.  **DEFENSE'S EXHIBIT LIST**
   **Exhibit 1a:** QUIST Training Legend, D337-420
   **Exhibit 1b:** QUIST Trainings, Edward Song, D425-447
   **Exhibit 1c:** QUIST Trainings, Kevin Mellody. D457-65
   **Exhibit 1d:** QUIST Trainings, Patrick Saba, D475-83
   **Exhibit 1e:** QUIST Trainings, Jose Hamoy, D484-89
   **Exhibit 1f:** QUIST Trainings, Joshua Burkitt, D527-29
   **Exhibit 1g:** QUIST Trainings, Brian Murray, D556-62
   **Exhibit 1h:** QUIST Trainings, Demetrius Monk, D587-605
   **Exhibit 1i:** QUIST Trainings, Eric Clark, D606-610
   **Exhibit 2:** Video, Deli Video facing Torresdale Ave: A10_20210604053500

**Exhibit 3:** Video, Deli Video facing Breezeway: A09_20210604053500

**Exhibit 4:** Video, OISI Interview 1 (proposed redaction to be provided pursuant to pending MILs): Axon_Capture_Video_2021-06-04_070917

**Exhibit 5:** Video, OISI Interview 2 (proposed redaction to be provided pursuant to pending MILs): Axon_Capture_Video_2021-06-04_071356

**Exhibit 6:** Video, OISI Interview 3 (proposed redaction to be provided pursuant to pending MILs): Axon_Capture_Video_2021-06-04_072135

**Exhibit 7:** PLEAC Accreditation Letter, D242

**Exhibit 8:** PLEAC 2019 Standard

**Exhibit 9:** Signed Warrants, D146-153

**Exhibit 10:** Consent to Search, D019 (Redacted pursuant to pending MILs)

**Exhibit 11:** SWAT Recon Sheet, D244-45

**Exhibit 12:** SWAT Debrief, D246-47

**Exhibit 13:** Scene Photos, D80-86, D94-99

**Exhibit 14:** 75-48, Investigate Premises, D139 (Redacted pursuant to pending MILs)

**Exhibit 15:** Text message with landlord re: door, D139

**Exhibit 16:** PPD Directive 5.7, D154-172 (Redacted from start of section 16 through end of page)

**Exhibit 17:** PPD SWAT Standard Operating Procedures, D220-232

**Exhibit 18**[2]**:** Dog ACCT, Kennel Card; one page, provided by Plaintiff not Bates Stamped

**Exhibit 19:** Dog ACCT 6/4/21 forms; two pages, provided by Plaintiff not Bates Stamped

**Exhibit 20:** Dog Bills/invoices: three pages, provided by Plaintiff not Bates Stamped

**Exhibit 21:** ESA Letters; three pages, provided by Plaintiff not Bates Stamped

## J.  WITNESS IDENTIFICATION AND OBJECTION TO EXHIBITS

The parties' counsel will meet and confer.

Defense objects to certain exhibits. *See* Exhibit A. Defense requests the opportunity to meet and confer with Plaintiff's counsel after this Honorable Court rules on the pending motions to see if agreements can be made.

The Parties acknowledge each other's proposed witness list as outlined herein. The Parties agree to communicate at the conclusion of each day of trial a proposed witness list for the following day; thereby allowing any objections that need court intervention to be heard in the morning prior to the jury's attendance.

---

[2] Defense Exhibits 18-21 are included for completeness; however, Defense has pending motions to preclude this evidence. Inclusion of these exhibits is not intended to indicate a waiver of these pending motions.

As to objections, the Parties intend to comply with a modified version of the Court's recommended way to resolve objections as outlined in the Court's policies and procedures, section 13. The agreement is as follows:

> In cases with a compact record and fewer disputes, counsel has exchanged objections, met and conferred, and shall seek resolution from the Court during the pretrial conference. The parties understand that the party advancing the objection is responsible for providing the Court with the necessary exhibits, highlighted deposition transcripts, or other information necessary to rule.

**K.      VOIR DIRE**

The joint list of names to be screened are as follows:

1. Plaintiff's counsel: David Thiruselvam and Keith West
2. Plaintiff: Felishatay Alvarado
3. Defense counsel: Jonah Santiago-Pagán and Emily Hoff
4. Individual Defendants: SWAT Unit Officers Joshua Burkitt, Eric Clark, Jose Hamoy, Brian Murray, Patrick Saba, Edward Song; Sgt. Kevin Mellody; and Lt. Demetrius Monk
5. Witnesses:
   a. Yara Alvarado
   b. Robert Willis, LCSW
   c. Veronique Valliere, Psy.D.
   d. Glenn Garrels
   e. P/O James Ashford
   f. Det Michael Cerruti
   g. P/O Matthew Fitzpatrick
   h. Detective Francis Graf
   i. Probation/Parole Officer Jaclyn Matteo-Hand
   j. P/O Heriberto Quintana
   k. P/O Philip Riotto
   l. P/O Miguel Rivera
   m. P/O John Ross
   n. Det Timothy Scally
   o. P/O Cyprian Scott
   p. Probation/Parole Officer Dana Shannon

**Plaintiff's Proposed Voir Dire**

1.   **General Description of the Case**:[3] This is a civil rights case.  The Defendants in this case are the City of Philadelphia and several members of the Philadelphia Police Department's SWAT Unit.  Pursuant to the Fourth Amendment of the United States Constitution, it is generally illegal for members of the government, such as the Defendants, to enter the private home of a citizen, destroy the citizen's property, or hold the citizen as a prisoner unless the government has a warrant.  In this case, the plaintiff, Felishatay Alvarado, alleges that the Defendants broke into her home, destroyed her property, and held her prisoner even though they did not have a warrant and did not even suspect her of having committed a crime.  The Defendants admit that they did not have a warrant to enter Felishatay Alvarado's home and did not suspect her of any wrongdoing, but they claim that their actions were a mistake. This case will require you decide whether the SWAT Officers' mistaken actions were reasonable and whether the City of Philadelphia properly trained the SWAT Officers.

2.   **The Attorneys**

Plaintiff is represented by David Thiruselvam and Keith West of the Victims' Recovery Law Center.

The Defendants are represented by Jonah Santiago-Pagan and Emily Hoff of the City of Philadelphia Law Department.

Is anyone familiar with any of these attorneys or the law firm of the Victims' Recovery Law Center?  Has anyone ever worked for the City of Philadelphia or had any friend or family member who was ever employed by the City of Philadelphia?

3.   **The Witnesses**

---

[3] Defendants object to Plaintiff's proposed general description of the case and to the reading of Plaintiff's description of the case to the jury. Defendants request the Court use the Joint Statement for reference.

The following individual are expected to testify.  Please raise your hand if you are familiar with any of them:

1.      Felishatay Alvarado
2.      Yara Alvarado
3.      Robert Willis, LCSW
4.      Veronique Valliere, Psy.D.
5.      Glenn Garrels
6.      P/O James Ashford
7.      P/O Joshua Burkitt
8.      Det Michael Cerruti
9.      P/O Eric Clark
10.     P/O Matthew Fitzpatrick
11.     Det Francis Graf
12.     P/O Hose Hamoy
13.     Probation/Parole Officer Jaclyn Matteo-Hand
14.     Sgt Kevin Mellody
15.     Lt. Demetrius Monk
16.     P/O Brian Murray
17.     P/O Heriberto Quintana
18.     P/O Philip Riotto
19.     P/O Miguel Rivera
20.     P/O Patrick Saba
21.     Det Timothy Scally
22.     P/O Cyprian Scott
23.     Probation/Parole Officer Dana Shannon
34.     P/O Edward Song

4.      **Nature of the Claim**

1.      As noted this is a civil rights case.  Has anybody ever been a plaintiff in a case where they sued a member of the government or claimed a civil rights violation?

2.      Has anybody ever been a defendant in a lawsuit?

3.      Has anybody or an immediate member of your family or close friend ever worked a security company or law enforcement agency?

4.      Has anybody or an immediate member of your family or close friend ever worked for the government?

5.      Have any of you or members of your immediate family been a party or witness in any litigation (excluding domestic relations, traffic, or probate)?

6.      The sums of money to be discussed and at issue are potentially substantial. Is

there anybody who will have difficulty awarding a large sum of money if the facts as applied to the law as later explained by the Court require an award of that sum?[4]

### 5.    Following Court Instructions/Hardships

7.     At the conclusion of the case the Court will explain the applicable law. Is there anybody who would not be able to apply those instructions if they disagreed with what they believe the law should be?

8.     This trial is expected to last for about a week. Is there anything about the length or scheduling of the trial that would interfere with your ability to serve?

9.     Do you have any medical, personal or financial problem that would prevent you from serving on this jury?

10.     If selected as a juror, would any of you have trouble rendering a verdict based solely on the evidence presented during the trial, setting aside any personal beliefs, opinions, or biases you might have?

11.     Based on what I have told you, is there anything about this case or the nature of the claim itself, that would interfere with your ability to be fair and impartial and to apply the law as instructed by the court?

**Defendants' Proposed Voir Dire**

In addition to the standard voir dire questions – civil set forth in the Bench Book for U.S. District Judges prepared by the Federal Judicial Center, March 2013 Edition, BBUSDISJUD § 6.05, Defendants request the following supplemental questions be asked during voir dire:

1.     Do you have any difficulty with your hearing or sight that will make it difficult to sit on this jury?
2.     Do you have any health problems that would make it difficult for you to sit on this jury?
3.     Where are you employed and what is the nature of your occupation?
4.     Where is your spouse employed and what is the nature of his/her occupation?
5.     Have you or any close members of your family practiced or studied law?
6.     Have you or any close members of your family ever been employed in law enforcement or armed security?

---

[4] Defendants object to the inclusion of "large sum" in Plaintiff's proposed voir dire question.

7.      Have you ever served on a jury before? Was it a civil case or a criminal case? Would that experience influence your considerations in this case? Did you reach a verdict?

8.      Have you ever been a Plaintiff (party suing) or a Defendant (party sued) in a civil action? If so, when, where, and what type of case? Would that experience influence your consideration in this case?

9.      Do you know any party to this action, the attorneys representing the parties or the law firm representing the parties?

10.     The individual defendants in this civil action are SWAT Unit police officers. Are you more or less likely to believe the testimony of a police officer simply because of his status as a police officer?

11.     Have you formed an opinion or feeling that would make it difficult for you to decide this case in favor of Defendant individual SWAT Unit officers, if the evidence justified a verdict in their favor?

12.     Have you formed an opinion or feeling that would make it difficult for you to decide this case in favor of Defendant City of Philadelphia, if the evidence justified a verdict in its favor?

12.     Has your property or the property of someone close to you ever been subjected to a search warrant?

      a.      Approximately how long ago did the incident occur?

      b.      Do you believe it would influence your ability to be fair and impartial?

13.     Has your property or the property of someone close to you ever been subjected to a mistaken search warrant?

      a.      Approximately how long ago did the incident occur?

      b.      Do you believe it would influence your ability to be fair and impartial?

14.     Have you or anyone close to you ever resided in a multi unit building?

15.     Do you believe that the Plaintiff, Ms. Alvardo, has a right to recover damages or money from the individual SWAT Unit officer Defendants or the Defendant the City of Philadelphia simply because she has brought a lawsuit and alleges, she was injured by the actions of the Defendants?

16.     Do you believe that the Plaintiff has a right to recover damages or money from the Defendants simply because she has brought a lawsuit that has reached the trial stage?

17.     Do you believe that a plaintiff has a right to recover damages or money from the City of Philadelphia simply because he or she has brought a lawsuit and alleges injuries?

18.     Do you believe that the Defendants, the individual SWAT Unit Officers and City of Philadelphia should be held liable just because they have been named as a defendant in this lawsuit?

The following Defendants voir dire questions have been included for completeness pending the Court's decision on Defendants' pending motion *in limine*:

This case involves the lawful dispatch of a dog, do you believe the death of an animal will influence your ability to be fair and impartial?

Do you believe that you can set aside the lawful dispatch of an animal aside and base your decision and verdict based solely on the facts relevant to liability before addressing damages?

**L.     ESTIMATED NUMBER OF TRIAL DAYS**

The Court *sua sponte* entered an Order, Doc. No. 47, that there will be a 5-day trial beginning on September 23, 2024, and that is timed trial, with 12 hours per side. Plaintiff had previously requested two weeks, which had previously been granted.

Defendants believe five days shall be sufficient to complete the trial.  Defendants requested a one-week trial at the March 4, 2024, case management video conference.

**M.     WHETHER THE TRIAL SHOULD BE TIMED**

Plaintiff worries that 12 hours may not be enough time to present her case.

Defendants believe the trial need be timed and believe a 5-day trial allocating 12 hours to each side is appropriate and in the interest of justice and judicial economy.

> **Respectfully submitted,**
>
> **/s/ Keith West____**
> **Keith West, Esquire**
> **VICTIMS' RECOVERY LAW CENTER**
> **PA Attorney ID No. 317426**
> **3650 Winding Way, Suite 200**
> **Newtown Square, PA 19073**
> **keith@victimrecoverylaw.com**
> ***Attorney for the Plaintiff***
>
> ***/s/ Jonah Santiago-Pagán***
> **Jonah Santiago-Pagán**
> **Deputy City Solicitor**
> **Pa. Attorney ID No.**
> **1515 Arch Street, 14th Floor**

**Philadelphia, PA 19102**
**(215) 683-5400**
***Attorney for Defendants***

***/s/ Emily Hoff***
**Emily Hoff**
**Assistant City Solicitor**
**Pa. Attorney ID No. 330859**
**1515 Arch Street, 14th Floor**
**Philadelphia, PA 19102**
**(215) 683-5400**
***Attorney for Defendants***

# DEFENDANTS' EXHIBIT A

The below list of exhibits are Plaintiff's exhibits, which Defendants object to:

1.    Use of Force/Hospital Case Summary                        D000001
2.    Warrant of Arrest                                          D000002
3.    Officer Involved Shooting Final Report OISI PS21-05     D000003
4.    Defendant City Answer to Plaintiff's Interrogatories & Requests for
      Production of Documents 03/10/23
5.    Defendant PO Song Answer to Plaintiff's Interrogatories & Requests for
      Production of Documents 03/10/23
6.    Office Involved Shooting Invest Unit Summary Of Incident       D000011
7.    Complaint or Incident Report        DC#4-15-040715    D000012
8.    Complaint or Incident Report DC#21-15-40680          D000013
9.    Consent to Search DC#2021-15-040680                  D000019
10.   Investigation Interview P/O Burkitt Badge #2091       D000022
11.   Investigation Interview P/O Ashford Badge #3802       D000024
12.   Investigation Interview P/O Scott Badge #6689         D000026
13.   Investigation Interview P/O Murray Badge #6068        D000029
14.   Investigation Interview P/O Riotto Badge #3984        D000032
15.   Investigation Interview Sgt Mellody Badge #285        D000035
16.   Investigation Interview P/O Smith Badge #2016         D000036
17.   Investigation Interview P/O Clark Badge #4453         D000041
18.   Investigation Interview Lt. Monk Badge #279           D000043
19.   Civilian Interview OISI#                              D000046
20.   Investigation Interview P/O Rivera Badge #6797        D000047
21.   Investigation Interview Record Police Personnel, P/O Saba Badge #9823
      D000049
22.   Investigation Interview P/O Hamoy Badge #2984         D000051
23.   Investigation Interview P/O Fitzpatrick Badge #1565   D000052
24.   Investigation Interview P/O Quintana Badge #2721      D000055
25.   Property Receipt from Edward Song #3936               D000056
26.   Statement of Sgt. Mellody Badge #285 7.12.21          D000061
27.   Statement of Det Scally Badge #791 6.17.21            D000065
28.   Statement of Det. Graf Badge #9066 6.17.21            D000068
29.   City of Philadelphia Firearms Identification Unit Laboratory Report D000077
30.   Color Photographs crime scene                        D000080-100
31.   Complaint or Incident Report DC#21-15-040715          D000101
32.    Stray Contract June 4, 2021 ACCT Philly              D000102
33.   Stray Surrender Document                              D000103
34.   Officer Involved Shooting Investigation (handwritten), DC#21-15-040680
      PS#21-5                                               D000105
35.   Officer Involved Shooting Investigation (handwritten) PS#21-5 Scene Notes
      D000106
36.   Diagram of apt                                        D000109
37.   Memorandum 1.03.23 from IAD                           D000110

| | | |
|---|---|---|
| 38. | Office Involved Shooting Incident Investigation Unit Summary (appears to be duplicate of D000001) | D000121 |
| 39. | Phila Police Dept Case Report DC21-15-040680 | D000123 |
| 40. | IAD PS#21-05 Statement of Edward Song Badge#3936 | D000125 |
| 41. | Song's Hand drawn diagram | D000131 |
| 42. | Firearms Identification Unit Laboratory Report (duplicate?) | D000132 |
| 43. | Property Receipt from Crime Scene Receipt #9030452 | D000134 |
| 44. | Crime Scene Unit Service Report CSU 21-0435 | D000135 |
| 45. | Diagram apartment | D000137 |
| 46. | Thumbdrive photos of crime scene | D000138 |
| 47. | Phila PD Incident History (barely legible, parts redacted) | D000140 |
| 48. | Text message concerning property damage from Jason Hendershot to prop owner | D000144 |
| 49. | Memorandum IAD 6.11.21 Discharge of Firearm | D000145 |
| 50. | Video of Ring.com footage of dog dead in middle of living room floor 20 sec 04/12/23 | |
| 51. | Defendant City 5.05.23 response to Plaintiff correspondence discovery deficiencies. | |
| 52. | Philadelphia Police Directive, 5.7eSearch Warrants | D000154, 172-76, 178-80, 183-87, 189 |
| 53. | Philadelphia Police Directive, 8.6 Disciplinary Procedure (issued 5.01.10) | D000194-202 |
| 54. | Notice of Intention to Dismiss Form | D000203 |
| 55. | Notice of Dismissal form | D000204 |
| 56. | Rejection Notice During Probationary Period form | D000205 |
| 57. | Firearms Training Unit DFA Information Sheet , P/O Edward Song dated 6.09.21, Sig Sauer M400 Rifle | D000206 |
| 58. | Officer Involved Shooting Investigation Unit Summary of Incident (duplicate) | D000207 |
| 59. | Firearms Training Unit P/O Song | D000212 |
| 60. | Memorandum 6.11.21 POST Discharge of Firearms Training PS#21-05 P/O Song #3936 | D000213 |
| 61. | Memorandum 6.10.21 POST - Use of Force Scenario Training | D000214 |
| 62. | Firearms Training Unit Policy #8 Procedure for the Handling of Officers Involved in Discharge of Firearms (DFA) | D000215 |
| 63. | **Police Directive 10.1 – 17,** Discharges Involving Animals | D000217 |
| 64. | Release of Information Regarding Officer Involved Shootings (OIS) | D000219 |
| 65. | Axon_Capture_Video_2021-06-04_070917.mp4 | |
| 66. | Axon_Capture_Video_2021-06-04_071356.mp4 | |
| 67. | Axon_Capture_Video_2021-06-04_072135.mp4 | |
| 68. | Call logs: Desk Calls, Radio Transmissions, Straight Run | |
| 69. | Dog Encounters | D000235-end of document |
| 70. | Internal Affairs Files  for non-defendants | D000250 |
| 71. | Akuma's ACCT Philly Kennel Card | PLTF000011 |

| | | |
|---|---|---|
| 72. | ACCT Philly Buddy Intake Date 06/04/21 | PLTF000012 |
| 73. | All Pets Cemetery | PLTF000013 |
| 74. | Dutton Road Veterinary Invoice Date 06/04/21 | PLTF000014 |
| 75. | Dutton Road Veterinary Invoice Date 06/09/21 | PLTF000016 |
| 76. | Dr. Welch Ltrs of Approval for ESA | PLTF000017 |
| 77. | GPHA Medical Records | PLTF000020 |
| 78. | GPHA Itemized Billing | PLTF000037 |

79. Transcript of Deposition of Alvarado, Felishatay w/Exhibits
80. Transcript of Deposition of Alvarado, Yara w/Exhibits
81. Transcript of Deposition of P/O James Ashford w/Exhibits
82. Transcript of Deposition of P/O Burkitt, Joshua w/Exhibits
83. Transcript of Deposition of Det Cerruti, Michael w/Exhibits
84. Transcript of Deposition of P/O Clark, Eric
85. Transcript of Deposition of P/O Fitzpatrick, Matthew
86. Transcript of Deposition of  Det Graf, Francis w/Exhibits
87. Transcript of Deposition of  P/O Hamoy, Jose w/Exhibits
88. Transcript of Deposition of Probation/Parole Matteo-Hand, Jaclyn w/Exhibits
89. Transcript of Deposition of Sgt Mellody, Kevin w/Exhibits
90. Transcript of Deposition of Lt. Monk, Demetrius w/Exhibits
91. Transcript of Deposition of P/O Murray, Brian w/Exhibits
92. Transcript of Deposition of P/O Quintana, Heriberto
93. Transcript of Deposition of P/O Riotto, Phillip w/Exhibits
94. Transcript of Deposition of P/O Rivera, Miguel w/Exhibits
95. Transcript of Deposition of P/O Saba, Patrick
96. Transcript of Deposition of Det Scally, Timothy w/Exhibits
97. Transcript of Deposition of P/O Scott, Cyprian w/Exhibits
98. Transcript of Deposition of Probation/Parole Shannon, Dana PO
99. Transcript of Deposition of P/O Song, Edward
100. Client File Notes received from Probation/Parole Officer Dana Shannon regarding Bernard Lee
101. Adult Probation/Pre Trial Services Home Investigation Interview dated September 25, 2023 - Bernard Lee
102. All pleadings and responses thereto filed in this matter
103. All discovery exchanged by all parties to this matter
104. Expert Report and Curriculum Vitae of Plaintiff's Expert Glenn Garrels
105. Expert Report and Curriculum Vitae of Plaintiff's Expert Veronique Valliere
106. Social Security Administration Records regarding Plaintiff Felishatay Alvarado
107. Joint Rule 26 Conference Memorandum
108. Pre-Trial Conference Memorandums exchange and/or filed by any party to this matter
109. Photographs and videos of Plaintiff and her beloved dog