# Transcript of the Testimony of:
# Dana Shannon

**Date:** September 15, 2023

**Case:** Felishatay Alvarado v. City of Philadelphia, et al.

Diamond Court Reporting
Phone:856-589-1107
Fax:856-589-4741
Email:dcr.diamond@comcast.net

Page 1

IN THE COURT OF COMMON PLEAS
FOR PHILADELPHIA COUNTY, PENNSYLVANIA
---

FELISHATAY ALVARADO,  : JUNE TERM, 2022
                      :
      Plaintiff,      : NO. 01633
                      :
      vs.             :
                      :
CITY OF PHILADELPHIA, :
et al.,               :
                      :
      Defendants.     :
---
      September 15, 2023
---

Oral deposition of DANA SHANNON,
taken pursuant to Notice at VICTIMS'
RECOVERY LAW CENTER, 121 South Broad Street,
18th Floor, Philadelphia, PA 19107,
beginning at 10:00 a.m., before Candace
Weindel, a Professional Reporter and a
Notary Public in and for the Commonwealth of
Pennsylvania.
---

DIAMOND COURT REPORTING
406 Redbud Lane
Mantua, New Jersey 08051
(856) 589-1107

Page 2

1  A P P E A R A N C E S:
2
3  VICTIMS' RECOVERY LAW CENTER
   BY: KEITH WEST, ESQUIRE
4  121 South Broad Street
   18th Floor
5  Philadelphia, PA 19107
   (215) 546-1433
6  Keith@victimrecoverylaw.com
   Representing the Plaintiff
7
8
9  FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
   BY: ERIC J. ASSINI, ESQUIRE
10 Room 369 City Hall
   Philadelphia, PA 19107
11 (215) 686-3745
   Eric.assini@courts.phila.gov
12 Representing the Witness
13
14
   CITY OF PHILADELPHIA LAW DEPARTMENT
15 BY: JONAH SANTIAGO-PAGAN, ESQUIRE
   1515 Arch Street
16 14th Floor
   Philadelphia, PA 19102
17 (352) 214-0377
   Jonah.santiago-pagan@phila.gov
18 Adam.Zurbriggen@phila.gov
   Representing the Defendants
19
20
21
22
23
24

Page 3

1              I N D E X
2  WITNESS                           PAGE
3  DANA SHANNON
4  Examination By Mr. West           4, 37
5  Examination By Mr. Santiago-Pagan 32, 39
6
7
8          E X H I B I T S
9  NO.       DESCRIPTION            PAGE
10
11 Shannon-1   Client File Notes       4
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 4

1           (It is agreed by and between
2      counsel for the respective parties that
3      sealing, certification and filing are
4      waived; and that all objections, except
5      as to the form of the question, are
6      reserved until the time of trial.)
7                   ---
8           DANA SHANNON, after having been
9      first duly sworn, was examined and
10     testified as follows:
11                  ---
12          EXAMINATION
13                  ---
14 BY MR. WEST:
15     Q.    All right, Ms. Shannon. My name is
16 Keith West. I'm one of the attorneys for the
17 plaintiff in this case, Ms. Alvarado. I'm going
18 to mark as Shannon-1 -- this is a pile of
19 documents that you brought with you today as part
20 of your appearance for today's subpoenaed
21 deposition; correct?
22     A.    Yes.
23                  ---
24          (Whereupon, the document was

```
 1         marked, for identification purposes, as
 2         Exhibit Number Shannon-1.)
 3                         - - -
 4  BY MR. WEST:
 5      Q.    Okay.  And let me just go through
 6  some quick kind of preemptory things.
 7           Have you ever been in a deposition
 8  before?
 9      A.    Yes.
10      Q.    How many times have you been
11  deposed?
12      A.    Once.
13      Q.    And can you tell me, just
14  generally, what that case was about?
15      A.    A car accident.
16      Q.    Okay.  So unrelated to your
17  employment for the City of Philadelphia; correct?
18      A.    Yes.
19      Q.    And you are in fact an employee of
20  the City of Philadelphia; right?
21      A.    Yes.
22           MR. ASSINI:  Well, just to clarify,
23         she is an employee of the First Judicial
24         District, which is not -- it's not the
```

```
 1         same as the City of Philadelphia;
 2         however, it is -- it is the judicial
 3         branch of the City of Philadelphia.
 4         Like her -- it's separate, but the same,
 5         you know --
 6           MR. WEST:  Well, no.  That's what I
 7         am trying to figure out because I
 8         actually don't know the answer to that.
 9         Like the police department is like an
10         entity of the City.  Is --
11           MR. ASSINI:  More independent than
12         that --
13           MR. WEST:  That's what I'm trying
14         --
15           MR. ASSINI:  -- because we're the
16         judicial branch, so that's --
17           MR. SANTIAGO-PAGAN:  Right.
18           MR. WEST:  Okay.  I honestly didn't
19         know the answer to that.
20  BY MR. WEST:
21      Q.    I'm sorry.  So you are an employee
22  of the First Judicial District of Pennsylvania;
23  right?
24      A.    Yes.
```

```
 1      Q.    Okay.  But your prior deposition
 2  appearance was unrelated to that; right?
 3      A.    Yes.
 4      Q.    How long have you worked as a
 5  parole officer?
 6      A.    Twenty-two years.
 7           MR. WEST:  Off the record.
 8                         - - -
 9           (Whereupon, a discussion took place
10         off the stenographic record.)
11                         - - -
12           MR. SANTIAGO-PAGAN:  I just want to
13         state for the record that she is a
14         probation officer, not a parole officer.
15           MR. ASSINI:  Yes, probation.
16         Right.
17           MR. WEST:  Okay.
18  BY MR. WEST:
19      Q.    Can you just tell me quickly what
20  is the difference between probation and parole as
21  far as the Commonwealth of Pennsylvania goes?
22           MR. ASSINI:  If you know.
23           THE WITNESS:  I'm trying to figure
24         out how to answer that because we do
```

```
 1         supervise people that's on parole as
 2         well.
 3           So, I mean, parole is if a person
 4         that has been sentenced to a jail
 5         sentence and if the judge says like
 6         immediate parole, then they can serve
 7         their sentence out on the street.
 8         Probation is just if the judge sentences
 9         a person to a period of probation and we
10         also supervise them on the street.
11  BY MR. WEST:
12      Q.    Right.  Probation is a probationary
13  release from prison.  If the person doesn't meet
14  the terms, they go back to prison; correct?
15      A.    It depends on the judge and if it's
16  like a technical violation or a direct violation.
17      Q.    Okay.  And you, in your capacity,
18  you would supervise people who are released both
19  under probation and under parole; correct?
20      A.    Yes.
21      Q.    What is your actual job title?
22      A.    I'm an Armed Probation Officer II,
23  so I carry a firearm.
24      Q.    And how long have you had that
```

Electronically signed by Candace Weindel (601-298-573-1229)        be90cd29-42c0-4a90-b5e7-a5b76f8128dc

Page 9

1  particular job title?
2      A.   I've been doing the job for almost
3  14 years, but technically didn't get classified
4  until last July.
5      Q.   The incident giving rise to this
6  case occurred a little over two years ago. Do you
7  know what your job title would have been back
8  then?
9      A.   Still a probation and parole
10 officer and I was still armed, but I wasn't
11 classified as that.
12           MR. ASSINI: Can I --
13           MR. WEST: Yes, please.
14           MR. ASSINI: So our probation
15      officers are part of a union, and as
16      part of the collective bargaining
17      agreement that was most recent, part of
18      that was creating a new classification
19      for armed officers and giving them a
20      different salary scale because it
21      requires extra things to --
22           MR. WEST: Training.
23           MR. ASSINI: -- you know, be armed,
24      training and certifications and renewal.

Page 10

1      So it didn't exist until it was
2      collectively bargained.
3  BY MR. WEST:
4      Q.   Okay. So have you always been an
5  armed officer?
6      A.   No.
7      Q.   When did you first become an armed
8  officer?
9      A.   I want to say 2011-ish. I can't
10 remember the exact date.
11     Q.   But long before this incident;
12 right?
13     A.   Yes.
14     Q.   So do you remember supervising
15 someone who was on probation by the name of
16          ?
17     A.   Yes.
18     Q.   Can you just -- for brevity's sake,
19 I'm going to try to ask you a very general
20 question.
21          Can you tell me everything you
22 remember about your interactions with          ?
23     A.   Just we had contact by phone. It
24 was during the pandemic, so at that time no one

Page 11

1  was coming into the office.
2      Q.   Okay. What was        on
3  probation for?
4           MR. ASSINI: Objection to form.
5           But you can answer if you
6      understand.
7  BY MR. WEST:
8      Q.   I should have given you a few more
9  instructions. You are only being -- all of my
10 questions are just intended to ask what you
11 personally know, so I am not going to ask you to
12 guess or speculate at any time. If you are not in
13 possession of complete understanding, but you can
14 give us an estimate or an approximation, we would
15 ask for you to let us know that you are giving us
16 an estimate.
17          This isn't intended to be an
18 unnecessarily uncomfortable -- it's hard to hear
19 me with this, isn't it? This isn't intended to be
20 an unnecessarily uncomfortable process, so if at
21 any point you would like a break or anything, just
22 let me know. If you have any trouble
23 understanding any of the questions, please don't
24 answer them. I'll be more than glad to speak

Page 12

1  louder, slower, faster, rephrase questions if at
2  all possible, anything like that. Okay?
3      A.   Yes.
4      Q.   With that said, do you know why
5          was on probation, if he was?
6      A.   I believe it was for firearm
7  charges, but I didn't write it down, so I can't
8  remember offhand.
9      Q.   And how long did you supervise him?
10     A.   His case was transferred to me --
11 his case was transferred to me on 7/24/2020.
12     Q.   And before that date in July of
13 2020, was         already under some form of
14 supervision?
15     A.   Yes.
16     Q.   And are you able to remember or
17 just by reviewing your notes able to determine
18 when        first went under -- on
19 supervision?
20          MR. ASSINI: Objection to form.
21          But you can answer if you
22     understand the question.
23          THE WITNESS: I believe it was
24     April 9, 2019.

3 (Pages 9 to 12)

Electronically signed by Candace Weindel (601-298-573-1229)                    be90cd29-42c0-4a90-b5e7-a5b76f8128dc

Page 13

1  BY MR. WEST:
2  Q. So well before the COVID pandemic;
3  correct?
4  A. Yes.
5  Q. Okay. And who would have been his
6  probation supervisor back then?
7  MR. ASSINI: Objection to form.
8  You can answer.
9  MR. WEST: If you know.
10  THE WITNESS: His supervisor or
11  officer?
12  MR. ASSINI: So I objected to form,
13  but you can -- if you want to clarify
14  that or ask -- go ahead.
15  BY MR. WEST:
16  Q. And if I am misstating things --
17  I'm very fortunate that, either as a civilian or a
18  lawyer, I have had almost no interaction with this
19  system, so I'm going to be misstating terms.
20  So if officer is the right --
21  probation officer --
22  MR. ASSINI: Can we go off the
23  record?
24  MR. WEST: Yes.

Page 14

1  - - -
2  (Whereupon, a discussion took place
3  off the stenographic record.)
4  - - -
5  MR. WEST: Let me ask the question
6  more generally.
7  BY MR. WEST:
8  Q. Do you know the name and title of
9  the person who would have been supervising
10  back when his case initiated in 2019?
11  A. Michael Anderson.
12  Q. Okay.
13  A. And he was under monitored
14  supervision, which is house arrest.
15  Q. Okay. House arrest.
16  And that date was, again, what in
17  2019?
18  MR. ASSINI: I think you said
19  April.
20  THE WITNESS: It says April 26,
21  2019 that they received notification of
22  house arrest.
23  BY MR. WEST:
24  Q. What is Michael Anderson's job

Page 15

1  title? At least what would it have been at that
2  time?
3  A. A probation parole officer.
4  Q. So generally the same as yourself?
5  A. Yes.
6  Q. In your experience, especially in
7  the pre-COVID days back in 2019, if someone was
8  placed on house arrest, would the probation
9  officer normally inspect the home?
10  MR. ASSINI: Objection to form.
11  You can answer.
12  THE WITNESS: Yes. They actually
13  go out and, I guess, investigate the
14  house and see if the person is eligible
15  to be on house arrest and see if the
16  equipment can fit in the house and, I
17  guess, the range.
18  BY MR. WEST:
19  Q. Okay. And don't you guys normally
20  inspect the house as well to see who the person is
21  living with because there's usually restrictions
22  limiting who people placed on probation are
23  allowed to live with?
24  MR. ASSINI: Objection to form.

Page 16

1  You can answer.
2  THE WITNESS: Am I speaking for
3  house arrest or speaking for what I do
4  in my unit?
5  BY MR. WEST:
6  Q. I guess house arrest.
7  But to ask a different question
8  then, do you never handle people with house
9  arrest?
10  A. I usually get people once they
11  complete house arrest and transfer them to our
12  unit.
13  Q. Okay. But are you still familiar
14  with what the procedures for house arrest are?
15  A. Not a hundred percent.
16  Q. Okay. Is it your general
17  understanding that in order for someone to be
18  placed on house arrest, a probation officer needs
19  to go to the house in question and inspect it?
20  A. Yes.
21  Q. And are you able -- thank you for
22  bringing these records with you. I'm only getting
23  a chance to quickly scan them for the first time
24  now.

Electronically signed by Candace Weindel (601-298-573-1229)    be90cd29-42c0-4a90-b5e7-a5b76f8128dc

Page 17

1 Are you able to look on these and
2 actually find if it's recorded anywhere that
3 someone actually did physically go to the house
4 where ____ was living?
5    A.    Give me a second.
6    Q.    While you are looking for that, can
7 I quickly ask you another question? I can see on
8 the notation for April 29, 2019 that an NCIC check
9 was performed.
10        Do you know what NCIC would stand
11 for in this case?
12   A.    It's like a GNET search. You have
13 access to a federal database that you can look up
14 offenders' information as far as their criminal
15 history.
16   Q.    Okay.
17   A.    Only thing that I could see in the
18 notes was that --
19   Q.    Yes, actually --
20   A.    -- on 4/25/2019 that a field team
21 went out.
22   Q.    Yes. So if we go to April -- I'm
23 sorry. I'm asking this question a little bit
24 inappropriately, but I'm trying not to take up

Page 18

1 extra of your time.
2        It specifically says right on here
3 April 26, 2019 and somebody went to the house, and
4 the location is specifically specified as a second
5 floor apartment with the rear entrance off
6 Margaret Street; right?
7    A.    Yes. But it stated that they went
8 out on 4/25/2019.
9    Q.    Right. So these records indicate
10 that somebody went out there and they knew at that
11 time that the entrance to the property was through
12 the rear door; correct?
13       MR. ASSINI: Objection to form.
14       MR. WEST: Well, actually, strike
15    the question. It's a little bit of an
16    inappropriate question.
17 BY MR. WEST:
18   Q.    And you didn't write these records;
19 right?
20   A.    Yes.
21   Q.    So looking at the notation on 4/26,
22 it looks like the author's name is MatteoJ.
23       Do you think that's the person who
24 would have done the actual physical inspection of

Page 19

1 the home or do you think, from these records, it
2 would have been someone else?
3       MR. ASSINI: If you know.
4       THE WITNESS: Basically -- her name
5    is Jaclyn Matteo. I think she gets the
6    order and then she connects everybody to
7    process and send people out. I don't
8    know if she physically goes out, but I
9    know she is like the handler of the
10   house arrest applications that come
11   through or the orders. She verifies it
12   and then sends the team out to verify
13   the address. Then once they come back,
14   they will assign it to the officer who
15   is going to be supervising the house
16   arrest.
17 BY MR. WEST:
18   Q.    All right. If we wanted to ask the
19 person most likely to have more information about
20 how this inspection occurred back in April of
21 2019, do you think Jaclyn Matteo would be probably
22 our best bet as far as to ask more questions?
23       MR. ASSINI: If you know.
24       Objection to form.

Page 20

1       THE WITNESS: I would say yes. And
2    she probably could tell you who the
3    officer's name and stuff were when they
4    went out at that time.
5 BY MR. WEST:
6    Q.    Okay. And is she still, as far as
7 you are aware, currently employed with the First
8 Judicial District?
9    A.    Yes.
10   Q.    Did you ever personally go to the
11 home in which ____ was allegedly staying?
12   A.    No.
13   Q.    Did you ever speak with anyone from
14 the Philadelphia Police Department about executing
15 a warrant at ____'s home?
16   A.    I spoke with a homicide detective.
17   Q.    Is that Detective Graf?
18   A.    Yes.
19       MR. WEST: And Graf is spelled
20    G-R-A-F.
21 BY MR. WEST:
22   Q.    Did you speak with anyone else from
23 the Philadelphia Police Department regarding this
24 or only Detective Graf?

Electronically signed by Candace Weindel (601-298-573-1229)    be90cd29-42c0-4a90-b5e7-a5b76f8128dc

Page 21

1  A. Only Detective Graf.
2  Q. Can you -- today, can you remember
3  that conversation with Detective Graf?
4  A. Yes.
5  Q. Okay. So please tell me everything
6  you can remember about that conversation.
7  A. Do you want me to read the note or
8  just like summarize?
9  Q. Well, that's what I am trying to
10 distinguish. I am trying to distinguish between
11 if you are just reading a note that, you know, is
12 something that you know is written down or
13 actually what you can remember independent from
14 the notes.
15     So right now I'm asking you -- if
16 you wouldn't mind even kind of just setting the
17 paper aside for a moment and just let me know what
18 you can remember from your independent
19 recollection, if anything.
20 A. I just remember him calling me and
21 stating how dangerous Mr.    was and that he was
22 wanted for murder and they were looking at him
23 because he's been kind of terrorizing the
24 neighborhood or the surrounding neighborhood that

Page 22

1  he lived in. And then, at the time, they said
2  they were going to execute a warrant at the house
3  and they asked me have I been out.
4      And I said, no, because of the
5  pandemic we are not allowed to do any home visits.
6      So then he said, can you verify or
7  just tell me if the address I have is correct or
8  do you have any alternative addresses?
9      So at that time, I asked my
10 supervisor -- because more recently we are not
11 allowed to speak to certain people about releasing
12 information. So my supervisor said it was okay to
13 talk with him, and the address that he said was
14 the same address that we had, that was in our
15 notes. So I told him that was the same address,
16 but I haven't personally been out to verify
17 through a field visit like we would normally do.
18 So they said they would just let me know if they
19 pick him up.
20 Q. Did Detective Graf -- strike the
21 question.
22     Just to lay a foundation, I can
23 represent to you that the warrant in this case
24 does specify that    was on the second

Page 23

1  floor rear apartment. With that foundation, did
2  Detective Graf ask you any questions about how to
3  physically get access to that particular apartment
4  number?
5      MR. SANTIAGO-PAGAN: Objection to
6      form.
7      MR. ASSINI: You can answer to the
8      extent you can.
9      THE WITNESS: No.
10 BY MR. WEST:
11 Q. Did detective Graf ask you if you
12 had access to any records that would have provided
13 any sort of guidance as to how to physically
14 access the apartment in which    was
15 believed to occupy?
16     MR. ASSINI: Objection to form.
17     But you can answer.
18     THE WITNESS: No.
19 BY MR. WEST:
20 Q. Did Detective Graf ask to see these
21 records that you have provided to us today?
22 A. No.
23 Q. If Detective Graf had asked to see
24 these records, would you have provided him a copy?

Page 24

1  A. I would have had --
2      MR. SANTIAGO-PAGAN: Object to
3      form.
4      MR. ASSINI: Go ahead. You can
5      answer.
6      THE WITNESS: I would have had to
7      get permission from our department and
8      then if they said yes, then I could give
9      it to him, but if not, then no.
10 BY MR. WEST:
11 Q. Can you think of any reason why the
12 First Judicial District would be unwilling to
13 cooperate on an issue like this with the
14 Philadelphia Police Department?
15     MR. ASSINI: Objection to form.
16     MR. WEST: In your personal
17     experience.
18     THE WITNESS: We're just restricted
19     on a lot of stuff, so right now, it's
20     just you have to ask permission and if
21     they say yes, you go with it, if they
22     say no, then you don't.
23 BY MR. WEST:
24 Q. Do you have any personal knowledge

6 (Pages 21 to 24)

Page 25

1  or understanding of why information would be
2  restricted as to what's provided to the
3  Philadelphia Police Department out trying to catch
4  a murder suspect?
5          MR. ASSINI: You can answer to the
6      extent you know. I mean --
7          THE WITNESS: No. We just follow
8      orders. That's all I can say.
9  BY MR. WEST:
10     Q.    But in any case, if Detective Graf
11 had asked the question as to if an inspection had
12 been made of the address where         was
13 believed to reside, you could have looked at your
14 records and answered the question in the
15 affirmative; correct?
16         MR. ASSINI: Objection to form.
17         MR. SANTIAGO-PAGAN: Objection to
18     form.
19         THE WITNESS: Can you repeat the
20     question?
21 BY MR. WEST:
22     Q.    Yes. If Detective Graf had asked
23 the question whether your records indicated that
24 an inspection had been made of the home where

Page 26

1      was believed to reside, you could have
2  answered that in the affirmative; correct?
3          MR. ASSINI: Same objection to the
4      form.
5          But go ahead. You can answer.
6          THE WITNESS: I could have just
7      told him it was confirmed while he was
8      on house arrest, but I couldn't tell him
9      or confirm it at that time.
10 BY MR. WEST:
11     Q.    Right. And you could have told him
12 what's indicated in these records, that the
13 entrance to the property was through the rear;
14 correct?
15         MR. ASSINI: Objection to form.
16         MR. SANTIAGO-PAGAN: Objection to
17     the form.
18         THE WITNESS: I guess, yes.
19 BY MR. WEST:
20     Q.    And also, you know, our deposition
21 here has only been a few minutes. In the same
22 amount of time or less, you also could have told
23 him that if he wanted more information, he could
24 reach out to Jaclyn Matteo; correct?

Page 27

1          MR. ASSINI: Objection to the form.
2          THE WITNESS: I guess, yes.
3  BY MR. WEST:
4      Q.    And I apologize. I'm going to ask
5  the question differently just because that
6  probably is objectionable.
7          If Detective Graf had asked you if
8  there was anyone in your office who had more
9  information about the home inspection, you could
10 have encouraged Detective Graf to get in touch
11 with Jaclyn Matteo; correct?
12         MR. SANTIAGO-PAGAN: Objection to
13     the form.
14         MR. ASSINI: Objection to the form.
15     But go ahead.
16         THE WITNESS: Yes or, I guess, his
17     officer at the time, supervisor, Michael
18     Anderson.
19 BY MR. WEST:
20     Q.    Okay. And the only reason that you
21 didn't provide this information to Detective Graf
22 is because he didn't ask the question; correct?
23         MR. SANTIAGO-PAGAN: Objection to
24     form.

Page 28

1          THE WITNESS: I guess. I don't
2      remember.
3  BY MR. WEST:
4      Q.    Is there any other reason why you
5  wouldn't -- strike the question.
6          Did you want to cooperate with
7  Detective Graf to give him any information that
8  might help him to capture this murder suspect?
9          MR. SANTIAGO-PAGAN: Objection to
10     form.
11         THE WITNESS: Yes.
12 BY MR. WEST:
13     Q.    And would you have provided
14 Detective Graf with any question that he -- with
15 any -- strike the question.
16         Would you have willingly provided
17 Detective Graf with any information available to
18 you that would have assisted in the Philadelphia
19 Police Department executing this warrant in a way
20 that was likely to lead to the capture of
21     without infringing on the constitutional
22 rights of others?
23         MR. SANTIAGO-PAGAN: Objection to
24     form.

Electronically signed by Candace Weindel (601-298-573-1229)          be90cd29-42c0-4a90-b5e7-a5b76f8128dc

Page 29

1    MR. ASSINI: Objection to the form.
2    You can try to answer.
3    THE WITNESS: Oh. Yes.
4 BY MR. WEST:
5    Q.   And when Detective Graf called you,
6 you were cooperative and willing to provide any
7 information available to you?
8    MR. ASSINI: Objection to form.
9    You can answer.
10   THE WITNESS: Yeah, as long as it
11   was in the rights that my supervisor was
12   okay with it, yes.
13 BY MR. WEST:
14   Q.   Okay. And probably the last
15 question, all of the information that you have
16 provided us today, this printout from your
17 records, this would have been available to you
18 back a couple of years ago as well; correct?
19   MR. ASSINI: Objection to form.
20   But go ahead.
21   THE WITNESS: Yes, but sometimes
22   house arrest notes aren't imported to
23   us, so we might not have been able to
24   see it. But usually if it's just a

Page 30

1    regular officer transferring paperwork,
2    we would be able to see all of the
3    notes.
4 BY MR. WEST:
5    Q.   All right. And the records
6 indicating the home inspection, that would have
7 been available to you back at the time you spoke
8 to Detective Graf; correct?
9    MR. SANTIAGO-PAGAN: Objection to
10   form.
11   THE WITNESS: It was available, but
12   not always -- it's not always
13   accessible. Like usually house arrest
14   notes are separate from the notes that
15   we see.
16 BY MR. WEST:
17   Q.   Is that something that you could --
18 if Detective Graf had asked you to find if the
19 home had ever been inspected, could you have
20 provided him an accurate answer to that question
21 even back at the time Detective Graf spoke with
22 you?
23   MR. ASSINI: Objection to form.
24   But go ahead.

Page 31

1    THE WITNESS: Based on the notes, I
2    could have. But if I didn't have access
3    to the notes, then I would have to go to
4    house arrest directly and ask for access
5    to the notes.
6 BY MR. WEST:
7    Q.   And is that something you would
8 have been willing to do if Detective Graf had
9 asked you to do it?
10   A.   If I was able to get permission to
11 do so, yes.
12   Q.   Do you have any reason to believe
13 your supervisor wouldn't have allowed you to do
14 that?
15   MR. SANTIAGO-PAGAN: Objection to
16   the form.
17   MR. ASSINI: Objection to the form.
18   THE WITNESS: I guess it depends on
19   what the director says to him. A lot of
20   things we have to get permission to do,
21   so it depends on that.
22 BY MR. WEST:
23   Q.   Okay. And you also could have
24 encouraged Detective Graf to speak with your

Page 32

1 supervisor directly; correct?
2    MR. SANTIAGO-PAGAN: Objection to
3    the form.
4    MR. ASSINI: Objection to the form.
5    THE WITNESS: Yes.
6 BY MR. WEST:
7    Q.   But none of that happened because
8 Detective Graf didn't ask the question; correct?
9    MR. SANTIAGO-PAGAN: Objection to
10   form.
11   THE WITNESS: Right.
12   MR. WEST: I have nothing further
13   for you today. I hope you do have a
14   wonderful Friday. I hope that they are
15   going to let you have the whole day off.
16   THE WITNESS: That would be nice.
17   MR. ASSINI: That's not my call.
18   MR. SANTIAGO-PAGAN: Do you have
19   anything to follow up?
20   MR. ASSINI: Well, no. Go ahead.
21   - - -
22   EXAMINATION
23   - - -
24 BY MR. SANTIAGO-PAGAN:

1  Q. Ms. Shannon, these documents that
2  you provided today were not provided to Mr. Graf
3  when you spoke to him related to the conversation
4  that you had with him on, it looks like, June 2,
5  2021, is that right, these documents themselves?
6  A. Yes.
7  Q. Okay. You would have needed to get
8  permission from a supervisor to give him any of
9  the information contained in these records; right?
10 A. Yes.
11 Q. In fact, you did get permission
12 even just to confirm the address that Mr. Graf
13 provided to you; right?
14 A. Yes.
15 Q. And similarly to how you needed to
16 get permission to just provide confirmation of the
17 address, you would have needed to get permission
18 to provide any other information in these
19 documents; correct?
20        MR. ASSINI: Objection to the form.
21        THE WITNESS: Yes.
22 BY MR. SANTIAGO-PAGAN:
23 Q. And you don't know because you are
24 unaware as of today what the parameters are for

1  giving information and not --
2        MR. ASSINI: Objection to form.
3        Sorry.
4  BY MR. SANTIAGO-PAGAN:
5  Q. -- what -- whether your supervisor
6  would have allowed you to provide this information
7  or not; correct?
8  A. Yes.
9  Q. And then I just want to go to the
10 June 2, 2021 note itself.
11        MR. SANTIAGO-PAGAN: Is that
12    Shannon-1?
13        MR. WEST: Yes.
14 BY MR. SANTIAGO-PAGAN:
15 Q. On the exhibit marked Shannon-1,
16 where it says 12:30, phone, Homicide Detective
17 Fran Graf -- do you agree that it says that there?
18 A. Yes.
19 Q. And can you read through that note
20 where it says -- maybe in the middle of the
21 paragraph it says he wanted to know if we verified
22 -- do you see where I am reading?
23 A. Yes.
24        MR. WEST: What's the page number?

1        MR. SANTIAGO-PAGAN: Page --
2        THE WITNESS: 2 of 21.
3        MR. SANTIAGO-PAGAN: -- 2 of 21.
4    Thank you.
5  BY MR. SANTIAGO-PAGAN:
6  Q. Where it says he wanted to know if
7  we verified his address or had any alternative
8  addresses to one they had on file which is the
9  address we had, do you agree that that's what it
10 said?
11 A. Yes.
12 Q. And that's what you were referring
13 to with you had to get confirmation from your
14 supervisor to confirm that -- verify that that was
15 the address; correct?
16 A. Yes.
17 Q. And then later on it says PO told
18 him we only had contact with PP by phone.
19    Do you agree that that's what it
20 said?
21 A. Yes.
22 Q. And that's what you were referring
23 to earlier when you said you didn't actually go
24 out to the home, you only were supervising him by

1  phone; correct?
2  A. Yes.
3  Q. And where it says we could not
4  confirm his address by a field visit, do you agree
5  that that's what it says?
6  A. Yes.
7  Q. And that's because you hadn't gone
8  out and confirmed it via field visit?
9  A. Yes.
10 Q. Were you asked whether you could
11 have confirmed the address of Mr.         by
12 field visit?
13        MR. ASSINI: Objection to the form.
14        You can answer.
15        THE WITNESS: He asked me have you
16    been out to the house and I said no.
17 BY MR. SANTIAGO-PAGAN:
18 Q. When you write a note like we could
19 not confirm his address by field visit, in your
20 experience, in your personal experience, is that
21 because you are being asked whether -- strike
22 that.
23        MR. SANTIAGO-PAGAN: I have nothing
24    further.

1       MR. WEST: Just real quick
2    follow-up.
3          - - -
4         EXAMINATION
5          - - -
6  BY MR. WEST:
7    Q.   Did Detective Graf request any
8  information from you that you told him, for any
9  reason, you couldn't give him?
10       MR. SANTIAGO-PAGAN: Objection to
11    form.
12       MR. WEST: I can rephrase the
13    question.
14  BY MR. WEST:
15    Q.   Is there any question that
16  Detective Graf asked you that you replied by
17  telling him that you couldn't give him the
18  information for any reason?
19       MR. SANTIAGO-PAGAN: Objection to
20    form.
21       THE WITNESS: No.
22  BY MR. WEST:
23    Q.   Okay. So any question that
24  Detective Graf actually asked you, you gave him an

1  accurate answer to the best of your ability;
2  correct?
3        MR. SANTIAGO-PAGAN: Objection to
4     form.
5        MR. ASSINI: Objection to the form.
6     Go ahead.
7        THE WITNESS: Yes.
8        MR. WEST: Okay. No further
9     questions.
10       MR. ASSINI: I have nothing.
11       MR. SANTIAGO-PAGAN: Just give me
12    one second.
13       MR. WEST: While you look that up,
14    I have one last.
15  BY MR. WEST:
16    Q.   This says ISTPD, what's that stand
17  for?
18       MR. ASSINI: Do you know where we
19    are looking?
20       MR. WEST: Yes, just the first
21    line.
22       THE WITNESS: Say that question
23    again.
24  BY MR. WEST:

1    Q.   ISTPD. So the first entry on here,
2  it says this Sequence 3 automated appointment has
3  been scheduled by ISTPD.
4         Do you know what ISTPD stands for
5  on Page 1?
6    A.   Oh. That's -- so back when it was
7  a pandemic, we only had contact with people by
8  phone. And then after a certain amount of time,
9  they automatically scheduled people to come in on
10  certain dates, and so they were allowed -- the
11  people were allowed or the probationers were
12  allowed to come back into the building on that
13  date and time.
14        So the ISTPD is the author of the
15  note. So they imported the notes into our system
16  to notify us when we can tell people to start
17  reporting in person.
18    Q.   Okay.
19       MR. SANTIAGO-PAGAN: You good?
20       MR. WEST: Yes.
21          - - -
22         EXAMINATION
23          - - -
24  BY MR. SANTIAGO-PAGAN:

1    Q.   So Ms. Shannon, you willingly gave
2  information to Officer Graf when he called you;
3  correct?
4    A.   Yes.
5    Q.   But you did that after you got
6  permission from your supervisor; correct?
7    A.   Yes.
8    Q.   And then where -- we are looking
9  back at the same Page 2 of 21 where it says --
10  right above the 12:30 p.m. note, there's a 1:00
11  p.m. note. It says PO left a voicemail stating
12  she is looking for PP to call her back at
13  215-683-1097.
14        Do you agree that it says that?
15    A.   Yes.
16    Q.   As you sit here today, do you
17  recall why you were calling, what information you
18  were trying to gather?
19    A.   I was just trying to get in contact
20  with him to report. At the time, I haven't had a
21  phone call from him, so I just reached out to him.
22    Q.   Was the conversation that you had
23  with Homicide Detective Fran Graf, did that lead
24  you to try to make a phone call?

**Page 41**

1  A. Yes.
2  Q. And was there anything that you can
3  recall that you were trying to confirm through
4  that phone call?
5  A. Just to establish contact with him
6  because we gave him certain dates and times to
7  call and report in and just verify to his address
8  one more time just to be sure.
9  Q. Do you recall whether you were
10 verifying his address for any specific reason?
11 A. Just like to verify it again.
12 Usually when they call we ask if their address,
13 phone number is the same and if they're employed
14 or not or if anything new happened by the time --
15 from the last time we spoke with him.
16 Q. Okay.
17    MR. SANTIAGO-PAGAN: I have nothing
18    further.
19       - - -
20    (Whereupon, a discussion took place
21    off the stenographic record.)
22       - - -
23    MR. SANTIAGO-PAGAN: I just want to
24    move to designate the portions of this

**Page 42**

1  deposition that refer to Mr.
2  by his name to be designated as
3  confidential pursuant to the
4  confidentiality order with regard to the
5  suspect's name that's in place for this
6  case.
7     MR. WEST: No objection.
8     MR. ASSINI: That's fine.
9     MR. SANTIAGO-PAGAN: That's all.
10       - - -
11    (Whereupon, the deposition
12    concluded at 10:39 a.m.)
13       - - -

**Page 43**

1         CERTIFICATION
2
3    I, CANDACE WEINDEL, hereby
4  certify that the foregoing is a true and
5  correct transcript transcribed from the
6  stenographic notes taken by me on Friday,
7  September 15, 2023.
8
9
10
11
12      *Candace C Weindel*
13      Candace Weindel,
        Court Reporter
14      Notary Public
15
16
17    (This certification does not apply
      to any reproduction of this transcript,
      unless under the direct supervision of
18    the certifying reporter.)

**Page 44**

1      INSTRUCTIONS TO WITNESS.
2
3    Please read your deposition over
4  carefully and make any necessary
5  corrections. You should state the reason in
6  the appropriate space on the errata sheet
7  for any corrections that are made.
8    After doing so, please sign the
9  errata sheet and date it.
10   You are signing same subject to the
11 changes you have noted on the errata sheet,
12 which will be attached to your deposition.
13   It is imperative that you return the
14 original errata sheet to the deposing
15 attorney within thirty (30) days of receipt
16 of the deposition transcript by you. If you
17 fail to do so, the deposition transcript may
18 be deemed to be accurate and may be used in
19 court.

11 (Pages 41 to 44)

Electronically signed by Candace Weindel (601-298-573-1229)　　be90cd29-42c0-4a90-b5e7-a5b76f8128dc

Page 45

```
           E R R A T A
           -----

PAGE  LINE  CHANGE
___  ___  _____
Reason for
Change:_____

___  ___  _____
Reason for
Change:_____

___  ___  _____
Reason for
Change:_____

___  ___  _____
Reason for Change:
_____
_____
Reason for Change:
_____

___  ___  _____
Reason for Change:
_____
_____
Reason for Change:
_____

___  ___  _____
Reason for Change:
_____
___  ___  _____
```

Page 46

ACKNOWLEDGMENT OF DEPONENT

I, _____, do hereby certify that I have read the foregoing pages ___ to ___ and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____    _____
DATE          SIGNATURE

Subscribed and sworn to before me this

_____ day of _____, 2023.

My commission expires:

_____

_____
Notary Public

## A

a.m 1:17 42:12
ability 38:1
able 12:16,17
　16:21 17:1
　29:23 30:2
　31:10
access 17:13
　23:3,12,14
　31:2,4
accessible 30:13
accident 5:15
accurate 30:20
　38:1 44:18
ACKNOWLE...
　46:1
actual 8:21
　18:24
Adam.Zurbri...
　2:18
address 19:13
　22:7,13,14,15
　25:12 33:12,17
　35:7,9,15 36:4
　36:11,19 41:7
　41:10,12
addresses 22:8
　35:8
affirmative
　25:15 26:2
ago 9:6 29:18
agree 34:17 35:9
　35:19 36:4
　40:14
agreed 4:1
agreement 9:17
ahead 13:14
　24:4 26:5
　27:15 29:20
　30:24 32:20
　38:6
al 1:8
allegedly 20:11
allowed 15:23
　22:5,11 31:13
　34:6 39:10,11
　39:12
alternative 22:8
　35:7

Alvarado 1:5
　4:17
amount 26:22
　39:8
Anderson 14:11
　27:18
Anderson's
　14:24
answer 6:8,19
　7:24 11:5,24
　12:21 13:8
　15:11 16:1
　23:7,17 24:5
　25:5 26:5 29:2
　29:9 30:20
　36:14 38:1
answered 25:14
　26:2
answers 46:5
apartment 18:5
　23:1,3,14
apologize 27:4
appearance 4:20
　7:2
applications
　19:10
apply 43:16
appointment
　39:2
appropriate
　44:6
approximation
　11:14
April 12:24
　14:19,20 17:8
　17:22 18:3
　19:20
Arch 2:15
armed 8:22 9:10
　9:19,23 10:5,7
arrest 14:14,15
　14:22 15:8,15
　16:3,6,9,11,14
　16:18 19:10,16
　26:8 29:22
　30:13 31:4
aside 21:17
asked 22:3,9
　23:23 25:11,22

27:7 30:18
　31:9 36:10,15
　36:21 37:16,24
asking 17:23
　21:15
assign 19:14
ASSINI 2:9 5:22
　6:11,15 7:15
　7:22 9:12,14
　9:23 11:4
　12:20 13:7,12
　13:22 14:18
　15:10,24 18:13
　19:3,23 23:7
　23:16 24:4,15
　25:5,16 26:3
　26:15 27:1,14
　29:1,8,19
　30:23 31:17
　32:4,17,20
　33:20 34:2
　36:13 38:5,10
　38:18 42:8
assisted 28:18
attached 44:12
　46:8
attorney 44:15
attorneys 4:16
author 39:14
author's 18:22
automated 39:2
automatically
　39:9
available 28:17
　29:7,17 30:7
　30:11
aware 20:7

## B

B 3:8
back 8:14 9:7
　13:6 14:10
　15:7 19:13,20
　29:18 30:7,21
　39:6,12 40:9
　40:12
bargained 10:2
bargaining 9:16
Based 31:1

Basically 19:4
beginning 1:17
believe 12:6,23
　31:12
believed 23:15
　25:13 26:1
best 19:22 38:1
bet 19:22
bit 17:23 18:15
branch 6:3,16
break 11:21
brevity's 10:18
bringing 16:22
Broad 1:15 2:4
brought 4:19
building 39:12

## C

C 2:1
call 32:17 40:12
　40:21,24 41:4
　41:7,12
called 29:5 40:2
calling 21:20
　40:17
Candace 1:17
　43:3,13
capacity 8:17
capture 28:8,20
car 5:15
carefully 44:4
carry 8:23
case 4:17 5:14
　9:6 12:10,11
　14:10 17:11
　22:23 25:10
　42:6
catch 25:3
CENTER 1:15
　2:3
certain 22:11
　39:8,10 41:6
certification 4:3
　43:1,16
certifications
　9:24
certify 43:4 46:3
certifying 43:18
chance 16:23

Change 45:2,4,7
　45:9,11,14,16
　45:19,21
changes 44:11
　46:7
charges 12:7
check 17:8
City 1:8 2:10,14
　5:17,20 6:1,3
　6:10
civilian 13:17
clarify 5:22
　13:13
classification
　9:18
classified 9:3,11
Client 3:11
collective 9:16
collectively 10:2
come 19:10,13
　39:9,12
coming 11:1
commission
　46:17
COMMON 1:1
Commonwealth
　1:19 7:21
complete 11:13
　16:11
concluded 42:12
confidential
　42:3
confidentiality
　42:4
confirm 26:9
　33:12 35:14
　36:4,19 41:3
confirmation
　33:16 35:13
confirmed 26:7
　36:8,11
connects 19:6
constitutional
　28:21
contact 10:23
　35:18 39:7
　40:19 41:5
contained 33:9
conversation

21:3,6 33:3
  40:22
cooperate 24:13
  28:6
cooperative 29:6
copy 23:24
correct 4:21
  5:17 8:14,19
  13:3 18:12
  22:7 25:15
  26:2,14,24
  27:11,22 29:18
  30:8 32:1,8
  33:19 34:7
  35:15 36:1
  38:2 40:3,6
  43:5 46:4
corrections 44:5
  44:7 46:7
counsel 4:2
COUNTY 1:2
couple 29:18
court 1:1,22
  43:13 44:19
COVID 13:2
creating 9:18
criminal 17:14
currently 20:7

D

D 3:1
DANA 1:13 3:3
  4:8
dangerous 21:21
database 17:13
date 10:10 12:12
  14:16 39:13
  44:9 46:12
dates 39:10 41:6
day 32:15 46:15
days 15:7 44:15
deemed 44:18
Defendants 1:9
  2:18
department
  2:14 6:9 20:14
  20:23 24:7,14
  25:3 28:19
depends 8:15

31:18,21
DEPONENT
  46:1
deposed 5:11
deposing 44:14
deposition 1:13
  4:21 5:7 7:1
  26:20 42:1,11
  44:3,12,16,17
DESCRIPTION
  3:9
designate 41:24
designated 42:2
detective 20:16
  20:17,24 21:1
  21:3 22:20
  23:2,11,20,23
  25:10,22 27:7
  27:10,21 28:7
  28:14,17 29:5
  30:8,18,21
  31:8,24 32:8
  34:16 37:7,16
  37:24 40:23
determine 12:17
DIAMOND
  1:22
difference 7:20
different 9:20
  16:7
differently 27:5
direct 8:16
  43:17
directly 31:4
  32:1
director 31:19
discussion 7:9
  14:2 41:20
distinguish
  21:10,10
District 2:9 5:24
  6:22 20:8
  24:12
document 4:24
documents 4:19
  33:1,5,19
doing 9:2 44:8
door 18:12
duly 4:9

E

E 2:1,1 3:1,8
  45:1
earlier 35:23
either 13:17
eligible 15:14
employed 20:7
  41:13
employee 5:19
  5:23 6:21
employment
  5:17
encouraged
  27:10 31:24
entity 6:10
entrance 18:5,11
  26:13
entry 39:1
equipment
  15:16
ERIC 2:9
Eric.assini@c...
  2:11
errata 44:6,9,11
  44:14 46:9
especially 15:6
ESQUIRE 2:3,9
  2:15
establish 41:5
estimate 11:14
  11:16
et 1:8
everybody 19:6
exact 10:10
Examination
  3:4,5 4:12
  32:22 37:4
  39:22
examined 4:9
execute 22:2
executing 20:14
  28:19
exhibit 5:2
  34:15
exist 10:1
experience 15:6
  24:17 36:20,20
expires 46:17
extent 23:8 25:6

extra 9:21 18:1

F

fact 5:19 33:11
fail 44:17
familiar 16:13
far 7:21 17:14
  19:22 20:6
faster 12:1
federal 17:13
FELISHATAY
  1:5
field 17:20 22:17
  36:4,8,12,19
figure 6:7 7:23
file 3:11 35:8
filing 4:3
find 17:2 30:18
fine 42:8
firearm 8:23
  12:6
first 2:9 4:9 5:23
  6:22 10:7
  12:18 16:23
  20:7 24:12
  38:20 39:1
fit 15:16
floor 1:16 2:4,16
  18:5 23:1
follow 25:7
  32:19
follow-up 37:2
follows 4:10
foregoing 43:4
  46:3
form 4:5 11:4
  12:13,20 13:7
  13:12 15:10,24
  18:13 19:24
  23:6,16 24:3
  24:15 25:16,18
  26:4,15,17
  27:1,13,14,24
  28:10,24 29:1
  29:8,19 30:10
  30:23 31:16,17
  32:3,4,10
  33:20 34:2
  36:13 37:11,20

38:4,5 46:7
fortunate 13:17
foundation
  22:22 23:1
Fran 34:17
  40:23
Friday 32:14
  43:6
further 32:12
  36:24 38:8
  41:18

G

G-R-A-F 20:20
gather 40:18
general 10:19
  16:16
generally 5:14
  14:6 15:4
getting 16:22
give 11:14 17:5
  24:8 28:7 33:8
  37:9,17 38:11
given 11:8 46:5
giving 9:5,19
  11:15 34:1
glad 11:24
GNET 17:12
go 5:5 8:14
  13:14,22 15:13
  16:19 17:3,22
  20:10 24:4,21
  26:5 27:15
  29:20 30:24
  31:3 32:20
  34:9 35:23
  38:6
goes 7:21 19:8
going 4:17 10:19
  11:11 13:19
  19:15 22:2
  27:4 32:15
good 39:19
Graf 20:17,19
  20:24 21:1,3
  22:20 23:2,11
  23:20,23 25:10
  25:22 27:7,10
  27:21 28:7,14

28:17 29:5
30:8,18,21
31:8,24 32:8
33:2,12 34:17
37:7,16,24
40:2,23
**guess** 11:12
  15:13,17 16:6
  26:18 27:2,16
  28:1 31:18
**guidance** 23:13
**guys** 15:19

---
**H**

**H** 3:8
**Hall** 2:10
**handle** 16:8
**handler** 19:9
**happened** 32:7
  41:14
**hard** 11:18
**hear** 11:18
**help** 28:8
**history** 17:15
**home** 15:9 19:1
  20:11,15 22:5
  25:24 27:9
  30:6,19 35:24
**homicide** 20:16
  34:16 40:23
**honestly** 6:18
**hope** 32:13,14
**house** 14:14,15
  14:22 15:8,14
  15:15,16,20
  16:3,6,8,11,14
  16:18,19 17:3
  18:3 19:10,15
  22:2 26:8
  29:22 30:13
  31:4 36:16
**hundred** 16:15

---
**I**

**identification**
  5:1
**II** 8:22
**immediate** 8:6
**imperative**
  44:13

**imported** 29:22
  39:15
**inappropriate**
  18:16
**inappropriately**
  17:24
**incident** 9:5
  10:11
**independent**
  6:11 21:13,18
**indicate** 18:9
**indicated** 25:23
  26:12
**indicating** 30:6
**information**
  17:14 19:19
  22:12 25:1
  26:23 27:9,21
  28:7,17 29:7
  29:15 33:9,18
  34:1,6 37:8,18
  40:2,17
**infringing** 28:21
**initiated** 14:10
**inspect** 15:9,20
  16:19
**inspected** 30:19
**inspection** 18:24
  19:20 25:11,24
  27:9 30:6
**instructions**
  11:9 44:1
**intended** 11:10
  11:17,19
**interaction**
  13:18
**interactions**
  10:22
**investigate**
  15:13
**issue** 24:13
**ISTPD** 38:16
  39:1,3,4,14

---
**J**

**J** 2:9
**Jaclyn** 19:5,21
  26:24 27:11
**jail** 8:4

**Jersey** 1:23
**job** 8:21 9:1,2,7
  14:24
**JONAH** 2:15
**Jonah.santiag...**
  2:17
**judge** 8:5,8,15
**judicial** 2:9 5:23
  6:2,16,22 20:8
  24:12
**July** 9:4 12:12
**June** 1:5 33:4
  34:10

---
**K**

**Keith** 2:3 4:16
**Keith@victim...**
  2:6
**kind** 5:6 21:16
  21:23
**knew** 18:10
**know** 6:5,8,19
  7:22 9:7,23
  11:11,15,22
  12:4 13:9 14:8
  17:10 19:3,8,9
  19:23 21:11,12
  21:17 22:18
  25:6 26:20
  33:23 34:21
  35:6 38:18
  39:4
**knowledge**
  24:24

---
**L**

**Lane** 1:23
**LAW** 1:15 2:3
  2:14
**lawyer** 13:18
**lay** 22:22
**lead** 28:20 40:23
**left** 40:11
**limiting** 15:22
**line** 38:21 45:2
**little** 9:6 17:23
  18:15
**live** 15:23
**lived** 22:1
**living** 15:21 17:4

**location** 18:4
**long** 7:4 8:24
  10:11 12:9
  29:10
**look** 17:1,13
  38:13
**looked** 25:13
**looking** 17:6
  18:21 21:22
  38:19 40:8,12
**looks** 18:22 33:4
**lot** 24:19 31:19
**louder** 12:1

---
**M**

**Mantua** 1:23
**Margaret** 18:6
**mark** 4:18
**marked** 5:1
  34:15
**Matteo** 19:5,21
  26:24 27:11
**MatteoJ** 18:22
**mean** 8:3 25:6
**meet** 8:13
**Michael** 14:11
  14:24 27:17
**middle** 34:20
**mind** 21:16
**minutes** 26:21
**misstating** 13:16
  13:19
**moment** 21:17
**monitored** 14:13
**move** 41:24
**murder** 21:22
  25:4 28:8

---
**N**

**N** 2:1 3:1
**name** 4:15 10:15
  14:8 18:22
  19:4 20:3 42:2
  42:5
**NCIC** 17:8,10
**necessary** 44:4
**needed** 33:7,15
  33:17
**needs** 16:18
**neighborhood**

21:24,24
**never** 16:8
**new** 1:23 9:18
  41:14
**nice** 32:16
**normally** 15:9
  15:19 22:17
**Notary** 1:19
  43:14 46:21
**notation** 17:8
  18:21
**note** 21:7,11
  34:10,19 36:18
  39:15 40:10,11
**noted** 44:11 46:8
**notes** 3:11 12:17
  17:18 21:14
  22:15 29:22
  30:3,14,14
  31:1,3,5 39:15
  43:6
**Notice** 1:14
**notification**
  14:21
**notify** 39:16
**number** 5:2 23:4
  34:24 41:13

---
**O**

**Object** 24:2
**objected** 13:12
**objection** 11:4
  12:20 13:7
  15:10,24 18:13
  19:24 23:5,16
  24:15 25:16,17
  26:3,15,16
  27:1,12,14,23
  28:9,23 29:1,8
  29:19 30:9,23
  31:15,17 32:2
  32:4,9 33:20
  34:2 36:13
  37:10,19 38:3
  38:5 42:7
**objectionable**
  27:6
**objections** 4:4
**occupy** 23:15

occurred 9:6
  19:20
offenders' 17:14
offhand 12:8
office 11:1 27:8
officer 7:5,14,14
  8:22 9:10 10:5
  10:8 13:11,20
  13:21 15:3,9
  16:18 19:14
  27:17 30:1
  40:2
officer's 20:3
officers 9:15,19
Oh 29:3 39:6
okay 5:5,16 6:18
  7:1,17 8:17
  10:4 11:2 12:2
  13:5 14:12,15
  15:19 16:13,16
  17:16 20:6
  21:5 22:12
  27:20 29:12,14
  31:23 33:7
  37:23 38:8
  39:18 41:16
once 5:12 16:10
  19:13
Oral 1:13
order 16:17 19:6
  42:4
orders 19:11
  25:8
original 44:14

**P**

P 2:1,1
p.m 40:10,11
PA 1:16 2:5,10
  2:16
page 3:2,9 34:24
  35:1 39:5 40:9
  45:2
pages 46:3
pandemic 10:24
  13:2 22:5 39:7
paper 21:17
paperwork 30:1
paragraph

  34:21
parameters
  33:24
parole 7:5,14,20
  8:1,3,6,19 9:9
  15:3
part 4:19 9:15
  9:16,17
particular 9:1
  23:3
parties 4:2
Pennsylvania
  1:2,20 2:9 6:22
  7:21
people 8:1,18
  15:22 16:8,10
  19:7 22:11
  39:7,9,11,16
percent 16:15
performed 17:9
period 8:9
permission 24:7
  24:20 31:10,20
  33:8,11,16,17
  40:6
person 8:3,9,13
  14:9 15:14,20
  18:23 19:19
  39:17
personal 24:16
  24:24 36:20
personally 11:11
  20:10 22:16
Philadelphia 1:2
  1:8,16 2:5,10
  2:14,16 5:17
  5:20 6:1,3
  20:14,23 24:14
  25:3 28:18
phone 10:23
  34:16 35:18
  36:1 39:8
  40:21,24 41:4
  41:13
physical 18:24
physically 17:3
  19:8 23:3,13
pick 22:19
pile 4:18

place 7:9 14:2
  41:20 42:5
placed 15:8,22
  16:18
plaintiff 1:6 2:6
  4:17
PLEAS 1:1
please 9:13
  11:23 21:5
  44:3,8
PO 35:17 40:11
point 11:21
police 6:9 20:14
  20:23 24:14
  25:3 28:19
portions 41:24
possession 11:13
possible 12:2
PP 35:18 40:12
pre-COVID
  15:7
preemptory 5:6
printout 29:16
prior 7:1
prison 8:13,14
probably 19:21
  20:2 27:6
  29:14
probation 7:14
  7:15,20 8:8,9
  8:12,19,22 9:9
  9:14 10:15
  11:3 12:5 13:6
  13:21 15:3,8
  15:22 16:18
probationary
  8:12
probationers
  39:11
procedures
  16:14
process 11:20
  19:7
Professional
  1:18
property 18:11
  26:13
propounded
  46:6

provide 27:21
  29:6 33:16,18
  34:6
provided 23:12
  23:21,24 25:2
  28:13,16 29:16
  30:20 33:2,2
  33:13
Public 1:19
  43:14 46:21
purposes 5:1
pursuant 1:14
  42:3

**Q**

question 4:5
  10:20 12:22
  14:5 16:7,19
  17:7,23 18:15
  18:16 22:21
  25:11,14,20,23
  27:5,22 28:5
  28:14,15 29:15
  30:20 32:8
  37:13,15,23
  38:22
questions 11:10
  11:23 12:1
  19:22 23:2
  38:9 46:6
quick 5:6 37:1
quickly 7:19
  16:23 17:7

**R**

R 2:1 45:1,1
range 15:17
reach 26:24
reached 40:21
read 21:7 34:19
  44:3 46:3
reading 21:11
  34:22
real 37:1
rear 18:5,12
  23:1 26:13
reason 24:11
  27:20 28:4
  31:12 37:9,18
  41:10 44:5

  45:4,6,9,11,14
  45:16,19,21
recall 40:17 41:3
  41:9
receipt 44:15
received 14:21
recollection
  21:19
record 7:7,10,13
  13:23 14:3
  41:21
recorded 17:2
records 16:22
  18:9,18 19:1
  23:12,21,24
  25:14,23 26:12
  29:17 30:5
  33:9
RECOVERY
  1:15 2:3
Redbud 1:23
refer 42:1
referring 35:12
  35:22
regard 42:4
regarding 20:23
regular 30:1
related 33:3
release 8:13
released 8:18
releasing 22:11
remember 10:10
  10:14,22 12:8
  12:16 21:2,6
  21:13,18,20
  28:2
renewal 9:24
repeat 25:19
rephrase 12:1
  37:12
replied 37:16
report 40:20
  41:7
reporter 1:18
  43:13,18
reporting 1:22
  39:17
represent 22:23
Representing

2:6,12,18
**reproduction** 43:17
**request** 37:7
**requires** 9:21
**reserved** 4:6
**reside** 25:13 26:1
**respective** 4:2
**restricted** 24:18 25:2
**restrictions** 15:21
**return** 44:13
**reviewing** 12:17
**right** 4:15 5:20 6:17,23 7:2,16 8:12 10:12 13:20 18:2,6,9 18:19 19:18 21:15 24:19 26:11 30:5 32:11 33:5,9 33:13 40:10
**rights** 28:22 29:11
**rise** 9:5
**Room** 2:10

---
**S**
**s** 2:1 3:8 20:15
**sake** 10:18
**salary** 9:20
**Santiago-Pagan** 2:15 3:5 6:17 7:12 23:5 24:2 25:17 26:16 27:12,23 28:9 28:23 30:9 31:15 32:2,9 32:18,24 33:22 34:4,11,14 35:1,3,5 36:17 36:23 37:10,19 38:3,11 39:19 39:24 41:17,23 42:9
**says** 8:5 14:20 18:2 31:19

34:16,17,20,21 35:6,17 36:3,5 38:16 39:2 40:9,11,14
**scale** 9:20
**scan** 16:23
**scheduled** 39:3,9
**sealing** 4:3
**search** 17:12
**second** 17:5 18:4 22:24 38:12
**see** 15:14,15,20 17:7,17 23:20 23:23 29:24 30:2,15 34:22
**send** 19:7
**sends** 19:12
**sentence** 8:5,7
**sentenced** 8:4
**sentences** 8:8
**separate** 6:4 30:14
**September** 1:11 43:7
**Sequence** 39:2
**serve** 8:6
**setting** 21:16
**Shannon** 1:13 3:3 4:8,15 33:1 40:1
**Shannon-1** 3:11 4:18 5:2 34:12 34:15
**sheet** 44:6,9,11 44:14 46:9
**sign** 44:8
**SIGNATURE** 46:12
**signing** 44:10
**similarly** 33:15
**sit** 40:16
**slower** 12:1
**somebody** 18:3 18:10
**sorry** 6:21 17:23 34:3
**sort** 23:13
**South** 1:15 2:4
**space** 44:6

**speak** 11:24 20:13,22 22:11 31:24
**speaking** 16:2,3
**specific** 41:10
**specifically** 18:2 18:4
**specified** 18:4
**specify** 22:24
**speculate** 11:12
**spelled** 20:19
**spoke** 20:16 30:7 30:21 33:3 41:15
**stand** 17:10 38:16
**stands** 39:4
**start** 39:16
**state** 7:13 44:5
**stated** 18:7
**stating** 21:21 40:11
**staying** 20:11
**stenographic** 7:10 14:3 41:21 43:6
**street** 1:15 2:4 2:15 8:7,10 18:6
**strike** 18:14 22:20 28:5,15 36:21
**stuff** 20:3 24:19
**subject** 44:10
**subpoenaed** 4:20
**Subscribed** 46:14
**substance** 46:8
**summarize** 21:8
**supervise** 8:1,10 8:18 12:9
**supervising** 10:14 14:9 19:15 35:24
**supervision** 12:14,19 14:14 43:17
**supervisor** 13:6

13:10 22:10,12 27:17 29:11 31:13 32:1 33:8 34:5 35:14 40:6
**sure** 41:8
**surrounding** 21:24
**suspect** 25:4 28:8
**suspect's** 42:5
**sworn** 4:9 46:14
**system** 13:19 39:15

---
**T**
**T** 3:8 45:1
**take** 17:24
**taken** 1:14 43:6
**talk** 22:13
**team** 17:20 19:12
**technical** 8:16
**technically** 9:3
**tell** 5:13 7:19 10:21 20:2 21:5 22:7 26:8 39:16
**telling** 37:17
**TERM** 1:5
**terms** 8:14 13:19
**terrorizing** 21:23
**testified** 4:10
**thank** 16:21 35:4
**thing** 17:17
**things** 5:6 9:21 13:16 31:20
**think** 14:18 18:23 19:1,5 19:21 24:11
**thirty** 44:15
**time** 4:6 10:24 11:12 15:2 16:23 18:1,11 20:4 22:1,9 26:9,22 27:17 30:7,21 39:8

39:13 40:20 41:8,14,15
**times** 5:10 41:6
**title** 8:21 9:1,7 14:8 15:1
**today** 4:19 21:2 23:21 29:16 32:13 33:2,24 40:16
**today's** 4:20
**told** 22:15 26:7 26:11,22 35:17 37:8
**touch** 27:10
**training** 9:22,24
**transcribed** 43:5
**transcript** 43:5 43:17 44:16,17
**transcription** 46:5
**transfer** 16:11
**transferred** 12:10,11
**transferring** 30:1
**trial** 4:6
**trouble** 11:22
**true** 43:4
**try** 10:19 29:2 40:24
**trying** 6:7,13 7:23 17:24 21:9,10 25:3 40:18,19 41:3
**Twenty-two** 7:6
**two** 9:6

---
**U**
**unaware** 33:24
**uncomfortable** 11:18,20
**understand** 11:6 12:22
**understanding** 11:13,23 16:17 25:1
**union** 9:15
**unit** 16:4,12
**unnecessarily**

**unrelated** 5:16 7:2
**unwilling** 24:12
**usually** 15:21 16:10 29:24 30:13 41:12

**V**
**verified** 34:21 35:7
**verifies** 19:11
**verify** 19:12 22:6,16 35:14 41:7,11
**verifying** 41:10
**VICTIMS** 2:3
**VICTIMS'** 1:14
**violation** 8:16 8:16
**visit** 22:17 36:4 36:8,12,19
**visits** 22:5
**voicemail** 40:11
**vs** 1:7

**W**
**waived** 4:4
**want** 7:12 10:9 13:13 21:7 28:6 34:9 41:23
**wanted** 19:18 21:22 26:23 34:21 35:6
**warrant** 20:15 22:2,23 28:19
**wasn't** 9:10
**way** 28:19
**we're** 6:15 24:18
**Weindel** 1:18 43:3,13
**went** 12:18 17:21 18:3,7 18:10 20:4
**West** 2:3 3:4 4:14,16 5:4 6:6 6:13,18,20 7:7 7:17,18 8:11 9:13,22 10:3 11:7 13:1,9,15 13:24 14:5,7 14:23 15:18 16:5 18:14,17 19:17 20:5,19 20:21 23:10,19 24:10,16,23 25:9,21 26:10 26:19 27:3,19 28:3,12 29:4 29:13 30:4,16 31:6,22 32:6 32:12 34:13,24 37:1,6,12,14 37:22 38:8,13 38:15,20,24 39:20 42:7
**willing** 29:6 31:8
**willingly** 28:16 40:1
**Witness** 2:12 3:2 7:23 12:23 13:10 14:20 15:12 16:2 19:4 20:1 23:9 23:18 24:6,18 25:7,19 26:6 26:18 27:2,16 28:1,11 29:3 29:10,21 30:11 31:1,18 32:5 32:11,16 33:21 35:2 36:15 37:21 38:7,22 44:1
**wonderful** 32:14
**worked** 7:4
**wouldn't** 21:16 28:5 31:13
**write** 12:7 18:18 36:18
**written** 21:12

**X**
**X** 3:1,8

**Y**
**Yeah** 29:10
**years** 7:6 9:3,6 29:18

**Z**

**0**
**01633** 1:6
**08051** 1:23

**1**
**1** 39:5
**1:00** 40:10
**10:00** 1:17
**10:39** 42:12
**12:30** 34:16 40:10
**121** 1:15 2:4
**14** 9:3
**14th** 2:16
**15** 1:11 43:7
**1515** 2:15
**18th** 1:16 2:4
**19102** 2:16
**19107** 1:16 2:5 2:10

**2**
**2** 33:4 34:10 35:2,3 40:9
**2011-ish** 10:9
**2019** 12:24 14:10,17,21 15:7 17:8 18:3 19:21
**2020** 12:13
**2021** 33:5 34:10
**2022** 1:5
**2023** 1:11 43:7 46:15
**21** 35:2,3 40:9
**214-0377** 2:17
**215** 2:5,11
**215-683-1097** 40:13
**26** 14:20 18:3
**29** 17:8

**3**
**3** 39:2
**30** 44:15
**32** 3:5
**352** 2:17
**369** 2:10

**37** 3:4
**39** 3:5

**4**
**4** 3:4,11
**4/25/2019** 17:20 18:8
**4/26** 18:21
**406** 1:23

**5**
**546-1433** 2:5
**589-1107** 1:24

**6**
**686-3745** 2:11

**7**
**7/24/2020** 12:11

**8**
**856** 1:24

**9**
**9** 12:24