# Transcript of the Testimony of:
# **Jaclyn Matteo-Hand**

**Date:** September 27, 2023

**Case:** Alvarado v. City of Philadelphia, et al

Diamond Court Reporting
Phone:856-589-1107
Fax:856-589-4741
Email:dcr.diamond@comcast.net

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

--------------------------- :
FELISHATAY ALVARADO,   :
                 :
    Plaintiff  : June Term,
             : 2022
    vs.       :
           : No. 01633
CITY OF PHILADELPHIA,   :
ET AL,        :
              :
    Defendants  :
--------------------------- :

- - -
September 27, 2023
- - -

Remote Oral Deposition of JACLYN MATTEO-HAND, taken via Zoom conference technology, on the above date, beginning at approximately 1:00 p.m., before Dawn M. Burr, a Professional Court Reporter and Notary Public, there being present.

- - -

DIAMOND COURT REPORTING
406 Redbud Lane
Mantua, New Jersey 08051
(856) 589-1107
dcr.diamond@comcast.net

---

A P P E A R A N C E S :

VICTIMS' RECOVERY LAW CENTER
BY: KEITH THOMAS WEST, ESQUIRE
The North American Building
121 South Broad Street, 18th Floor
Philadelphia, PA 19107
Counsel for the Plaintiff
Tel. 215-546-1433
E-mail: keith@victimrecoverylaw.com
* * * * *

CITY OF PHILADELPHIA - LAW DEPARTMENT
BY: ADAM R. ZURBRIGGEN, ESQUIRE
One Parkway Building
1515 Arch Street
Philadelphia, PA 19102
Counsel for the Defendants
Tel. 215-683-5114
E-mail: adam.zurbriggen@phila.gov
* * * * *

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
DEPUTY COURT ADMINISTRATOR CHIEF - LEGAL SERVICES
BY: ERIC J. ASSINI, ESQUIRE
369 City Hall
Philadelphia, PA 19107
Counsel for the Witness,
Jaclyn Matteo-Hand
Tel. 215-686-3745
E-mail: eric.assini@courts.phila.gov
* * * * *

---

I N D E X

WITNESS              PAGE
JACLYN MATTEO-HAND
Examination by Mr. West     4
Examination by Mr. Assini    28

EXHIBITS
NO.       DESCRIPTION      PAGE

Matteo-Hand-1  Home Investigation    28
               Interview
                       28
Matteo-Hand-2  Client File Notes

---

- - -

(It was stipulated by and between counsel that all objections, except as to the form of the question, be reserved until the time of trial.)

- - -

. . . JACLYN MATTEO-HAND, having been duly sworn as a witness, was examined and testified as follows. . .

EXAMINATION

- - -

BY MR. WEST:

    Q.    Ms. Matteo-Hand, my name is Keith West. I'm one of the attorneys who represents the plaintiff in this action, a woman by the name of Ms. Alvarado. My understanding is that you are with the Probation and Parole Office; is that right?

    A.    Yes.

    Q.    Could you tell us what is your current job position and employer?

    A.    I work for the FJD, First Judicial District. I am a Probation Parole Officer II, and

1   I am working as house arrest release coordinator
2   at this point.
3       Q.   So as part of the house release
4   coordinator, do you actually go to the house of
5   people who are put on probation and inspect the
6   house trying to make sure that it fits any sort of
7   criteria for release?
8           MR. ASSINI:  Objection to the form,
9       but you can answer.
10          THE WITNESS:  No, I do not.
11  BY MR. WEST:
12      Q.   Could you tell me what do you do as
13  the home coordinator?
14      A.   I would get a contact sheet and
15  court order from the attorney and the judge.  I
16  would call them on the phone.  We complete an
17  investigation.  I complete an investigation on the
18  computer.  I hand it into our pretrial field team.
19  They would go out and install the equipment at the
20  residence.
21      Q.   So I think you referred to the
22  people who would actually go out to the home
23  as -- it cut out a little bit.  Something team?
24      A.   Pretrial field team.

1       Q.   Could you tell me a bit more about
2   the pretrial field team; what is that?
3       A.   They install house arrest equipment
4   in the residence.
5       Q.   Now, is that something that needs
6   to be done for all probations or some probations?
7           MR. ASSINI:  Objection to the form,
8       but you can answer.
9           THE WITNESS:  Just house arrest
10      cases, that are sentenced to house
11      arrest.
12  BY MR. WEST:
13      Q.   So this case involves someone named
14  Bernard Lee.  Was he put on house arrest?
15      A.   Yes.
16      Q.   And for every person who's placed
17  under house arrest, would there need to be some
18  people from the pretrial field team who go out and
19  inspect their house?
20          MR. ASSINI:  Objection to form.
21      You can answer.
22          THE WITNESS:  Yes.
23  BY MR. WEST:
24      Q.   So not to beat a dead horse, but in

1   the City of Philadelphia, every time somebody is
2   placed under house arrest, that would mean
3   somebody from the office would have actually gone
4   to that person's house and inspected the premises,
5   right?
6           MR. ASSINI:  Objection to form, but
7       you can answer to the extent --
8           THE WITNESS:  Yes.
9   BY MR. WEST:
10      Q.   So let's -- I'm going to pull up
11  here a document.  I can represent this was
12  e-mailed to us earlier today.  Then I'll ask you
13  if you know what it is.  Can you guys see my
14  screen here?
15      A.   Yes.
16      Q.   So we're gonna mark this as
17  Matteo-Hand Exhibit-1.  And could you tell me what
18  this is?
19      A.   This is a home investigation
20  interview, which I complete over the phone.
21      Q.   Okay.  So you personally did this
22  interview?
23      A.   Yes.
24      Q.   I tried to use TrialPad and it

1   wouldn't work.  So I gotta do something else here.
2   I think this might be the same thing.
3           So I'm circling part of it in
4   yellow and this says interview completed with
5   Sheila Washington - mother.  Is that the person
6   that you spoke with?
7       A.   According to my notes, yes.
8       Q.   I'm just going down here.  The
9   address, I'm gonna mark that in yellow as well.
10  That says 4664 Torresdale Avenue, rear apartment,
11  two floors, and then it says go up alleyway to
12  knock on door, right?
13      A.   Yes.
14      Q.   Did you write that?
15      A.   I did.
16      Q.   How would you have gotten the
17  information on what the address was?
18      A.   When I spoke to his mother.
19      Q.   So your understanding, based on
20  your notes, is that you spoke with his mother who
21  represented that she lived in the same apartment
22  and she told you that the entrance to their
23  apartment was in the alleyway, correct?
24      A.   Yes.

Electronically signed by Dawn Burr (101-019-021-7097)   68da893f-dd31-4841-b103-f3ba3e290bd9

1    Q.    Is there anything else in
2  particular that you recall about that
3  conversation?
4    A.    No.
5    Q.    Okay. Do you know approximately
6  when this conversation would have happened? I see
7  also it's dated September 25th, this year, but I
8  assume that's just when you printed it out, right?
9    A.    Correct. It was completed on April
10 25th, 2019.
11    Q.    Okay, in April 2019. Now, our
12 lawsuit, that this case is about, is an incident
13 that occurred in 2021. Did anyone from the
14 Philadelphia Police Department ever contact you
15 asking for information about how to get to Bernard
16 Lee's homes?
17    A.    No.
18    Q.    If anybody from the Philadelphia
19 Police Department had contacted you asking for
20 advice on how to get to Bernard Lee's home, would
21 you have referred to these notes and let them know
22 that your records indicated that the entrance was
23 through the alleyway?
24    MR. ASSINI: Objection to form.

1    You can answer.
2    THE WITNESS: I'm not sure. I
3    wasn't in that position and I would
4    most likely need to ask my supervisor if
5    we're able to give that information.
6  BY MR. WEST:
7    Q.    Who's your supervisor?
8    A.    My supervisor?
9    Q.    Yeah.
10    A.    Right now is Zakia Balon.
11    Q.    Who would have been your supervisor
12 back in June of 2021?
13    A.    I didn't have the case in June
14 2021.
15    Q.    You did not have any supervisor in
16 June 2021?
17    A.    No.
18    MR. ASSINI: Hold on. No, you
19    didn't have a supervisor, or no --
20    THE WITNESS: No. I had a
21    supervisor, but I was not supervising
22    this case.
23  BY MR. WEST:
24    Q.    Okay. Are you currently

1  supervising this case?
2    A.    No.
3    Q.    Who was your supervisor back in
4  June 2021?
5    A.    Duane Archie, D-U-A-N-E, Archie,
6  A-R-C-H-I-E.
7    Q.    In your experience working for the
8  First Judicial District, have you ever been
9  contacted by anybody from the police department
10 asking for advice as far as how someone on
11 probation or parole could be located?
12    MR. ASSINI: Objection to form.
13    You can answer.
14    THE WITNESS: No, not that I
15    recall.
16  BY MR. WEST:
17    Q.    Okay. Would the police normally
18 contact somebody in a different position in your
19 experience?
20    MR. ASSINI: Objection to form.
21    You can answer.
22    MR. ZURBRIGGEN: Joining in the
23    objection.
24    THE WITNESS: I'm not sure.

1  BY MR. WEST:
2    Q.    Could you tell me a bit more about
3  your -- like what were your job duties and
4  responsibilities back in June 2021?
5    A.    I was doing the same thing with the
6  house arrest release coordinations. So I was
7  placing -- getting people ready to be placed on
8  house arrest.
9    Q.    So who would you create these
10 records for?
11    A.    Repeat the question.
12    Q.    The record that you've given us,
13 that we've marked Matteo-Hand-1, is a written
14 record of a conversation you had with Sheila
15 Washington, right?
16    MR. ASSINI: Object to the form.
17    You can answer.
18    THE WITNESS: Basically, yes.
19  BY MR. WEST:
20    Q.    Why did you create this?
21    A.    It's my job to create that.
22    Q.    What is your understanding as to
23 why your employer asked you to make these?
24    MR. ASSISI: Objection to form.

Electronically signed by Dawn Burr (101-019-021-7097)                68da893f-dd31-4841-b103-f3ba3e290bd9

1    You can answer.
2         THE WITNESS:  To get all the
3    information to get defendants placed on
4    house arrest.
5    BY MR. WEST:
6         Q.    Who would use that information, in
7    your experience?
8         MR. ASSINI:  Objection to form.
9    You can answer.
10        THE WITNESS:  The pretrial field
11   team uses it, probation officers use
12   it.
13   BY MR. WEST:
14        Q.    So would the information that
15   you've written down in this exhibit be available
16   to the probation officer?
17        A.    Yes.
18        Q.    So in theory, if someone at the --
19   strike the question.
20        In your experience, the way that
21   the probation parole office is set up in the First
22   Judicial District, if somebody were to ask the
23   probation officer what records there where as far
24   as where Bernard Lee lived, is it your experience

1    that the probation officer could have looked at
2    documents like this if they wanted to find an
3    answer to that question?
4         MR. ASSINI:  Objection to the form.
5    You can answer.
6         THE WITNESS:  I'm not sure if this
7    document was available in 2021 for
8    someone to look at.
9    BY MR. WEST:
10        Q.    Do you have any reason to believe
11   -- I'm sorry.  Did I interrupt you?
12        A.    In 2019 it was available, but he
13   was no longer on house arrest in 2021.
14        Q.    So in 2019 it was available because
15   that's when it was created, right?
16        A.    Right.
17        Q.    And it must be available now
18   because you just obtained it a couple days ago,
19   right?
20        A.    Yes, on my computer.
21        Q.    And besides saving it on your
22   computer, did you save it somewhere else?
23        A.    I personally -- no, I did not.
24        Q.    Did you submit this paperwork to

1    someone?
2         A.    Yes.
3         Q.    Who did you submit it to?
4         A.    The pretrial field team.
5         Q.    Okay.  And they also would have
6    passed that along to the probation officer, right?
7         MR. ASSINI:  Objection to the form.
8    You can answer, if you know.
9         MR. ZURBRIGGEN:  Joining in the
10   objection.
11        THE WITNESS:  I passed it along to
12   the house arrest officer.
13   BY MR. WEST:
14        Q.    I can represent that, as of June
15   2021, Bernard Lee still had a probation officer.
16   Would it be your understanding or expectation that
17   the probation officer would have had documents
18   like this in her possession, or access to it?
19        A.    I'm not sure.
20        Q.    In your experience, has there ever
21   been a situation where the Philadelphia Police
22   Department contacted the office that you work for
23   asking for information about a wanted suspect and
24   a supervisor at your office said don't talk to the

1    police?
2         MR. ASSINI:  Objection to the form.
3    You can answer to what you know.
4         THE WITNESS:  I've never spoken to
5    a police office about a suspect.
6    BY MR. WEST:
7         Q.    I'm just asking because you said
8    that before you spoke to a police officer you'd
9    have to ask for a supervisor to approve that?  I'm
10   just wondering is there anything in your
11   experience, or anything you've ever heard, that
12   would lead you to believe that a supervisor would
13   ever even consider saying, hey, don't tell the
14   police where that guy is?
15        A.    I have no idea.
16        Q.    But is it fair to say that you've
17   never had any experience that would lead you to
18   believe that a supervisor would ever deny a
19   request like that?
20        MR. ASSINI:  Objection to form, but
21   you can answer.
22        MR. ZURBRIGGEN:  Join.
23        THE WITNESS:  I have no idea.  I'm
24   not a supervisor.

Electronically signed by Dawn Burr (101-019-021-7097)    68da893f-dd31-4841-b103-f3ba3e290bd9

BY MR. WEST:

Q. Okay. Do you know if this document was saved in Bernard Lee's probation folder?

MR. ASSINI: Objection to the form, but you can answer to the extent you understand the question.

THE WITNESS: It may have been. I can't say for sure.

BY MR. WEST:

Q. Is that -- could you look up that folder now and check if it's in there?

A. Can I?

Q. Yeah.

MR. ASSINI: Not from here. We're in my office and I don't have access to that.

BY MR. WEST:

Q. Okay. But is that something you would normally have access to?

A. Yes, if I was at my office, sure.

Q. Based on your understanding of the policies and practices of your employer, would there be any reason why this document wouldn't be in his probation folder?

MR. ASSINI: Objection to the form, but you can answer to the extent you know.

THE WITNESS: I guess it should have been. I don't really know. I didn't have the file.

MR. WEST: All right. Let me -- I'm gonna stop sharing for just a moment to pull up another document. Can you guys see the document I'm sharing?

MR. ASSINI: Yes.

BY MR. WEST:

Q. So this document has been previously marked as Shannon Exhibit-1. We're also gonna mark the same document as Matteo-Hand Exhibit-2. Just for the record, it says Client File Notes at the top. Do you recognize what this is generally? Is this the kind of document you've seen before?

A. Yes.

Q. Can you tell me, in your experience, generally what are documents like this used for?

A. That's our monitor. That's where

we put all of our notes in.

Q. Is this something that the probation officer would normally have access to?

A. Yes.

Q. I can represent to you this is for Bernard Lee. I don't know if you can see that, but it says Bernard Lee on it, okay. This was produced to us by Ms. Shannon, the probation officer, when she was deposed earlier. I'll just scroll down here to -- I highlighted something. I don't know why the highlighting is not showing up. So I'll just do it again. I apologize. I premarked this, but it didn't come through for some reason. So I will use a highlighting tool.

Can you see that I've highlighted part of this page?

A. Yes.

Q. It says April 26th, 2019, completed, and it says Matteo J. Is that you?

A. Yes.

Q. And it says author. Does that mean that you wrote this?

A. Yes.

Q. And it says field team installed

PHMU. Can you tell us what PHMU would stand for in this context?

A. Sure. It's the house arrest box.

Q. And it says location: second floor apartment, rear entrance off Margaret Street, right?

A. Yes.

Q. So is this you memorializing that -- so that everyone in your office would know that the entrance to Mr. Lee's apartment was off Margaret Street?

MR. ASSINI: Objection to form. You can answer.

THE WITNESS: Yes. This was copied from pretrial field team notes and put into our notes so everyone would know.

BY MR. WEST:

Q. So any of the people involved with Bernard Lee's case at the probation office, if they were contacted and asked hey, do you have any information on how to get into Bernard Lee's apartment, they could have pulled this up and said, yeah, you gotta go in the rear entrance off Margaret Street, right?

Electronically signed by Dawn Burr (101-019-021-7097)

68da893f-dd31-4841-b103-f3ba3e290bd9

MR. ASSINI: Objection to the form. You can answer.

MR. ZURBRIGGEN: I'm joining in the objection.

THE WITNESS: Yes.

BY MR. WEST:

Q. I understand that you personally haven't had the experience of speaking with anybody from the police department about how to find a suspect who's on probation, but I'm just asking generally, in your experience, do you know if the police contact other people in your office to ask for that kind of information?

A. They could, I guess. I don't know of any.

Q. I don't know what kind of briefing you might get from you're employer. So you're not really aware if the probation officers are asked that sort of question or not?

MR. ASSINI: Objection.

THE WITNESS: No. Sorry.

MR. WEST: That's fine.

BY MR. WEST:

Q. Is there any policy in your office,

that you're aware of, that would give anyone any reason to believe that supervisors in your office would ever instruct anybody in your office, you know, hey, don't tell the police where these guys are?

MR. ASSINI: Objection to the form. You can answer.

THE WITNESS: Not in my recollection. I would need to review policy.

MR. ZURBRIGGEN: I'm joining in the objection, just for the record.

BY MR. WEST:

Q. All right. In any case, if somebody did contact your office and the records were pulled, your office's records clearly showed that the entrance to Bernard Lee's apartment was the rear entrance off Margaret Street, correct?

MR. ASSINI: Objection to the form. You can answer.

MR. ZURBRIGGEN: I'm joining in the objection.

THE WITNESS: Correct.

BY MR. WEST:

Q. Is there anything else at this time that you recall about the Bernard Lee case? Did you ever have any unusual interactions with him, maybe not the police, but anyone else? Is there anything else that you recall at this time about the Bernard Lee case?

A. No.

Q. I think you indicated he was off house arrest at some point. Do you know when he would have been off house arrest?

A. He actually absconded in July of 2019.

Q. Can you tell me more about that?

A. He absconded. So he left. I'm not sure if he cut off his bracelet or whatever, but he was no longer reporting. We didn't know where he was. There was a warrant out for him.

Q. So between July of 2019 and up until at least June of 2021, from your office's point of view, was Bernard Lee's whereabouts unknown?

MR. ASSINI: October to the form, but you can answer to the extent you can.

THE WITNESS: To my knowledge, eventually he was found, yes.

BY MR. WEST:

Q. Can you tell me about when he was found?

A. May of 2020.

Q. And where was he found?

A. That I do not know.

Q. Once he was found, was he taken back to prison, jail, was he put back on house arrest?

A. He was taken to prison.

Q. Do you know how long he was taken back to prison for?

A. I think his detainer was lifted in June of 2020.

Q. Okay. So only a month?

A. Yeah, with no house arrest.

Q. All right. I've definitely heard of worst fates for absconding, but okay.

So then between June of 2020 and June of 2021, do you know what his status was; was he on house arrest, something else?

A. This is all according to the

Electronically signed by Dawn Burr (101-019-021-7097)

1  notes.
2      Q.    Okay.
3      A.    He was not on house arrest.  He was
4  -- I assume he was reporting to a probation
5  officer.
6          MR. ASSINI:  Do you know that for
7      sure?
8          THE WITNESS:  No, I don't know that
9      for sure.  I didn't read every note.  I
10     just read my part of the notes.
11 BY MR. WEST:
12     Q.    So as of June 2021, is it your
13 understanding that Bernard Lee was under probation
14 and was supposed to be reporting to a probation
15 officer?
16     A.    June of -- I believe so, yes.
17     Q.    I don't want to take up more of
18 your time and this is a little bit outside, but I
19 think I have to ask the question in case I'm
20 missing something.
21          To me it seems a little strange
22 that he would be on house arrest, abscond, and
23 then be released to what seems like a lower level
24 of supervision.  Do you have any insight in the

1  records of why that might have been?
2          MR. ASSINI:  Objection to form, but
3      you can -- if you have any insight.
4          THE WITNESS:  I'm gonna say it was
5      COVID.
6  BY MR. WEST:
7      Q.    Okay.  They just didn't have a lot
8  of room in jail, right, probably?  I mean we're
9  guessing.
10         MR. ASSINI:  I just want to -- for
11     the record, it's not the PO's
12     determination in any way.  It's up to a
13     judge.
14 BY MR. WEST:
15     Q.    I'm just saying you don't see
16 anything in the record that like says they
17 pardoned him of some crime or something.  There's
18 nothing in there to explain why he would be lower
19 level, right, other than possible just scarcity?
20         MR. ASSINI:  Objection to the form,
21     but you --
22         MR. WEST:  Okay.  I don't need her
23     to go into that.
24 BY MR. WEST:

1      Q.    Just the last question.  So the two
2  exhibits that we've looked at, these are things
3  that, in your experience, would have been
4  available back in June 2020, correct?
5      A.    Yes.
6          MR. WEST:  I have no further
7      questions for you.  Thank you for taking
8      a little bit of your time.
9          THE WITNESS:  Thank you.
10         MR. ZURBRIGGEN:  I have no
11     questions for you.  I just need to
12     designate on the record those portions
13     of this deposition mentioning Bernard
14     Lee's name be designated confidential
15     pursuant to the protective order.
16         MR. WEST:  I have no objection to
17     that.
18         MR. ZURBRIGGEN:  Thank you very
19     much for your time.
20         MR. ASSINI:  I just have brief
21     questions.
22              - - -
23         EXAMINATION
24              - - -

1  BY MR. ASSINI:
2      Q.    Do you have any independent memory
3  of Bernard Lee?
4      A.    No.
5      Q.    So your memory is based off of your
6  review of the file notes that are offered as an
7  exhibit and the report also offered as an exhibit
8  today?
9      A.    Absolutely.
10         MR. ASSINI:  No further questions.
11              - - -
12         (Whereupon, Exhibits Matteo-Hand-1
13     and Matteo-Hand-2 were marked for
14     identification.)
15              - - -
16         (Whereupon, the deposition
17     concluded at 1:30 p.m.)
18              - - -
19
20
21
22
23
24

Electronically signed by Dawn Burr (101-019-021-7097)

68da893f-dd31-4841-b103-f3ba3e290bd9

1
2          CERTIFICATION
3
4          I, DAWN M. BURR, hereby certify
5    that the foregoing is a true and correct
6    transcript transcribed from the stenographic notes
7    taken by me on Wednesday, September 27, 2023.
8
9
10         _Dawn_
11         DAWN M. BURR
12         Shorthand Reporter
13
14         (This certification does not apply
15   to any reproduction of this transcript, unless
16   under the direct supervision of the certifying
17   reporter.)
18
19
20
21
22
23
24

1          ACKNOWLEDGEMENT OF DEPONENT
2          I, JACLYN MATTEO-HAND, do hereby
3    certify that I have read the foregoing pages,
4    _____, and that the same is a correct
5    transcript of the answers given by me to the
6    questions therein propounded, except for the
7    corrections or changes in form or substance, if
8    any, noted in the attached Errata Sheet.
9    _____    _____
     DATE               SIGNATURE
10
                - - - - - - - -
11              E R R A T A
12              - - - - - - - -
13   PAGE   LINE       CHANGE
14
15
16
17
18
19
20   SUBSCRIBED AND SWORN TO BEFORE ME THIS
21   _____DAY OF _____, 2023.
22   My Commission expires: _____
                Notary Public
23
24

Electronically signed by Dawn Burr (101-019-021-7097)

68da893f-dd31-4841-b103-f3ba3e290bd9

**A**

**A-R-C-H-I-E** 11:6
**able** 10:5
**abscond** 25:22
**absconded** 23:11,14
**absconding** 24:20
**Absolutely** 28:9
**access** 15:18 17:15,19 19:3
**ACKNOWLE...** 30:1
**action** 4:16
**ADAM** 2:8
**adam.zurbrig...** 2:11
**address** 8:9,17
**ADMINISTR...** 2:13
**advice** 9:20 11:10
**ago** 14:18
**AL** 1:7
**alleyway** 8:11,23 9:23
**Alvarado** 1:4 4:17
**American** 2:3
**answer** 5:9 6:8 6:21 7:7 10:1 11:13,21 12:17 13:1,9 14:3,5 15:8 16:3,21 17:5 18:2 20:13 21:2 22:7,20 23:23
**answers** 30:5
**anybody** 9:18 11:9 21:9 22:3
**apartment** 8:10 8:21,23 20:5 20:10,22 22:17
**apologize** 19:12
**apply** 29:14
**approve** 16:9
**approximately** 1:17 9:5

**April** 9:9,11 19:18
**Arch** 2:9
**Archie** 11:5,5
**arrest** 5:1 6:3,9 6:11,14,17 7:2 12:6,8 13:4 14:13 15:12 20:3 23:9,10 24:11,18,23 25:3,22
**asked** 12:23 20:20 21:18
**asking** 9:15,19 11:10 15:23 16:7 21:11
**Assini** 2:14 3:5 5:8 6:7,20 7:6 9:24 10:18 11:12,20 12:16 13:8 14:4 15:7 16:2,20 17:4 17:14 18:1,11 20:12 21:1,20 22:6,19 23:22 25:6 26:2,10 26:20 27:20 28:1,10
**ASSISI** 12:24
**assume** 9:8 25:4
**attached** 30:8
**attorney** 5:15
**attorneys** 4:15
**author** 19:21
**available** 13:15 14:7,12,14,17 27:4
**Avenue** 8:10
**aware** 21:18 22:1

**B**

**back** 10:12 11:3 12:4 24:10,10 24:14 27:4
**Balon** 10:10
**based** 8:19 17:21 28:5
**Basically** 12:18

**beat** 6:24
**beginning** 1:17
**believe** 14:10 16:12,18 22:2 25:16
**Bernard** 6:14 9:15,20 13:24 15:15 17:3 19:6,7 20:19 20:21 22:17 23:2,6,20 25:13 27:13 28:3
**bit** 5:23 6:1 12:2 25:18 27:8
**box** 20:3
**bracelet** 23:15
**brief** 27:20
**briefing** 21:16
**Broad** 2:3
**Building** 2:3,8
**Burr** 1:18 29:4 29:11

**C**

**C** 2:1
**call** 5:16
**case** 6:13 9:12 10:13,22 11:1 20:19 22:14 23:2,6 25:19
**cases** 6:10
**CENTER** 2:2
**certification** 29:2,14
**certify** 29:4 30:3
**certifying** 29:16
**CHANGE** 30:13
**changes** 30:7
**check** 17:11
**CHIEF** 2:13
**circling** 8:3
**City** 1:7 2:7,15 7:1
**clearly** 22:16
**Client** 3:11 18:16
**come** 19:13
**Commission**

30:22
**COMMON** 1:1
**complete** 5:16 5:17 7:20
**completed** 8:4 9:9 19:19
**computer** 5:18 14:20,22
**concluded** 28:17
**conference** 1:16
**confidential** 27:14
**consider** 16:13
**contact** 5:14 9:14 11:18 21:12 22:15
**contacted** 9:19 11:9 15:22 20:20
**context** 20:2
**conversation** 9:3 9:6 12:14
**coordinations** 12:6
**coordinator** 5:1 5:4,13
**copied** 20:14
**correct** 8:23 9:9 22:18,23 27:4 29:5 30:4
**corrections** 30:7
**counsel** 2:4,10 2:16 4:3
**COUNTY** 1:2
**couple** 14:18
**court** 1:1,18,21 2:13 5:15
**COVID** 26:5
**create** 12:9,20 12:21
**created** 14:15
**crime** 26:17
**criteria** 5:7
**current** 4:22
**currently** 10:24
**cut** 5:23 23:15

**D**

**D** 3:1

**D-U-A-N-E** 11:5
**date** 1:17 30:9
**dated** 9:7
**Dawn** 1:18 29:4 29:11
**DAY** 30:21
**days** 14:18
**dcr.diamond...** 1:23
**dead** 6:24
**defendants** 1:8 2:10 13:3
**definitely** 24:19
**deny** 16:18
**department** 2:7 9:14,19 11:9 15:22 21:9
**DEPONENT** 30:1
**deposed** 19:9
**deposition** 1:15 27:13 28:16
**DEPUTY** 2:13
**DESCRIPTION** 3:8
**designate** 27:12
**designated** 27:14
**detainer** 24:15
**determination** 26:12
**DIAMOND** 1:21
**different** 11:18
**direct** 29:16
**District** 2:12 4:24 11:8 13:22
**document** 7:11 14:7 17:2,23 18:9,10,13,15 18:18
**documents** 14:2 15:17 18:22
**doing** 12:5
**door** 8:12
**Duane** 11:5
**duly** 4:8
**duties** 12:3

### E

**E** 2:1,1 3:1
  30:11
**E-mail** 2:5,11,17
**e-mailed** 7:12
**earlier** 7:12 19:9
**employer** 4:22
  12:23 17:22
  21:17
**entrance** 8:22
  9:22 20:5,10
  20:23 22:17,18
**equipment** 5:19
  6:3
**ERIC** 2:14
**eric.assini@co...**
  2:17
**Errata** 30:8
**ESQUIRE** 2:2,8
  2:14
**ET** 1:7
**eventually** 24:2
**Examination**
  3:4,5 4:11
  27:23
**examined** 4:9
**exhibit** 13:15
  28:7,7
**Exhibit-1** 7:17
  18:14
**Exhibit-2** 18:16
**exhibits** 3:8 27:2
  28:12
**expectation**
  15:16
**experience** 11:7
  11:19 13:7,20
  13:24 15:20
  16:11,17 18:22
  21:8,11 27:3
**expires** 30:22
**explain** 26:18
**extent** 7:7 17:5
  18:2 23:23

### F

**fair** 16:16
**far** 11:10 13:23
**fates** 24:20

**FELISHATAY**
  1:4
**field** 5:18,24 6:2
  6:18 13:10
  15:4 19:24
  20:15
**file** 3:11 18:6,17
  28:6
**find** 14:2 21:10
**fine** 21:22
**First** 2:12 4:23
  11:8 13:21
**fits** 5:6
**FJD** 4:23
**floor** 2:3 20:4
**floors** 8:11
**folder** 17:3,11
  17:24
**follows** 4:9
**foregoing** 29:5
  30:3
**form** 4:4 5:8 6:7
  6:20 7:6 9:24
  11:12,20 12:16
  12:24 13:8
  14:4 15:7 16:2
  16:20 17:4
  18:1 20:12
  21:1 22:6,19
  23:22 26:2,20
  30:7
**found** 24:2,5,7,9
**further** 27:6
  28:10

### G

**generally** 18:18
  18:22 21:11
**getting** 12:7
**give** 10:5 22:1
**given** 12:12 30:5
**go** 5:4,19,22
  6:18 8:11
  20:23 26:23
**going** 7:10 8:8
**gonna** 7:16 8:9
  18:8,15 26:4
**gotta** 8:1 20:23
**gotten** 8:16

**guess** 18:4 21:14
**guessing** 26:9
**guy** 16:14
**guys** 7:13 18:10
  22:4

### H

**Hall** 2:15
**hand** 5:18
**happened** 9:6
**heard** 16:11
  24:19
**hey** 16:13 20:20
  22:4
**highlighted**
  19:10,15
**highlighting**
  19:11,14
**Hold** 10:18
**home** 3:9 5:13
  5:22 7:19 9:20
**homes** 9:16
**horse** 6:24
**house** 5:1,3,4,6
  6:3,9,10,14,17
  6:19 7:2,4 12:6
  12:8 13:4
  14:13 15:12
  20:3 23:9,10
  24:10,18,23
  25:3,22

### I

**idea** 16:15,23
**identification**
  28:14
**II** 4:24
**incident** 9:12
**independent**
  28:2
**indicated** 9:22
  23:8
**information**
  8:17 9:15 10:5
  13:3,6,14
  15:23 20:21
  21:13
**insight** 25:24
  26:3
**inspect** 5:5 6:19

**inspected** 7:4
**install** 5:19 6:3
**installed** 19:24
**instruct** 22:3
**interactions**
  23:3
**interrupt** 14:11
**interview** 3:10
  7:20,22 8:4
**investigation** 3:9
  5:17,17 7:19
**involved** 20:18
**involves** 6:13

### J

**J** 2:14 19:19
**Jaclyn** 1:15 2:16
  3:3 4:7 30:2
**jail** 24:10 26:8
**Jersey** 1:22
**job** 4:22 12:3,21
**Join** 16:22
**joining** 11:22
  15:9 21:3
  22:11,21
**judge** 5:15 26:13
**Judicial** 2:12
  4:23 11:8
  13:22
**July** 23:11,18
**June** 1:5 10:12
  10:13,16 11:4
  12:4 15:14
  23:19 24:16,21
  24:22 25:12,16
  27:4

### K

**Keith** 2:2 4:14
**keith@victim...**
  2:5
**kind** 18:18
  21:13,16
**knock** 8:12
**know** 7:13 9:5
  9:21 15:8 16:3
  17:2 18:3,5
  19:6,11 20:9
  20:16 21:11,14
  21:16 22:4

  23:9,16 24:8
  24:13,22 25:6
  25:8
**knowledge** 24:1

### L

**Lane** 1:22
**LAW** 2:2,7
**lawsuit** 9:12
**lead** 16:12,17
**Lee** 6:14 13:24
  15:15 19:6,7
  23:2,6 25:13
  28:3
**Lee's** 9:16,20
  17:3 20:10,19
  20:21 22:17
  23:20 27:14
**left** 23:14
**LEGAL** 2:14
**let's** 7:10
**level** 25:23 26:19
**lifted** 24:15
**LINE** 30:13
**little** 5:23 25:18
  25:21 27:8
**lived** 8:21 13:24
**located** 11:11
**location** 20:4
**long** 24:13
**longer** 14:13
  23:16
**look** 14:8 17:10
**looked** 14:1 27:2
**lot** 26:7
**lower** 25:23
  26:18

### M

**M** 1:18 29:4,11
**Mantua** 1:22
**Margaret** 20:5
  20:11,24 22:18
**mark** 7:16 8:9
  18:15
**marked** 12:13
  18:14 28:13
**Matteo** 19:19
**Matteo-Hand**
  1:15 2:16 3:3

4:7,14 7:17
18:15 30:2
**Matteo-Hand-1**
3:9 12:13
28:12
**Matteo-Hand-2**
3:11 28:13
**mean** 7:2 19:21
26:8
**memorializing**
20:8
**memory** 28:2,5
**mentioning**
27:13
**missing** 25:20
**moment** 18:8
**monitor** 18:24
**month** 24:17
**mother** 8:5,18
8:20

**N**

**N** 2:1 3:1
**name** 4:14,16
27:14
**named** 6:13
**need** 6:17 10:4
22:9 26:22
27:11
**needs** 6:5
**never** 16:4,17
**New** 1:22
**normally** 11:17
17:19 19:3
**North** 2:3
**Notary** 1:19
30:22
**note** 25:9
**noted** 30:8
**notes** 3:11 8:7
8:20 9:21
18:17 19:1
20:15,16 25:1
25:10 28:6
29:6

**O**

**Object** 12:16
**objection** 5:8
6:7,20 7:6 9:24

11:12,20,23
12:24 13:8
14:4 15:7,10
16:2,20 17:4
18:1 20:12
21:1,4,20 22:6
22:12,19,22
26:2,20 27:16
**objections** 4:3
**obtained** 14:18
**occurred** 9:13
**October** 23:22
**offered** 28:6,7
**office** 4:18 7:3
13:21 15:22,24
16:5 17:15,20
20:9,19 21:12
21:24 22:2,3
22:15
**office's** 22:16
23:19
**officer** 4:24
13:16,23 14:1
15:6,12,15,17
16:8 19:3,9
25:5,15
**officers** 13:11
21:18
**okay** 7:21 9:5,11
10:24 11:17
15:5 17:2,18
19:7 24:17,20
25:2 26:7,22
**Once** 24:9
**Oral** 1:15
**order** 5:15 27:15
**outside** 25:18

**P**

**P** 2:1,1
**p.m** 1:17 28:17
**PA** 2:4,9,15
**page** 3:2,8 19:16
30:13
**pages** 30:3
**paperwork**
14:24
**pardoned** 26:17
**Parkway** 2:8

**parole** 4:18,24
11:11 13:21
**part** 5:3 8:3
19:16 25:10
**particular** 9:2
**passed** 15:6,11
**PENNSYLVA...**
1:2 2:13
**people** 5:5,22
6:18 12:7
20:18 21:12
**person** 6:16 8:5
**person's** 7:4
**personally** 7:21
14:23 21:7
**Philadelphia** 1:2
1:7 2:4,7,9,15
7:1 9:14,18
15:21
**PHMU** 20:1,1
**phone** 5:16 7:20
**placed** 6:16 7:2
12:7 13:3
**placing** 12:7
**plaintiff** 1:5 2:4
4:16
**PLEAS** 1:1
**PO's** 26:11
**point** 5:2 23:9
23:20
**police** 9:14,19
11:9,17 15:21
16:1,5,8,14
21:9,12 22:4
23:4
**policies** 17:22
**policy** 21:24
22:10
**portions** 27:12
**position** 4:22
10:3 11:18
**possession** 15:18
**possible** 26:19
**practices** 17:22
**premarked**
19:13
**premises** 7:4
**present** 1:19
**pretrial** 5:18,24

6:2,18 13:10
15:4 20:15
**previously** 18:14
**printed** 9:8
**prison** 24:10,12
24:14
**probably** 26:8
**probation** 4:18
4:24 5:5 11:11
13:11,16,21,23
14:1 15:6,15
15:17 17:3,24
19:3,8 20:19
21:10,18 25:4
25:13,14
**probations** 6:6,6
**produced** 19:8
**Professional**
1:18
**propounded**
30:6
**protective** 27:15
**Public** 1:19
30:22
**pull** 7:10 18:9
**pulled** 20:22
22:16
**pursuant** 27:15
**put** 5:5 6:14
19:1 20:15
24:10

**Q**

**question** 4:4
12:11 13:19
14:3 17:6
21:19 25:19
27:1
**questions** 27:7
27:11,21 28:10
30:6

**R**

**R** 2:1,8 30:11,11
**read** 25:9,10
30:3
**ready** 12:7
**really** 18:5 21:18
**rear** 8:10 20:5
20:23 22:18

**reason** 14:10
17:23 19:14
22:2
**recall** 9:2 11:15
23:2,5
**recognize** 18:17
**recollection** 22:9
**record** 12:12,14
18:16 22:12
26:11,16 27:12
**records** 9:22
12:10 13:23
22:15,16 26:1
**RECOVERY**
2:2
**Redbud** 1:22
**referred** 5:21
9:21
**release** 5:1,3,7
12:6
**released** 25:23
**Remote** 1:15
**Repeat** 12:11
**report** 28:7
**reporter** 1:18
29:12,17
**reporting** 1:21
23:16 25:4,14
**represent** 7:11
15:14 19:5
**represented**
8:21
**represents** 4:15
**reproduction**
29:15
**request** 16:19
**reserved** 4:4
**residence** 5:20
6:4
**responsibilities**
12:4
**review** 22:9 28:6
**right** 4:19 7:5
8:12 9:8 10:10
12:15 14:15,16
14:19 15:6
18:7 20:6,24
22:14 24:19
26:8,19

**room** 26:8

---
**S**

**S** 2:1
**save** 14:22
**saved** 17:3
**saving** 14:21
**saying** 16:13
26:15
**says** 8:4,10,11
18:16 19:7,18
19:19,21,24
20:4 26:16
**scarcity** 26:19
**screen** 7:14
**scroll** 19:10
**second** 20:4
**see** 7:13 9:6
18:10 19:6,15
26:15
**seen** 18:19
**sentenced** 6:10
**September** 1:12
9:7 29:7
**SERVICES**
2:14
**set** 13:21
**Shannon** 18:14
19:8
**sharing** 18:8,10
**sheet** 5:14 30:8
**Sheila** 8:5 12:14
**Shorthand**
29:12
**showed** 22:16
**showing** 19:11
**SIGNATURE**
30:9
**situation** 15:21
**somebody** 7:1,3
11:18 13:22
22:15
**sorry** 14:11
21:21
**sort** 5:6 21:19
**South** 2:3
**speaking** 21:8
**spoke** 8:6,18,20
16:8

**spoken** 16:4
**stand** 20:1
**status** 24:22
**stenographic**
29:6
**stipulated** 4:2
**stop** 18:8
**strange** 25:21
**Street** 2:3,9 20:5
20:11,24 22:18
**strike** 13:19
**submit** 14:24
15:3
**SUBSCRIBED**
30:20
**substance** 30:7
**supervising**
10:21 11:1
**supervision**
25:24 29:16
**supervisor** 10:4
10:7,8,11,15
10:19,21 11:3
15:24 16:9,12
16:18,24
**supervisors** 22:2
**supposed** 25:14
**sure** 5:6 10:2
11:24 14:6
15:19 17:8,20
20:3 23:15
25:7,9
**suspect** 15:23
16:5 21:10
**sworn** 4:8 30:20

---
**T**

**T** 30:11
**take** 25:17
**taken** 1:16 24:9
24:12,13 29:7
**talk** 15:24
**team** 5:18,23,24
6:2,18 13:11
15:4 19:24
20:15
**technology** 1:16
**Tel** 2:5,10,17
**tell** 4:21 5:12 6:1

7:17 12:2
16:13 18:21
20:1 22:4
23:13 24:4
**Term** 1:5
**testified** 4:9
**Thank** 27:7,9,18
**theory** 13:18
**thing** 8:2 12:5
**things** 27:2
**think** 5:21 8:2
23:8 24:15
25:19
**THOMAS** 2:2
**time** 4:5 7:1 23:1
23:5 25:18
27:8,19
**today** 7:12 28:8
**told** 8:22
**tool** 19:14
**top** 18:17
**Torresdale** 8:10
**transcribed** 29:6
**transcript** 29:6
29:15 30:5
**trial** 4:5
**TrialPad** 7:24
**tried** 7:24
**true** 29:5
**trying** 5:6
**two** 8:11 27:1

---
**U**

**understand** 17:6
21:7
**understanding**
4:17 8:19
12:22 15:16
17:21 25:13
**unknown** 23:21
**unusual** 23:3
**use** 7:24 13:6,11
19:14
**uses** 13:11

---
**V**

**VICTIMS'** 2:2
**view** 23:20
**vs** 1:6

---
**W**

**want** 25:17
26:10
**wanted** 14:2
15:23
**warrant** 23:17
**Washington** 8:5
12:15
**wasn't** 10:3
**way** 13:20 26:12
**we're** 7:16 10:5
17:14 18:14
26:8
**we've** 12:13 27:2
**Wednesday** 29:7
**West** 2:2 3:4
4:13,15 5:11
6:12,23 7:9
10:6,23 11:16
12:1,19 13:5
13:13 14:9
15:13 16:6
17:1,9,17 18:7
18:12 20:17
21:6,22,23
22:13,24 24:3
25:11 26:6,14
26:22,24 27:6
27:16
**whereabouts**
23:20
**witness** 2:16 3:2
4:8 5:10 6:9,22
7:8 10:2,20
11:14,24 12:18
13:2,10 14:6
15:11 16:4,23
17:7 18:4
20:14 21:5,21
22:8,23 24:1
25:8 26:4 27:9
**woman** 4:16
**wondering**
16:10
**work** 4:23 8:1
15:22
**working** 5:1
11:7
**worst** 24:20

**wouldn't** 8:1
17:23
**write** 8:14
**written** 12:13
13:15
**wrote** 19:22

---
**X**

**X** 3:1

---
**Y**

**yeah** 10:9 17:13
20:23 24:18
**year** 9:7
**yellow** 8:4,9

---
**Z**

**Zakia** 10:10
**Zoom** 1:16
**ZURBRIGGEN**
2:8 11:22 15:9
16:22 21:3
22:11,21 27:10
27:18

---
**0**

**01633** 1:6
**08051** 1:22

---
**1**

**1:00** 1:17
**1:30** 28:17
**121** 2:3
**1515** 2:9
**18th** 2:3
**19102** 2:9
**19107** 2:4,15

---
**2**

**2019** 9:10,11
14:12,14 19:18
23:12,18
**2020** 24:6,16,21
27:4
**2021** 9:13 10:12
10:14,16 11:4
12:4 14:7,13
15:15 23:19
24:22 25:12
**2022** 1:5

**2023** 1:12 29:7
  30:21
**215-546-1433**
  2:5
**215-683-5114**
  2:10
**215-686-3745**
  2:17
**25th** 9:7,10
**26th** 19:18
**27** 1:12 29:7
**28** 3:5,9,10

---
**3**
---
**369** 2:15

---
**4**
---
**4** 3:4
**406** 1:22
**4664** 8:10

---
**5**
---
**589-1107** 1:23

---
**6**
---

---
**7**
---

---
**8**
---
**856** 1:23