**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FELISHATAY ALVARADO,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 22-3763** |
| | : | |
| **CITY OF PHILADELPHIA, et al.,** | : | |
| **Defendants.** | : | |

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

**I.    Preliminary Instructions for Use at Commencement of Trial**

1.  1.1 Introduction; Role of Jury

2.  1.2 Description of Case; Summary of Applicable Law

3.  1.3 Conduct of the Jury

4.  1.4 Bench Conferences

     Limiting Instruction

5.  1.5 Evidence

6.  1.6 Direct and Circumstantial Evidence [option two]

7.  1.7 Credibility of Witnesses

8.  1.9 Note-Taking By Jurors

9.  1.10 Preponderance of the Evidence

10. 1.12 Description of Trial Proceedings

**II.   General Instructions for Use During Trial**

11. 2.11 Opinion Testimony

**III.  Instructions for Civil Rights Claims Under Section 1983**

12. 4.1 Introductory Instruction

Formatted: Indent: Left: 0.75", No bullets or numbering

13. 4.2 Burden of Proof

14. 4.3 Elements of Claim

15. 4.4.1 Action under Color of State Law – Not in Dispute

16. 4.5 Deprivation of a Federal Right

17. CUSTOM Section 1983 – Unlawful Search – General

18. CUSTOM Section 1983 – Unlawful Search – Failure to Knock and Announce

19. CUSTOM Section 1983 – Unlawful Seizure – Warrant Application

20. CUSTOM Section 1983 – Municipalities – Liability Through Inadequate Training or Supervision

**IV.**      **Instructions for Civil Rights Claims Under Section 1983 (Damages)**

Limiting Instruction

21. 4.8.1 Compensatory Damages

22. 4.8.3 Punitive Damages

**V.**      **General Instructions for Use At End of Trial**

23. 3.1 Deliberations

Instructions are taken from the Model Civil Jury Instructions for the District Courts of the Third Circuit, except where alterations or other sources are specifically noted by redline. Additions of party names, substitution of pronouns or verb forms, and similar non-substantive revisions are not noted.

**1**

**Preliminary Instructions for Use at Commencement of Trial**

**1.1 Introduction; Role of Jury**

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

<span style="color:red">PLAINTIFF COMMENT: NO OBJECTION</span>

**Preliminary Instructions for Use at Commencement of Trial**

**1.2 Description of Case; Summary of Applicable Law[1]**

In this case, Plaintiff Felishatay Alvarado claims that her civil rights were violated pursuant to an entry into her residence and an alleged resulting stop. Ms. Alvarado proceeds pursuant to a civil rights statute against the City of Philadelphia and individual Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song. I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements that Plaintiff Alvarado must prove to make her case.

Ms. Alvarado asserts three theories of liability. First, Ms. Alvarado asserts[2] that the individual defendants' entry into her apartment was unreasonable. Second, Ms. Alvarado claims that the individual defendants improperly seized her after the entry into her apartment. And third, Ms. Alvarado claims these constitutional violations resulted from the City of Philadelphia's failure to train these individual SWAT Police Officers.

I have described to you some of the ways Plaintiff Alvarado claims she is entitled to relief. For the time being, this information is only to help you follow the evidence at trial.

**Deleted:** ¶

---

[1] *See* Third Circuit Model Instructions, 1.2 Preliminary Instructions cmt. ("It is not necessary at the outset, however, to give a detailed instruction as to the applicable elements, especially in a complex case. But a brief description of the claims, defenses and counterclaims, if any, is likely to aid jury comprehension.").

[2] During a meet and confer, Parties agreed to the use of "asserts" in this version of the jury instruction. The remaining language of the instruction remains objected to.

PLAINTIFF COMMENT: Plaintiff offers the following alternative instruction, which are adapted from Model Instruction 1.2 and the theories permitted by the Court's Order on the Defendants' Motion for Summary Judgment:

In this case, Plaintiff Felishatay Alvarado claims that her Constitutional rights were violated by eight individual members of the Philadelphia Police Department's SWAT team — whose names are Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song — and also by the City of Philadelphia, which was their employer. The Defendants deny those claims. I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.  But in order to help you follow the evidence, I will now give you a brief summary of the elements that Ms. Alvarado must prove to make her case:

The Fourth Amendment of the United States Constitution reads in relevant part as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated [. . .]."

Plaintiff alleges that the Defendants violated her Fourth Amendment rights for three separate reasons:

**FIRST,** Plaintiff alleges that Defendants, Joshua Burkitt, Eric Clark, Kevin Mellody, Brian Murray, Patrick Saba, Demetrius Monk, Edward Song, and Jose Hamoy — who will be referred to collectively as "the SWAT Unit Defendants" for brevity's sake — entered her home without following something known as the Knock and Announce Rule.  The United States Supreme Court has established the Knock and Announce Rule.  Pursuant to the Knock and Announce Rule, if the SWAT Unit Defendants entered Ms. Alvarado's home without first knocking on the door and announcing their identities and purpose, and then providing Ms. Alvarado with a reasonable opportunity to open the door, they violated her Fourth Amendment guarantee against unreasonable searches[3].

Ms. Alvarado alleges that the SWAT Unit Defendants entered her home as the result of an unreasonable mistake.  The Defendants admit that they did not have a warrant to enter Plaintiff's home and that Plaintiff was not suspected of any wrongdoing.  However, the Defendants claim that they made a mistake that caused them to enter Plaintiff's home.  To win on this theory, Ms. Alvarado must persuade you by the preponderance of the evidence that the mistake made by the SWAT Unit Defendants was not reasonable.[4]

---

[3] See Kornegay v. Cottingham, 120 F.3d 392, 396-397 (3d Cir. 1997
[4] See United States v. Andrews, 2023 U.S App. LEXIS 19397, at *2-4, 2023 WL 4824700 (3d Cir., July 27, 2023) (holding that police officers cannot claim "honest mistake" in connection with enforcing a search warrant at the wrong address "when the agents arrived at the front door

**THIRD**, Plaintiff alleges that she was detained in her home after the SWAT Unit Defendants mistakenly entered her home.  If you are convinced by the preponderance of the evidence that Plaintiff was detained by these individual Defendants for any length of time, or that these Defendants failed to leave Plaintiff's home as soon as they realized they were in the wrong house, you must find in favor of Plaintiff on this theory.[5]

**IN ADDITION** to those allegations against the SWAT Unit Defendants, Plaintiff also alleges that her Fourth Amendment rights were violated by the City of Philadelphia, because the City of Philadelphia failed to properly train the SWAT Unit Defendants.

DEFENSES' OBJECTION TO PLAINTIFF'S PROPOSED LANGUAGE[6]:

Defendants object to the proposed language for multiple reasons. First, the paragraph regarding the alleged knock and announce rule violation, the improper entry, and the unreasonable seizure does not completely explain the law to the jury and the proposed language presents a disputed fact as a conclusion of law. Below, the Defendants propose an alternative jury instruction that cites the analysis the Supreme Court has followed when determining whether or not an entry violated the Fourth Amendment due to a failure to follow the knock and announce rule. Defendants propose alternative language that provide a more complete recitation of the law below.

Second, the paragraph regarding liability against the City of Philadelphia confuses liability against the Officers with liability against the Municipality. As written, Defense believes that the language would be confusing to the Jury. The Third Circuit has provided model jury instructions

---

of the property and [ . . .] saw or chose to ignore several things that should have put them on notice" of their error.

[5] See United States v. Andrews, 2023 U.S App. LEXIS 19397, at *1-2, 2023 WL 4824700 (3d Cir., July 27, 2023) (holding that "In Maryland v. Garrison, the Supreme Court held that law enforcement officers must "discontinue [a] search [. . .] as soon as they discover" that a location is in fact subdivided into separate dwelling units, especially if it is unclear which unit belongs to the subject of the warrant."

[6] Defendants include their language as previously filed. *See* ECF No. 63, at 4.

regarding 4th Amendment Search and Seizure violations that omit reference to municipal liability. *see* Third Circuit Model Instructions 4.12 Section 1983. Defendants request the same omission occur here.

**Preliminary Instructions for Use at Commencement of Trial**

**1.3 Conduct of the Jury**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence. I know that many of you use cell phones, smart phones like Blackberries and iPhones, and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services such as Twitter, or through any blog, website, internet chat room, or by way of any other social networking websites or services including Facebook, Myspace, LinkedIn, and YouTube.

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either. That is why you are asked to wear your juror tags. It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case , do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims or defenses until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

Finally, if any member of the jury has a friend or family member who is in attendance at this public trial, that visitor must first register with my Clerk because special rules will govern their attendance. You may not discuss any aspect of this trial with the visitor, nor may you permit the visitor to discuss it with you.

PLAINTIFF COMMENT: NO OBJECTION

**4**

**Preliminary Instructions for Use at Commencement of Trial**

**1.4 Bench Conferences**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference. If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue, and permit you to go downstairs for a break.

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

PLAINTIFF COMMENT: NO OBJECTION

**Preliminary Instructions for Use at Commencement of Trial**

**Limiting Instruction to the Jury**

Following the SWAT entry into the unit, Plaintiff's dog was shot by Officer Song. As a matter of law, the Court instructs you that the shooting of Plaintiff's dog was justified and is not a violation of Plaintiff's Fourth Amendment rights and cannot be considered to determine liability. The death of Plaintiff's dog may only be considered for the limited purpose of determining damages, if any.

Plaintiff's proffered response: The Court has determined as a matter of law that Officer Song's decision to shoot Akuma did not violate Ms. Alvarado's Fourth Amendment rights. However, if you decide that the shooting would not have occurred but-for a violation of Ms. Alvarado's Fourth Amendment rights, you may compensate Ms. Alvarado for any damages that you find that she suffered because of the death of her dog.

Defendants Comment: Defendants object to Plaintiff's proffered limiting instruction because it will only serve to confuse the jury. It appears to assert that the shooting and death of Plaintiff's dog is **both** a basis for liability and *not* a basis for liability of a Fourth Amendment violation.

**5**

**Preliminary Instructions for Use at Commencement of Trial**

**1.5 Evidence**

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;

2. Documents and other things received as exhibits;

3. Any facts that are stipulated—that is, formally agreed to by the parties;

4. Any facts that are judicially noticed—that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case;

2. Objections by lawyers.

3. Any testimony I tell you to disregard; and

4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not

permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

PLAINTIFF COMMENT: NO OBJECTION

**Preliminary Instructions for Use at Commencement of Trial**

**1.6 Direct and Circumstantial Evidence**

**[Option 2 Only]**

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

<span style="color:red">PLAINTIFF COMMENT: NO OBJECTION</span>

**Preliminary Instructions for Use at Commencement of Trial**

**1.7 Credibility of Witnesses**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

<span style="color:red">PLAINTIFF COMMENT: NO OBJECTION</span>

**Preliminary Instructions for Use at Commencement of Trial**

**1.9 Note-Taking by Jurors**

**Option 1**

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Courtroom deputy will arrange for pens, pencils, and paper. Remember that your notes are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. But you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1. Note-taking is permitted, not required. Each of you may take notes. No one is required to take notes.

2. Be brief. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Overuse of note-taking may be distracting. You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand. Note-taking must not distract you from that task. If you wish to make a note, you need not sacrifice the opportunity to make important observations. You may make your note after having made an observation.

3. Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Notes are not to be used in place of the evidence.

4. Do not take your notes away from court. I repeat, at the end of each day, please leave your notes in the jury room. [Describe logistics of storing and securing notes, for example: "If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations.

PARTY NOTE: Parties have agreed to use Option 1 regarding allowing Jurors to take Notes.

**Preliminary Instructions for Use at Commencement of Trial**

**1.10 Preponderance of the Evidence**

This is a civil case. Ms. Alvarado is the party who brought this lawsuit. The Defendants are the party against whom the lawsuit was filed. Ms. Alvarado has the burden of proving her case by what is called the preponderance of the evidence.  That means Ms. Alvarado has to prove to you, in light of all the evidence, that what she claims is more likely so than not so.  To say it differently: if you were to put the evidence favorable to Ms. Alvarado and the evidence favorable to the Defendants on opposite sides of the scales, Ms. Alvarado would have to make the scales tip somewhat on her side.  If Ms. Alvarado fails to meet this burden, the verdict must be for the Defendants. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

PARTY NOTE: THE PARTIES AGREE TO THE ABOVE LANGUAGE

**Preliminary Instructions for Use at Commencement of Trial**

**1.12 Description of Trial Proceedings**

The trial will proceed in the following manner:

First, the attorney for Plaintiff will make an opening statement to you. Next, attorneys for Defendants may make an opening statement. What is said in the opening statements is not evidence but is simply an outline to help you understand what each party expects the evidence to show. [A party is not required to make an opening statement.]

<mark>After [Before]</mark> the attorneys have made their opening statements, [I will instruct you on the applicable law and] then each party is given an opportunity to present its evidence.

Plaintiff goes first because he has the burden of proof. Plaintiff will present witnesses whom counsel for Defendants may cross-examine, and Plaintiff may also present evidence. Following Plaintiff's case, Defendants may present evidence. Counsel for Plaintiff may cross-examine witnesses for the defense. [After the parties' main case is presented, they may be permitted to present what is called rebuttal evidence.]

After all the evidence has been presented, [I will instruct you on the law and then] the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. [Once the closing arguments are completed, I will then instruct you on the law.] After that you will retire to the jury room to deliberate on your verdict in this case.

[At this point the court may wish to inform the jury of the scheduling and length of the trial, and other logistical information. . . . ]

PARTIES NOTE: The partes agree to the model standard language and ask only for the court to clarify whether instructions will be given before or after openings.

**General Instructions for Use During Trial**

**2.11 General Instructions For Use During Trial — Opinion Testimony**

You have heard [will hear] testimony containing opinions from Glenn Garrels and Veronique Valliere. In weighing this opinion testimony, you may consider their qualifications, the reasons for their opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinions of Glenn Garrels and Veronique Valliere should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.

In deciding whether to accept or rely upon the opinion of Glenn Garrels and Veronique Valliere, you may consider any bias that Glenn Garrels and Veronique Valliere may have, including any bias that may arise from evidence that Glenn Garrels and Veronique Valliere has been or will be paid for reviewing the case and testifying [or from evidence that Glenn Garrels and/or Veronique Valliere testifies regularly and makes a large portion of [his/her] income from testifying in court].

PARTIES NOTE: PARTIES HAVE AGREED TO THE ABOVE LANGUAGE.

**Instructions for Civil Rights Claims Under Section 1983**

**4.1 Section 1983 Introductory Instruction**

Plaintiff Felishatay Alvarado is suing under Section 1983, a civil rights law passed by Congress that provides a remedy to persons who have been deprived of their federal constitutional rights under color of state law.

PLAINTIFF COMMENT: NO OBJECTION

**Instructions for Civil Rights Claims Under Section 1983**

**4.2 Burden of Proof** [7]

This is a civil case. Ms. Alvarado is the party who brought this lawsuit. The Defendants are the party against whom the lawsuit was filed. Ms. Alvarado has the burden of proving her case by what is called the preponderance of the evidence. That means Ms. Alvarado has to prove to you, in light of all the evidence, that what she claims is more likely so than not so. To say it differently: if you were to put the evidence favorable to Ms. Alvarado and the evidence favorable to the Defendants on opposite sides of the scales, Ms. Alvarado would have to make the scales tip somewhat on her side. If Ms. Alvarado fails to meet this burden, the verdict must be for the Defendants. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

**THE PARTIES AGREE TO USE THIS INSTRUCTION**

---

[7] The Third Circuit Model Jury Instructions indicates "Provide Instruction 1.10 on burden of proof, modified (if necessary) as discussed in the Comment below." Model Civ. Jury Instr. 3rd Cir. 4.2 (2024). As such, Defendants have duplicated the same proposed language from the previously produced 1.10 instruction.

**Instructions for Civil Rights Claims Under Section 1983**

**4.3 Section 1983 – Elements of Claim**

Plaintiff Felishatay Alvarado must prove both of the following elements by a preponderance of the evidence:

First: Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song acted under color of state law.

Second: While acting under color of state law, each [of the SWAT Unit Defendants] individual SWAT unit officer deprived Plaintiff Alvarado of a federal constitutional right.

I will now give you more details on action under color of state law, after which I will tell you the elements Plaintiff Alvarado must prove to establish the violation of her federal constitutional rights.

PLAINTIFF COMMENT: We this this should be worded so as to be consistent with when the SWAT Unit Defendants are referred to collectively.

DEFENDANT'S RESPONSE: in Defendants' proposed jury instructions, the intended standard reference for the swat officers has been "the individual swat unit officers."

**Formatted:** Strikethrough

**Instructions for Civil Rights Claims Under Section 1983**

**4.4.1 Section 1983 – Actions Under Color of State Law – Not in Dispute**

**[Version A (government official) Only]**

Because Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song were officials of the City of Philadelphia at the relevant time, I instruct you that they were acting under color of state law. In other words, this element of Plaintiff Alvarado's claims is not in dispute, and you must find that this element has been established.

PLAINTIFF'S COMMENT: NO OBJECTION

**Instructions for Civil Rights Claims Under Section 1983**

**4.5 Section 1983 – Deprivation of a Federal Right**

I have already instructed you on the first element of Plaintiff Alvarado's claim, which requires Plaintiff Alvarado to prove that the Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song acted under color of state law.

The second element of Plaintiff Alvarado's claims are that the of the SWAT Unit Defendants, deprived her of a federal constitutional right. Specifically, Plaintiff Alvarado alleges that each individual SWAT unit officer violated her Fourth Amendment rights to be free from unreasonable search and seizure. Specifically, she alleges that each individual SWAT officer's entry was unreasonable partially because they failed to knock and announce before entering her property and she alleges that her person was unreasonably seized after the entry.

Through the course of the trial, you were presented various internal policies and procedures governing the Philadelphia Police Department. A conclusion regarding whether or not the individual SWAT Officers violated internal policies is not determinative "of whether [the individual SWAT Officers] violated [Ms. Alvarado]'s constitutional rights . . . because a violation of a local policy does not demonstrate a violation of a constitutional right, nor does compliance with a local policy demonstrate compliance with a constitutional right."[8]

PLAINTIFF BELIEVES THIS ALTERNATIVE IS CLOSER TO MODEL 4.5, THE FACTS OF THE CASE, AND THE CASE LAW:

---

[8] *Bey-Cousin v. Powell, et al.*, 19-cv-01906, Doc. No. 61 (Wolson, J.) (Order); *see also Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 127 (3d Cir. 2003).

**Deleted:** individual SWAT unit officers

**4.5    SECTION 1983 — DEPRIVATION OF A FEDERAL RIGHT**

As I previously informed you, Ms. Alvarado alleges that the Defendants deprived her of her rights under the Fourth Amendment of the United States Constitution].

The Fourth Amendment of the United States Constitution reads in relevant part as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated [. . .]."

Ms. Alvarado alleges that the SWAT Unit Defendants violated her Fourth Amendment rights for three separate reasons:

**FIRST,** Plaintiff alleges that Defendants, Joshua Burkitt, Eric Clark, Kevin Mellody, Brian Murray, Patrick Saba, Demetrius Monk, Edward Song, and Jose Hamoy — who will be referred to collectively as "the SWAT Unit Defendants" for brevity's sake — entered her home without following something known as the Knock and Announce Rule.  The United States Supreme Court has established the Knock and Announce Rule.  Pursuant to the Knock and Announce Rule, if the SWAT Unit Defendants entered Ms. Alvarado's home without first knocking on the door and announcing their identities and purpose, and then providing Ms. Alvarado with a reasonable opportunity to open the door, they violated her Fourth Amendment guarantee against unreasonable searches.[9]

**SECOND**, Ms. Alvarado alleges that the SWAT Unit Defendants entered her home as the result of an unreasonable mistake.  The Defendants admit that they did not have a warrant to enter Plaintiff's home and that Plaintiff was not suspected of any wrongdoing.  However, the Defendants claim that they made a mistake that caused them to enter Plaintiff's home.  To win on this theory, Ms. Alvarado must persuade you by the preponderance of the evidence that the mistake made by the SWAT Unit Defendants was not reasonable.[10]

**THIRD**, Plaintiff alleges that she was detained in her home after the SWAT Unit Defendants mistakenly entered her home.  If you are convinced by the preponderance of the evidence that Plaintiff was detained by these individual Defendants for any length of time, or that these

---

[9] .  [See Kornegay v. Cottingham, 120 F.3d 392, 396-397 (3d Cir. 1997)].

[10] See United States v. Andrews, 2023 U.S App. LEXIS 19397, at *2-4, 2023 WL 4824700 (3d Cir., July 27, 2023) (holding that police officers cannot claim "honest mistake" in connection with enforcing a search warrant at the wrong address "when the agents arrived at the front door of the property and [ . . .] saw or chose to ignore several things that should have put them on notice" of their error.]

Defendants failed to leave Plaintiff's home as soon as they realized they were in the wrong house, you must find in favor of Plaintiff on this theory.[11]

**IN ADDITION** to those allegations against the SWAT Unit Defendants, Plaintiff also alleges that her Fourth Amendment rights were violated by the City of Philadelphia, because the City of Philadelphia failed to properly train the SWAT Unit Defendants. You will receive a separate instruction regarding the law applying to Ms. Alvarado's claim against the City of Philadelphia.

DEFENSES' OBJECTION TO PLAINTIFF'S PROPOSED LANGUAGE[12]:

Defendants object to the proposed language for multiple reasons. First, the paragraph regarding the alleged knock and announce rule violation, the improper entry, and the unreasonable seizure does not completely explain the law to the jury and the proposed language presents a disputed fact as a conclusion of law. Below, the Defendants propose an alternative jury instruction that cites the analysis the Supreme Court has followed when determining whether or not an entry violated the Fourth Amendment due to a failure to follow the knock and announce rule. Defendants propose alternative language that provide a more complete recitation of the law below.

Second, the paragraph regarding liability against the City of Philadelphia confuses liability against the Officers with liability against the Municipality. As written, Defense believes that the language would be confusing to the Jury. The Third Circuit has provided model jury instructions regarding 4th Amendment Search and Seizure violations that omit reference to municipal liability. *see* Third Circuit Model Instructions 4.12 Section 1983. Defendants request the same omission occur here.

---

[11] [See United States v. Andrews, 2023 U.S App. LEXIS 19397, at *1-2, 2023 WL 4824700 (3d Cir., July 27, 2023) (holding that "In Maryland v. Garrison, the Supreme Court held that law enforcement officers must "discontinue [a] search [. . .] as soon as they discover" that a location is in fact subdivided into separate dwelling units, especially if it is unclear which unit belongs to the subject of the warrant")].

[12] Defendants include their language as previously filed. *See* ECF No. 63, at 4.

**Instructions for Civil Rights Claims Under Section 1983**

**CUSTOM: Unlawful Search[13]**

The Fourth Amendment to the United States Constitution protects persons from being subjected to unreasonable searches her residence by the police. In this case, Plaintiff Alvarado claims that Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song subjected her to an unreasonable search of her apartment when they entered her apartment. To establish this claim, Plaintiff Alvarado must prove each of the following elements by a preponderance of the evidence:

1.    The individual SWAT Unit Officers searched Felishatay Alvarado's residence;

2.    in conducting the search, the Individual SWAT Unit Officers acted intentionally; and

3.    the search was unreasonable.

A person acts "intentionally" when the person acts with a conscious objective to engage in particular conduct. Therefore, Plaintiff Alvarado must prove individual SWAT Unit Officers intended to search the Plaintiff Alvarado's residence. It is not enough if the plaintiff only proves individual SWAT Unit Officers acted negligently, accidentally or inadvertently in conducting the search. The Supreme Court has "recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing

---

[13] Adapted from the Third Circuit Model Instructions 4.12 Section 1983 – Unlawful Seizure and Ninth Circuit Model Instruction 9.12 Particular Rights—Fourth Amendment—Unreasonable Search—Generally.

search warrants."[14] However, Plaintiff Alvarado does not need to prove individual SWAT Unit Officers intended to violate the plaintiff's Fourth Amendment rights.

Deciding if an officer acted reasonably is done on a case-by-case basis,[15] based on the "facts and circumstances the officer[s] knew at the time of entry."[16] Plaintiff Alvarado alleges that individual SWAT Officers violated her Fourth Amendment Right to be free from an unreasonable search, in part, because these officers failed to knock and announce their presence prior to entering the property. I will now give you more details on this portion of the law.

PLAINTIFF COMMENT: OBJECTION — WE THINK THIS IS CONFUSING AND NOT COMPLETELY ACCURATE. United States v. Andrews, 2023 U.S App. LEXIS 19397, at *2-4, 2023 WL 4824700 (3d Cir., July 27, 2023). THE DEFENDANTS CLAIMED TO BELIEVE THAT MS. ALVARADO'S FRONT DOOR LED TO A COMMON AREA THAT ALLOWED ENTRANCE TO THE SECOND FLOOR REAR APARTMENT, BUT NO DEFENDANT CLAIMED TO BELIEVE THAT MS. ALVARADO'S FIRST FLOOR APARTMENT ACTUALLY WAS THE SECOND FLOOR REAR APARTMENT. THUS, ONCE THEY REALIZED THAT THE AREA BEHIND MS. ALVARADO'S DOOR WAS OCCUPIED, THEY WERE OBLIGATED TO LEAVE MS. ALVARADO'S HOME IMMEDIATELY.

---

[14] *Maryland v. Garrison*, 480 U.S. 79, 87 (1987).
[15] *United States v. Banks*, 540 U.S. 31, 36 (2003).
[16] 205 Am. Jur. Proof of Facts 3d 251 (Originally published in 2023).

**Instructions for Civil Rights Claims Under Section 1983**

**CUSTOM: Unlawful Search – Knock and Announce**

I have already instructed you on the law regarding the Fourth Amendment protection against an unlawful search. As a part of this claim, Plaintiff Alvarado is also alleging that Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song failed to knock and announce their presence prior to entering the property.

Generally, police officers are expected to knock and announce their presence and purpose before entering the premises to be searched.[17] Plaintiff Alvarado seeks to prove, by a preponderance of the evidence, that the officers:

1.     failed to knock;

2.     failed to identify themselves as law enforcement officers;

3.     failed to state their purpose for demanding entry; and

4.     failed to wait a reasonable amount of time to allow the residents to comply with law enforcement commands before entering the residence by force.[18]

There is no brightline rule for what amount of time is reasonable between a knock and announce and the entry. Deciding if an officer waited a reasonable amount of time is done on a case-by-case basis,[19] based on the "facts and circumstances the officer[s] knew at the time of entry."[20]

---

[17] *See Wilson v. Arkansas*, 514 U.S. 927, 931 (1995); *see also Com. v. Davis*, 595 A.2d 1216, 1223 (Pa. 1991); *Com. v. McDonnell*, 516 A.2d 329, 330 (Pa. Super. 1986).
[18] 205 Am. Jur. Proof of Facts 3d 251 (Originally published in 2023).
[19] *United States v. Banks*, 540 U.S. 31, 36 (2003).
[20] 205 Am. Jur. Proof of Facts 3d 251.

Knocking and announcing is only a portion of your analysis regarding whether or not Plaintiff Alvarado's residence was unreasonably searched.[21] If you decide that the individual SWAT Unit Officers failed to knock and announce their entry, that does not mean that search was unreasonable. If you determine that there was a failure to knock and announce, I direct you to consider the rest of the facts and circumstances surrounding the entry and decide whether the entry as a whole was unreasonable. If you find that individual SWAT Unit Officers did knock and announce their entry, that does not mean the search was reasonable. If you find there was a knock and announce before the entry, I direct you to also consider the rest of the facts and circumstances surrounding the entry and decide whether it was reasonable.

PLAINTIFF COMMENT: OBJECTION — WE THINK THIS IS CONFUSING AND NOT COMPLETELY ACCURATE. UNDER THE CASE LAW. RATHER, ENTERING THE UNIT WITHOUT KNOCKING AND ANNOUNCING WOULD BE A *PER SE* VIOLATION OF MS. ALVARADO'S CONSTIUTIONAL RIGHTS.  FURTHER, NO LAWFUL REASON HAS BEEN PROVIDED FOR A SEARCH IN THIS CASE, ASSUMING THAT THE KNOCK AND ANNOUCE RULE WAS VIOLATED (E.G.., NONE OF THE DEFENDANTS CLAIM THAT THERE WAS REASONALE SUSPICION THAT MS. ALVARADO HAD COMMITTED A CRIME OR BECAME DANGEROUS AT ANY POINT).

---

[21] *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995) ("[W]e have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure.")

**Instructions for Civil Rights Claims Under Section 1983**

**CUSTOM: Unlawful Seizure – Stop – Warrant Application[22]**

In this case, while executing warrants for 4664 Torresdale Ave., 2nd Floor Rear, homicide detectives with the Philadelphia Police Department obtained a warrant authorizing the search. Plaintiff Alvarado asserts that, SWAT Officers, Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song illegally detained her during initial execution of the warrant.

During execution of a search warrant, officers executing the warrant are permitted "to detain the occupants of the premises while a proper search is conducted."[23] "This is reasonable to protect the police, to prevent flight, and generally to avoid dangerous confusion."[24] Officers are authorized to detain persons in this manner in the "immediate vicinity" of the warrant's permitted search area.[25] Immediate vicinity means "the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant[, which] ensures that the scope of the detention incident to a search is confined to its underlying justification."[26]

To show that the detention violated the Fourth Amendment, Plaintiff Alvarado must prove each of the following by a preponderance of the evidence:

---

[22] Adapted from Adapted from the Third Circuit Model Instructions 4.12 Section 1983 – Unlawful Seizure.

[23] *Bailey v. United States*, 568 U.S. 186, 193 (2013) (quoting *Michigan v. Summers*, 452 U.S. 692 (1981)); *see also Baker v. Monroe Tp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (*citing Summers*, 452 U.S. 692); *Los Angeles County v. Rettele*, 127 S. Ct. 1989, 1991, 1993 (2007) (per curiam) (holding that officers searching house under valid warrant did not violate the Fourth Amendment rights of innocent residents whom they forced to stand naked for one to two minutes, because one suspect was known to have a firearm and the residents' bedding could have contained weapons).

[24] *Baker v. Monroe Tp.*, 50 F.3d 1186, 1191 (3d Cir. 1995).

[25] *Bailey v. United States*, 133 S. Ct. 1031, 1041 (2013).

[26] *Id.* at 1042.

1) The officers did not have a valid warrant to search.

2) Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song intentionally held Plaintiff Alvarado at gun point while in a state of undress for approximately thirty minutes.

3) These acts constituted a "seizure," and

4) This "seizure" was unreasonable.


PLAINTIFF COMMENT: OBJECTION. THE DEFENDANTS WERE REQUIRED TO LEAVE IMMEDIATELY UPON REALIZING THEY WERE IN THE WRONG UNIT. THE DEFENDANTS CLAIMED TO BELIEVE THAT MS. ALVARADO'S FRONT DOOR LED TO A COMMON AREA THAT ALLOWED ENTRANCE TO THE SECOND FLOOR REAR APARTMENT, BUT NO DEFENDANT CLAIMED TO BELIEVE THAT MS. ALVARADO'S FIRST FLOOR APARTMENT ACTUALLY WAS THE SECOND FLOOR REAR APARTMENT. THUS, ONCE THEY REALIZED THAT THE AREA BEHIND MS. ALVARADO'S DOOR WAS OCCUPIED, THEY WERE OBLIGATED TO LEAVE MS. ALVARADO'S HOME IMMEDIATELY.

**Instructions for Civil Rights Claims Under Section 1983**

**CUSTOM – Liability in Connection with the Actions of Another – Municipalities**

**Liability Through a Single Incident Theory of Inadequate Training[27]**

Plaintiff Alvarado claims that the City of Philadelphia adopted a policy of inadequate training, and that this policy caused the violation of Felishatay Alvarado's Fourth Amendment's right to be free from unreasonable searches or seizures.

In order to hold the City of Philadelphia liable for the violation of her Fourth Amendment rights, you must find that Plaintiff Felishatay Alvarado has proved each of the following three things by a preponderance of the evidence:

First: The City of Philadelphia training program was inadequate to train its employees to carry out their duties.

Second: the City of Philadelphia did not specifically[28] train its employees on how to execute a search warrant[29];

Third: The City of Philadelphia's failure to adequately train proximately caused the violation of the Fourth Amendment's right to be free from unreasonable searches or seizures.

Plaintiff Alvarado claims there is municipal liability based on a single incident. To prove liability on this kind of theory, the law requires Plaintiff Alvarado to meet a high burden.[30] In order

---

[27] Adapted from the Third Circuit Model Instruction, 4.6.7 ("Section 1983 – Liability in Connection with the Actions of Another – Municipalities – Liability Through Inadequate Training or Supervision").

[28] *See Connick v. Thompson*, 563 U.S. 51, 71.

[29] *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (plurality); *see also Clemens v. Cobley*, 1985 WL 5012 (E.D. Pa. Dec. 27, 1985) (Bechtle, J.).

[30] *Kline ex rel. Arndt v. Mansfield*, 255 F. App'x 624, 629 (3d Cir. 2007).

to find that the City of Philadelphia's failure to adequately train amounted to deliberate indifference, you must find that Plaintiff Alvarado has proved each of the following things by a preponderance of the evidence:

First: the constitutional violation was so predictable that the City of Philadelphia's decision not to train the officers reflected deliberate indifference.[31] To demonstrate deliberate indifference, Plaintiff Alvarado must present evidence that "a municipal actor disregarded a known or obvious consequence of his action."[32]

Second: a municipal policy maker was "on notice that, absent additional specified training, it was 'highly predictable'" that these rights would be violated.[33] For a result to be highly predictable, Plaintiff Alvarado must have demonstrated that "it was so predictable that failing to train the Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song amounted to conscious disregard for the Fourth Amendment rights to be free from unreasonable searches and seizures."[34]

In order to find that the City of Philadelphia's failure to adequately train proximately caused the violation of Plaintiff Alvarado's federal right, you must find that Plaintiff Alvarado has proved by a preponderance of the evidence that the City of Philadelphia's deliberate indifference led directly to the deprivation of either her Fourth Amendment right to be free from unreasonable searches or free from unreasonable seizures. Merely alleging that a single injury could have been avoided if a municipal actor had *more* or *better* training is not sufficient to prevail.[35]

---

[31] *Id.*
[32] *Farvardin v. Santos*, No. CIV.A. 12-6680, 2014 WL 7150023, at *7 (E.D. Pa. Dec. 15, 2014) (*quoting Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal citations omitted)).
[33] *Connick*, 563 U.S. at 71; *see also Kline*, 255 Fed. App'x at 629.
[34] *Connick*, 563 U.S. at 71.
[35] *See Connick*, 563 U.S. at 68 (*quoting Harris*, 489 U.S. at 391).

PLAINTIFF'S COMMENT: OBJECTION — THIS HAS A LONG OF EXTRA LANGUAGE THAT IS NOT APPROPRIATE. AS A MATTER OF LAW, THE COURT HELD THAT THE NEED TO TRAIN REGARDING THE KNOCK AND ANNOUNCE RULE AND WARRANT RECONAISSANCE WERE SO OBVIOUS THAT A SINGLE INCIDENT COULD EVIDENCE DELIBERATE INDIFFERENCE, THAT IS NOT A JURY QUESTION. WE OFFER THE FOLLOWING ALTERNATIVE MODEL 4.6.7 INSTRUCTION, WHICH CLOSELY FOLLOWS THE MODEL LANGUAGE:

Ms. Alvarado claims that the City of Philadelphia adopted a policy of inadequate training and that this policy caused the violation of Ms. Alvarado's Fourth Amendment right to be free from unreasonable searches and seizures.

In order to hold the City of Philadelphia liable for a violation of plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, you must find that Ms. Alvarado has proved each of the following three things by a preponderance of the evidence:

First: the City of Philadelphia's training program was inadequate to train its employees to carry out their duties.

Second: the City of Philadelphia's failure to adequately train amounted to deliberate indifference to the fact that inaction would obviously result in the violation of the people's Fourth Amendment rights.

Third: the City of Philadelphia's failure to adequately train proximately caused the violation of of Ms. Alvarado's Fourth Amendment rights.

In order to find that the City of Philadelphia's failure to adequately train amounted to deliberate indifference, you must find that Ms. Alvarado has proved each of the following three things by a preponderance of the evidence:

First: the City of Philadelphia's police department knew that employees would confront a particular situation.

Second: The situation involved an obvious need for training.

Third: The wrong choice by an employee in that situation will frequently cause a deprivation of the people's Fourth Amendment rights.

In order to find that the City of Philadelphia's failure to adequately train proximately caused the violation of Ms. Alvarado's Constitutional right, you must find that Ms. Alvarado has proved by a preponderance of the evidence that the City of Philadelphia's deliberate indifference led directly to the deprivation of Ms. Alvarado's Fourth Amendment rights.

DEFENDANT'S RESPONSE[36]:

Defendants object to the use of the standard model instruction. In the Court's Memorandum Opinion regarding summary judgment, Plaintiff's theory for *Monell* liability survived pursuant to a single-instance theory of liability. To find liability under this theory, the jury must analyze different elements than what is present in the standard instruction for a pattern, practice, and custom of failure to adequately train *Monell* claim. Defendants propose alternate language that encompasses the applicable elements **Instructions for Civil Rights Claims Under Section 1983(Damages)**

**Limiting Instruction to the Jury**

You have heard testimony that: Following the SWAT entry into the unit, Plaintiff's dog was shot by Officer Song. As a matter of law, the Court instructs you that the shooting of Plaintiff's dog was justified and is not a violation of Plaintiff's Fourth Amendment rights and cannot be considered to determine liability. The death of Plaintiff's dog may only be considered for the limited purpose of determining damages, if any.

Plaintiff's proffered response: The Court has determined as a matter of law that Officer Song's decision to shoot Akuma did not violate Ms. Alvarado's Fourth Amendment rights. However, if you decide that the shooting would not have occurred but-for a violation of Ms. Alvarado's Fourth Amendment rights, you may compensate Ms. Alvarado for any damages that you find that she suffered because of the death of her dog.

---

[36] Defendant's response was previously filed as ECF No. 63, at 5-6.

Defendants Comment: Defendants object to Plaintiff's proffered limiting instruction because it will only serve to confuse the jury. It appears to assert that the shooting and death of Plaintiff's dog is **both** a basis for liability and *not* a basis for liability of a Fourth Amendment violation.

**Instructions for Civil Rights Claims Under Section 1983**

**4.8.1 Compensatory Damages[37]**

I am now going to instruct you on damages. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not [the Defendants] should be held liable.

If you find [any of the defendants] liable, then you must consider the issue of compensatory damages. You must award [plaintiff] an amount that will fairly compensate [her] for any injury [she] sustained as a result of [the Defendants'] conduct.

[Plaintiff] must show that the injury would not have occurred without [defendant's] act [or omission]. [Plaintiff] must also show that [defendant's] act [or omission] played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of [defendant's] act [or omission]. [There can be more than one cause of an injury. To find that [defendant's] act [or omission] caused [plaintiff's] injury, you need not find that [defendant's] act [or omission] was the nearest cause, either in time or space. However, if [plaintiff's] injury was caused by a later, independent event that intervened between [defendant's] act [or omission] and [plaintiff's] injury, [defendant] is not liable unless the injury was reasonably foreseeable by [defendant].]

Compensatory damages must not be based on speculation or sympathy. They must be based on the evidence presented at trial, and only on that evidence. Plaintiff has the burden of proving compensatory damages by a preponderance of the evidence.

---

[37] Defendants did not object to Plaintiff's proposed Compensatory Damages instruction and have produced Plaintiff's language herein. The only modification has been formatting to maintain consistency within the filing.

[Plaintiff] claims the following items of damages:

- Physical harm to [plaintiff] during and after the events at issue, including ill health, physical pain, disability, disfigurement, or discomfort, and any such physical harm that [plaintiff] is reasonably certain to experience in the future. In assessing such harm, you should consider the nature and extent of the injury and whether the injury is temporary or permanent.

- Emotional and mental harm to [plaintiff] during and after the events at issue, including fear, humiliation, and mental anguish, and any such emotional and mental harm that [plaintiff] is reasonably certain to experience in the future.

- The reasonable value of the medical [psychological, hospital, nursing, and similar] care and supplies that [plaintiff] reasonably needed and actually obtained, and the present value of such care and supplies that [plaintiff] is reasonably certain to need in the future. AND

- The reasonable value of property damaged or destroyed.

PLAINTIFF COMMENT: NO OBJECTION

**Formatted:** Font: (Default) Times New Roman, 12 pt, Font color: Dark Red

**Formatted:** Normal, Indent: Left: 0.25", No bullets or numbering

**Instructions for Civil Rights Claims Under Section 1983**

**4.8.3 Section 1983 – Damages – Punitive Damages[38]**

In addition to compensatory or nominal damages, you may consider awarding Plaintiff Alvarado punitive damages. A jury may award punitive damages to punish a defendant, or to deter the defendant and others like the defendant from committing such conduct in the future. Where appropriate, the jury may award punitive damages even if the Plaintiff Alvarado suffered no actual injury and so receives nominal rather than compensatory damages.

Municipalities are immune from punitive damages.[39] You may only award punitive damages if you find that Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, or Edward Song acted maliciously or wantonly in violating Plaintiff Alvarado's federally protected rights.

• A violation is malicious if it was prompted by ill will or spite towards the Plaintiff Alvarado. A defendant is malicious when he consciously desires to violate federal rights of which he is aware, or when he consciously desires to injure the Plaintiff Alvarado in a manner he knows to be unlawful. A conscious desire to perform the physical acts that caused Plaintiff Alvarado's injury, or to fail to undertake certain acts, does not by itself establish that a defendant had a conscious desire to violate rights or injure Plaintiff Alvarado unlawfully.

• A violation is wanton if the person committing the violation recklessly or callously disregarded the Plaintiff Alvarado's rights.

---

[38] Counsel for Plaintiff agreed to the punitive damages charge presented here. Defense has kept the charge in this filing to highlight the modification from the model for the Court.

[39] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.").

If you find that it is more likely than not that Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, or Edward Song acted maliciously or wantonly in violating Plaintiff Alvarado's federal rights, then you may award punitive damages. However, an award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them. You cannot award punitive damages unless you have found that Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, or Edward Song acted maliciously or wantonly in violating Plaintiff Alvarado's federal rights.

If you have found that Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, or Edward Song acted maliciously or wantonly in violating Plaintiff Alvarado's federal rights, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant for a malicious or wanton violation of the plaintiff's federal rights, or to deter the defendant and others like the defendant from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, or Edward Song. You should also consider whether actual damages standing alone are sufficient to deter or prevent Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, or Edward Song from again performing any wrongful acts he may have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter other persons from performing wrongful acts similar to those Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, or Edward Song may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which Defendants Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, or Edward Song should be punished for wrongful conduct toward Plaintiff Alvarado, and the degree to which an award of one sum or another will deter Defendants or others from committing similar wrongful acts in the future.

PLAINTIFF COMMENT: NO OBJECTION

## General Instructions for Use at End of Trial

### 3.1 Deliberations

When you retire to the jury room to deliberate, you may take with you these instructions and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions

about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone, or computer of any kind; the internet, any internet service, or any text or instant messaging service like Twitter; or any internet chat room, blog, website, or social networking service, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

PLAINTIFF COMMENT: NO OBJECTION