**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FELISHATAY ALVARADO** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  22-3763** |
| | : | |
| **CITY OF PHILADELPHIA, P/O** | : | |
| **JOSHUA BURKITT, P/O ERIC** | : | |
| **CLARK, P/O JOSE HAMOY, SGT.** | : | |
| **KEVIN MELLODY, LT. DEMETRIUS** | : | |
| **MONK, P/O BRIAN MURRAY, P/O** | : | |
| **PATRICK SABA, P/O EDWARD SONG** | : | |

## MEMORANDUM

**MURPHY, J.**                                                                          **June 9, 2025**

In the early hours of a spring morning in 2021, a Philadelphia SWAT team set out to execute a search warrant identifying a second-floor rear apartment in northeast Philadelphia. The officers went to the right building, but they chose to break down the front door on the first floor instead, and only seconds after knocking.  The door opened into Felishatay Alvarado's home.  In the ensuing commotion, an officer shot and killed her dog.  A jury found that the forced entry violated her Fourth Amendment right to be free from unreasonable searches and awarded her just over $1 million in compensatory damages.

Now, the officers and the City ask us to overturn that verdict.  Defendants filed a post-trial motion under Federal Rules of Civil Procedure 50(b) and 59(a) seeking judgment as a matter of law, or in the alternative, a new trial or remittitur.  The matter is fully briefed.  *See* DI 116; DI 134; DI 138.  For the reasons set forth below, we deny defendants' motion for judgment as a matter of law, for a new trial, and for remittitur.  The jury heard ample and fair evidence to reach its conclusion, and we have no basis to step into their shoes and decide for ourselves an appropriate measure of damages.

## I.    <u>Background</u>

This civil rights action arises from the wrongful execution of a search warrant at Ms. Alvarado's residence by members of the Philadelphia Police Department's SWAT Unit on June 4, 2021.  At the time of the incident, Ms. Alvarado was in her home, which was located on the first floor of a two-unit building at 4664 Torresdale Avenue in Philadelphia.  The warrant authorized the search of a "2nd floor rear" apartment believed to be connected to a homicide investigation.  *See* DI 126-3 at 1.

Eight SWAT officers breached her front door within moments of knocking, entered her home with weapons drawn, and fatally shot her dog after it lunged and bit an officer.  Officers testified that they believed the front entrance provided access to a shared interior hallway that would lead to the second-floor apartment.  Upon entering, the officers discovered that they had breached a separate and unrelated residential unit; they then secured and exited the premises.

Ms. Alvarado filed suit under 42 U.S.C. § 1983 against the City of Philadelphia and the eight individual SWAT officers — Joshua Burkitt, Eric Clark, Jose Hamoy, Kevin Mellody, Demetrius Monk, Brian Murray, Patrick Saba, and Edward Song — alleging violations of her Fourth Amendment rights.  DI 4.  Specifically, Ms. Alvarado asserted claims for unreasonable search and seizure against all defendants, and a municipal liability claim based on *Monell v. Department of Social Services*, 436 U.S. 658 (1978) against the City for its failure to properly train officers regarding warrant execution and knock-and-announce procedures.

On summary judgment, we granted defendants' motion in part, entering judgment in favor of all defendants on one theory of Ms. Alvarado's unconstitutional seizure claim arising from the shooting of her dog because there was no dispute that the officer took reasonable action

to defend himself.  DI 38.  However, the seizure claim survived on the separate theory that the officers, once inside her home, unlawfully detained and questioned her.  *Id.*  The case proceeded to trial on the unreasonable-search, -seizure, and municipal-liability claims.  DI 58.

Following a five-day jury trial in September 2024, the jury returned a verdict in favor of Ms. Alvarado on the unreasonable search claim and the *Monell* claim but found that the officers did not unreasonably seize her.  DI 107.  The jury awarded no compensatory or punitive damages against the individual defendants but awarded $1,000,143.50 in compensatory damages against the City based on the *Monell* claim.

Defendants filed a timely post-trial motion under Rules 50(b) and 59(a), seeking judgment as a matter of law or, in the alternative, a new trial or remittitur.  The Court addresses all issues raised in that motion below.

## II.    Analysis

### A.  Defendants are not entitled to judgment as a matter of law under Rule 50(b)

Rule 50(b) permits a party to renew its motion for judgment as a matter of law after a jury verdict only if the jury lacked a legally sufficient evidentiary basis to find in favor of the nonmovant.  Fed. R. Civ. P. 50(b).  In evaluating such a motion, we grant judgment only if "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief."  *Powell v. J.T. Posey Co.*, 766 F.2d 131, 133-34 (3d Cir. 1985) (quoting *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 101 (3d Cir.1977)).  "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version."  *Harbor Compliance Corp. v. Firstbase.IO, Inc.*, No. 23-0802, 2025 WL 383804, at *2 (E.D. Pa.

Feb. 4, 2025) (quoting *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)); *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

Applying that standard, defendants are not entitled to judgment as a matter of law on any of the claims decided by the jury.

### i. The jury's finding of a Fourth Amendment violation by the individual police officers is not precluded as a matter of law

The jury found that each of the eight individual officer defendants violated Ms. Alvarado's Fourth Amendment right to be free from unreasonable searches.  Defendants now renew their argument that the officers are entitled to qualified immunity and that their conduct was objectively reasonable as a matter of law — arguments they raised at summary judgment. DI 134 at 24-29; *see* DI 38 at 9-13, 13-15.  We rejected those arguments then and do so again here.  As explained below, the jury's verdict reflects factual determinations that foreclose qualified immunity, and the record supports the conclusion that the officers' conduct was not objectively reasonable under the circumstances.

Qualified immunity shields government officials from liability unless (1) their conduct violates a constitutional right, and (2) that right was clearly established at the time of the violation.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  We may address either prong first.  *Id.* at 236.  We follow the usual sequence here, starting with the constitutional violation prong, because the jury expressly found that each officer "unreasonably entered [Ms. Alvarado's] residence."  DI 107.  We first evaluate whether the jury's finding is supported by the evidence.  While the jury verdict does not fully answer the legal question of immunity, it supplies the necessary factual foundation.  *Curley v. Klem*, 499 F.3d 199, 211-12 (3d Cir. 2007).  We then evaluate the issue of whether it was clearly

established that such an entry was unreasonable, which "turns on the reasonableness of the

officers' belief that their conduct was legal not its legality per se." *Kornegay v. Cottingham*, 120

F.3d 392, 395-96 (3d Cir. 1997).

The Fourth Amendment prohibits unreasonable searches, and officers executing a

warrant must limit their entry to the premises identified in the warrant and must do so

reasonably. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *United States v. Ritter*, 416 F.3d

256, 264-66 (3d Cir. 2005). The reasonableness of an officer's behavior during a search is

determined by the totality of the circumstances. *United States v. Banks*, 540 U.S. 31, 36, 41-42

(2003). Part of the reasonableness analysis is assessing compliance with the common law

knock-and-announce rule. *Id.* at 35-37. Absent exigent circumstances, law enforcement officers

executing a warrant "must announce their presence and provide residents an opportunity to open

the door" before entering a dwelling to conduct a search. *Hudson v. Michigan*, 547 U.S. 586,

589-90 (2006); *Wilson v. Arkansas*, 514 U.S. 927, 931-33 (1995); *Kornegay*, 120 F.3d at 397;

*Walker v. City of Wilmington*, 360 F. App'x 305, 313 (3d Cir. 2010) (quoting *Richards v.

Wisconsin*, 520 U.S. 385, 387 (1997)). The purposes of the knock-and-announce requirement

include protecting the life of both occupants and officers, preventing destruction of property, and

preserving dignity and privacy. *Wilson*, 514 U.S. at 931-32; *Kornegay*, 120 F.3d at 396 (quoting

*United States v. Nolan*, 718 F.2d 589, 596 (3d Cir. 1983)).

At summary judgment, we concluded that factual disputes — particularly regarding the

structure of the residence, the officers' understanding of the warrant, and whether the officers

knocked and announced their presence — precluded resolution of qualified immunity. *See* DI

38 at 9-15. Those disputes were presented to the jury and resolved against defendants. *See* DI

107.  Based on those findings, we conclude that qualified immunity is not available as a matter of law.

The jury found that each officer "unreasonably entered [Ms. Alvarado's] residence."  DI 107.  That finding is supported by trial testimony and evidence showing that the officers forcibly entered the first-floor front unit of 4664 Torresdale Avenue — Ms. Alvarado's private residence — within a few seconds of knocking even though the warrant on its face authorized entry only into the "2nd floor rear" apartment.  *See, e.g.,* DI 120 at 60:9-20, 154:23-156:25; DI 126-3 at 1.

The jury heard testimony that the front entrance led directly into a furnished living space with no visible access to the second floor, and yet rear doors existed on the property.  *See, e.g.,* DI 120 at 58:9-25.  Officers testified that they did not know exactly where the entrance to the second-floor rear apartment was located but decided where to breach almost exclusively based on experience.  *See, e.g., id.* at 73:9-77:9.  Ms. Alvarado also presented expert testimony from former law enforcement officer Glenn Garrels, who opined that a reasonable officer conducting this operation would have taken other investigative steps — such as consulting records or speaking to others with knowledge of the building — to confirm that the door they intended to breach led to the apartment listed in the warrant.  *See* DI 121 at 45:16-46:10, 53:17-54:17. Garrels testified that the failure to take such steps deviated from accepted police standards and increased the likelihood of entering the wrong unit.  *See id.* at 52:11-24.  The jury was entitled to credit Garrels's testimony and to conclude that the officers' shared belief that the front door led to the second-floor rear apartment was not objectively reasonable under the circumstances.  *See Ritter*, 416 F.3d at 266 (reasonableness of police conduct depends on "information available to [the officers] at the time they acted" (quoting *Garrison*, 480 U.S. at 85)).

6

The jury also heard testimony and saw video evidence demonstrating that the officers waited as little as two or three seconds before entry. *See, e.g.,* DI 121 at 21:1-22:15, 60:9-21. The jury also considered the Philadelphia Police Department's written directives, which require a 30-second wait before forced entry in the absence of exigent circumstances. *See, e.g.,* DI 120 at 86:22-92:17. While police directives are not dispositive, they are relevant evidence that a jury may consider when deciding reasonableness. *See Young v. Martin*, 801 F.3d 172, 181-82 (3d Cir. 2015) (considering the prison's own regulations when assessing whether correctional officers' actions violated the Eighth Amendment, and further finding that "[p]rison regulations governing the conduct of correctional officers are . . . relevant in determining whether an inmate's right was clearly established" for purposes of qualified immunity (quoting *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002)). Further, multiple officers testified that no exigent circumstances existed. *See, e.g.,* DI 120 at 89:3-5, 146:5-10.

On this record, the jury could find that the officers violated both the warrant's spatial limitations and the knock-and-announce rule, and that these violations were unreasonable under the totality of the circumstances. Because of the testimony that no exigent circumstances existed and that the officers should have confirmed the entrance to the second-floor rear apartment before breaching, the jury's verdict is well supported by the evidence.

Having found a constitutional violation, the remaining question is whether the right at issue was clearly established at the time of the search. The Supreme Court has made clear that qualified immunity works "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 202, 206 (2001); *Thomas v. City of Harrisburg*, 88 F.4th 275, 283 (3d Cir. 2023), *cert. denied sub nom. Foose v. Thomas*, 145 S. Ct.

141 (2024), *and cert. denied sub nom. Kinsinger v. Thomas*, 145 S. Ct. 141 (2024).  To be

clearly established, the contours of the right must be "sufficiently clear that every reasonable

official would have understood that what he is doing violates that right."  *Ashcroft v. al-Kidd*,

563 U.S. 731, 741 (2011) (cleaned up).

Here, well-settled precedent provided ample notice that failing to follow the knock-and-

announce rule would violate the Fourth Amendment, and that breaching a door within seconds

of knocking, without exigent circumstances and without verifying that the residence matched the

location described in the warrant, would violate the Fourth Amendment.  The Supreme Court

has clearly established since *Wilson* that the knock-and-announce requirement is part of the

Fourth Amendment's reasonableness inquiry.  *See Kornegay*, 120 F.3d at 396.  In *Banks*, the

Supreme Court held that a 15- to 20-second delay was a "close call" but only due to exigent

circumstances.  540 U.S. at 38, 41 ("[I]n the case with no reason to suspect an immediate risk of

frustration or futility in waiting at all, the reasonable wait time may well be longer when police

make a forced entry.").  In *Garrison*, the Supreme Court explained that an officer's mistaken

belief about the location to be searched is not shielded by qualified immunity when the officer

should have known that the premises did not match the warrant.  480 U.S. at 87 ("Plainly, if the

officers had known, or even if they should have known, that there were two separate dwelling

units on the third floor . . . , they would have been obligated to exclude respondent's apartment

from the scope of the requested warrant.").

The jury in this case found that the officers' search was unreasonable.  The evidence

allows a reasonable jury to find that the officers entered a different unit from the one listed in the

warrant, failed to confirm its location, and breached the door within seconds — despite no

exigent circumstances and against departmental policy.  A reasonable officer would have known that they could not force entry through a door without confirming that it led to the unit identified in the warrant, and that they could not breach that same door almost immediately after knocking in the absence of any articulable urgency.  Therefore, the jury's factual findings and the relevant law establish the officers' mistakes were not objectively reasonable and foreclose qualified immunity, and defendants' motion for judgment as a matter of law on this ground is denied.

> ii.  *The jury's finding of Monell liability for failure to train is not precluded as a matter of law*

Defendants make two arguments for judgment as a matter of law on the jury's *Monell* verdict.  First, they contend that the verdict cannot stand because the individual officers did not violate Ms. Alvarado's Fourth Amendment rights and therefore the *Monell* claim must fail.  DI 134 at 30-31.  Second, they argue that the jury impermissibly relied on a single-incident theory of *Monell* liability, asserting that Ms. Alvarado failed to identify specific training that the City should have provided and that could have prevented the violation.  *Id.* at 31-34.  Neither argument provides a basis for judgment as a matter of law.

A municipality may be held liable under 42 U.S.C. § 1983 when a constitutional violation is caused by an official policy, custom, or practice.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 694-95 (1978).  A failure to train police officers may constitute such a policy where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *see also Connick v. Thompson*, 563 U.S. 51, 60-62 (2011).

To establish liability under this theory, a plaintiff must show that (1) the municipality's training program was inadequate; (2) the failure to train amounted to deliberate indifference to

the rights of persons with whom officers would come into contact; and (3) the deficiency was the moving force behind the constitutional injury. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). Deliberate indifference may be shown by proving that municipal policymakers knew "to a moral certainty" that officers would face a recurring situation requiring specific instruction, that the need for training was obvious, and that the lack of training was likely to result in constitutional violations. *Id.* at 222-23. While a pattern of similar constitutional violations can demonstrate deliberate indifference, it is not required where the need for training is so apparent that the risk of constitutional harm is obvious. *See Canton*, 489 U.S. at 390; *Connick*, 563 U.S. at 63.

        a.   The jury found an underlying constitutional violation that supports *Monell* liability against the City

Defendants first argue that there was no underlying constitutional violation and, therefore, the Monell claim must fail as a matter of law. DI 134 at 30-31.[1] This argument builds on the one addressed in the previous section, which we have already rejected. *See supra* § II.A.i.

The jury expressly found that each of the individual SWAT officers violated Ms. Alvarado's Fourth Amendment rights. On the verdict form, the jury checked "Yes" next to each

---

[1] We also note that defendants' argument overlooks Third Circuit precedent holding that "[a] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Mervilus v. Union Cnty.*, 73 F.4th 185, 196 (3d Cir. 2023) (quoting *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010)). So long as the verdict is internally consistent, *Monell* liability may be imposed even if the jury exonerates the individual officers. The Third Circuit has recognized that such circumstances may arise under a failure-to-train theory. *See id.* at 196-97 (citing *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994)). We need not consider how this principle might apply here, because the jury found that each individual officer committed a constitutional violation.

officer when asked whether that officer "unreasonably entered her residence and violated her Fourth Amendment right to be free from unreasonable search." DI 107. As explained above, this finding was not foreclosed by qualified immunity and is supported by the evidence presented at trial.

In addition to finding an underlying constitutional violation, the jury also found causation as to the *Monell* claim. The verdict form required the jury to decide whether "the City of Philadelphia failed to adequately train its SWAT Unit Officers in a specifically identified way that amounted to deliberate indifference and that failure was the moving force behind a violation of her Fourth Amendment right . . . ." DI 107. The jury answered "Yes" to this question as well. *Id.* That finding was consistent with the instructions, which required the jury to find that the City's failure to train "[]proximately caused a violation of Ms. Alvarado's Fourth Amendment rights." *See* DI 124 at 22:11-23:14.

b. The record contained sufficient evidence for the jury to find that the city was deliberately indifferent due to its failure to train its officers

Defendants also argue that the jury's *Monell* verdict cannot stand because Ms. Alvarado failed to identify a specific training deficiency and improperly relied on a single-incident theory. *See* DI 134 at 31-34. But Ms. Alvarado did identify a specific failure: that the City inadequately trained its officers on the knock-and-announce rule by issuing a standard operating procedure that required officers to wait approximately thirty seconds before entering absent exigent circumstances, while also providing oral training to SWAT officers that permitted them to ignore this rule even when no exigent circumstances exist. *See, e.g.,* DI 120 at 89:9-93:13; DI 121 at 275:2-277:12. The jury reasonably concluded that this inconsistent and inadequate

11

training constituted deliberate indifference to a known and obvious risk of unconstitutional entries.

As explained above, a municipality may be held liable for failure to train police officers where the need for training is so obvious, and the inadequacy so likely to result in constitutional violations, that the policymaker's failure to act amounts to deliberate indifference. *See Canton*, 489 U.S. at 390; *Thomas*, 749 F.3d at 223. Deliberate indifference may be shown where policymakers know "to a moral certainty" that officers will face recurring situations requiring specific guidance and fail to provide constitutionally adequate instruction. *Thomas*, 749 F.3d at 222-23.

The jury heard testimony that the City's official written policy required a minimum wait of approximately thirty seconds after a knock and announcement, absent exigent circumstances. *See* DI 120 at 90:13-91:17. At the same time, multiple officers testified that they received oral training indicating they could proceed with a forced entry after waiting only "a few seconds" — even when no exigent circumstances were present. *See, e.g.,* DI 120 at 87:23-88:1, 96:13-101:7 (Officer Mellody); DI 121 at 275:2-277:12 (Officer Murray); *see also* DI 121 at 21:1-22:15 (Officer Monk testifying that he gave the order to breach within two seconds), at 60:9-21 (Mr. Garrels testifying that the video showed two seconds between the knock and order to breach). Officers also testified that they acted in accordance with the training they received from the City. *See, e.g.,* DI 120 at 98:11-22, 100:7-12.

This failure to train went beyond inconsistency. The jury heard evidence that the City trained its SWAT officers by telling them that they did not need to comply with the knock-and-announce rule as stated in the official policy — which required officers to wait approximately

thirty seconds before forcing entry absent exigent circumstances. The record shows that officers were instructed that they could breach within a few seconds, even in the absence of any exigent conditions. *See, e.g.,* DI 120, Trial Tr. Day 1, at 89:9-93:2; Trial Tr. Day 2, at 275:2-277:12. A jury could reasonably find that this training was legally deficient because it conveyed that officers could unilaterally decide what constituted a "reasonable" wait time and permitted orders to enter a dwelling after as little as two seconds under non-exigent circumstances. Such short delays do not satisfy the Fourth Amendment. *See Banks*, 540 U.S. 31, 38-41 (2003) (noting that waiting fifteen to twenty seconds was a "close call" even in the presence of exigent circumstances). A training program that affirmatively instructs officers to ignore constitutional guideposts regarding exigent circumstances presents an obvious risk of constitutional violations. *See Canton*, 489 U.S. at 390. The jury also heard testimony that all officers received the same oral instruction. DI 120 at 98:11-22. On this record, the jury had a sufficient basis to conclude that the City acted with deliberate indifference to the known risk of unconstitutional entries, and that its failure to train was the moving force behind the violation of Ms. Alvarado's Fourth Amendment rights.

This conclusion is consistent with the legal standard governing *Monell* failure-to-train claims. A municipality may be held liable where the need for training is "so obvious," and the inadequacy so likely to result in constitutional violations, that the policymaker's failure to act amounts to deliberate indifference. *Canton*, 489 U.S. at 390; *Thomas*, 749 F.3d at 223. This is especially true where officers are instructed — as here — in a manner that affirmatively misstates the constitutional standard. Deliberate indifference does not require a pattern of prior constitutional violations where the risk of harm from the failure to train is apparent. *See*

13

*Connick*, 563 U.S. at 63; *Thomas*, 749 F.3d at 223.

The jury also heard from a police practices expert, Glenn Garrels, who opined that the City's training must have been deficient because the officers failed to follow the standard operating knock-and-announce procedures and thereby ignored the risks associated with forced entries. *See* DI 121 at 65:4-68:5, 67:13-71:19. The jury was entitled to credit that testimony as corroborating the inadequacy of the training described by the officers themselves.

Taken together, this evidence was sufficient to support the jury's finding that the City failed to provide constitutionally adequate training, acted with deliberate indifference, and caused the violation of Ms. Alvarado's Fourth Amendment rights. Thus, judgment as a matter of law is not warranted.

### B. Defendants Are Not Entitled to a New Trial Under Rule 59(a)

Under Federal Rule of Civil Procedure 59(a)(1)(A), a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Grounds for ordering a new trial include, inter alia, prejudicial errors of law, a verdict contrary to the weight of the evidence, or conduct that improperly influenced the jury. *See Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993).

The decision whether to grant a new trial under Rule 59 is within our discretion and is governed by a less stringent standard than that applicable to judgment as a matter of law under Rule 50. *See Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-36 (3d Cir. 1988) ("We also are cognizant of the precept that a new trial may be granted even when [JMOL] is inappropriate."); *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991). Unlike Rule 50 motions, which require us to view the evidence in the light most favorable to the non-moving party, Rule

59 permits us broader discretion to independently determine if the jury's verdict resulted in a miscarriage of justice.  *See Roebuck*, 852 F.2d at 735-36; *Marra*, 497 F.3d at 300.

Nevertheless, we exercise this discretion cautiously, as requests for a new trial are disfavored.  *Marcum v. Columbia Gas Transmission, LLC*, 658 F. Supp. 3d 252, 265 (E.D. Pa. 2023) (citing *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)).  We cannot substitute our judgment for that of the jury simply because we might have reached a different conclusion.  *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016).  Moreover, a new trial is not warranted based on an erroneous evidentiary ruling unless a substantial right of a party is affected.  *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 205 (3d Cir. 2000) (quoting *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994)); *Montgomery Cnty. v. MicroVote Corp.*, 152 F. Supp. 2d 784, 795 (E.D. Pa. 2001), *aff'd*, 320 F.3d 440 (3d Cir. 2003).  Similarly, a new trial based on an error in a jury instruction is only appropriate if the instruction, taken as a whole, was misleading or inadequate.  *See Dressler v. Busch Entm't Corp.*, 143 F.3d 778, 780 (3d Cir. 1998).  Moreover, non-constitutional errors must be prejudicial; errors are harmless and do not necessitate a new trial if it is "highly probable" that such errors did not affect the verdict.  *Forrest v. Beloit Corp.*, 424 F.3d 344, 349 (3d Cir. 2005); *Becker*, 207 F.3d at 205.

Here, defendants argue that a new trial should be ordered under Rule 59(a)(1)(A) because several aspects of the trial were improper or prejudicial.  They specifically challenge jury instructions, the exclusion of a witness, use of certain exhibits, admitting evidence related to Ms. Alvarado's dog, and statements made by Ms. Alvarado's counsel.  *See* DI 134 at 6-24.  These assertions lack merit.  The jury's verdict was adequately supported by the evidence

presented at trial and was consistent with applicable law.  Additionally, the trial was conducted appropriately, the jury was correctly instructed, and the evidentiary rulings challenged by defendants were proper or, at most, harmless.  Accordingly, a new trial is not warranted.

*i.   The jury was properly instructed on the law*

Defendants challenge two specific jury instructions from the trial: first, the Court's decision not to instruct the jury explicitly that a violation of internal Philadelphia Police Department policies and procedures does not, by itself, constitute a constitutional violation; and second, the absence of an instruction stating that an underlying Fourth Amendment violation is necessary to sustain a *Monell* claim against the City based on the Fourth Amendment.  *See* DI 134 at 7-14.  We address these contentions by reviewing the instructions in their entirety to determine whether, as given, they accurately and adequately reflected the applicable law, and whether any potential omissions were sufficiently prejudicial to warrant a new trial.  *See Dressler*, 143 F.3d at 780.

As a threshold matter, Ms. Alvarado argues that defendants waived their argument that the failure to instruct the jury that the policies and procedures were not binding law was error.  A party must distinctly object to jury instructions prior to the jury retiring to deliberate.  *See* Fed. R. Civ. P. 51(c)(1).  Defendants assert that we did not inform them of any changes following the hearing held on September 26, 2024, and therefore they did not have the opportunity to object. *See* DI 134 at 8-9.  The defendants had proposed a jury instruction asking that the jury be informed that a finding that the defendants violated the internal policies and procedures of the Philadelphia Police Department was not determinative of the constitutional issue, however we issued our own version of the jury instructions via email and by passing around paper copies to

the parties prior at a hearing in morning of September 27, 2024 prior to charging the jury.  DI 124 at 2:8-19; *see* DI 84 at 26 (quoting *Bey-Cousin v. Powell*, 570 F. Supp. 3d 251, 257 (E.D. Pa. 2021)).  We gave the parties the opportunity to point out any objections to those final instructions that morning.  *See* DI 124 at 2:8-12:25.  That final version, which was ultimately read into the record, removed this instruction that defendants now claim was necessary. However, the defendants failed to make any objection before we read the instructions to the jury. When asked if there were any further objections, defendants said that they "would like to reiterate [their] objections made yesterday during the final charging conference regarding any distinctions between [their] proposed language and the final production," but the record from the final charging conference the prior day does not include a distinct objection to the exclusion of the instruction regarding police policies and procedures.  *See* DI 124 at 12:4-10; DI 123 at 232:17-23.

Defendants did not preserve the objection because Rule 51 requires that any objections must be made "distinctly" on the record.  Fed. R. Civ. P. 51(c)(1).  "Merely proposing a jury instruction that differs from the charge given is insufficient to preserve an objection. . . .  As the Advisory Committee Note to Rule 51 explains, challenges to the failure to give a proposed jury instruction 'must be renewed by objection.'"  *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 339 (3d Cir. 2005) (citations omitted).  The defendants made only a general objection and did not address the distinct issues they had with this instruction.  *Id.* at 340 ("By mandating on-the-record exceptions, and imposing a penalty for failure to enter them, Rule 51 serves the critical purpose of apprising the trial court of possible errors in the charge and affording the court and the parties an opportunity for correction before submission of the case to the jury.").

17

Thus, this argument is waived.

We note that even if defendants had properly preserved their objection, the jury instructions, as a whole, accurately stated the applicable standard governing Fourth Amendment claims — specifically, that defendants' conduct must be evaluated based on objective reasonableness under the circumstances. *See* DI 124 at 18:24-21:1 ("Deciding if an officer acted reasonably is done on a case-by-case basis based on the facts and circumstances the officers knew at the time of entry."). Defendants have not demonstrated why an explicit instruction distinguishing between constitutional violations and violations of internal procedures was necessary. Given the accuracy and adequacy of the instructions provided, defendants cannot demonstrate that any alleged omission was prejudicial or affected a substantial right. Accordingly, even if we set aside the waiver, this claimed error does not warrant a new trial.

Defendants' second challenge to the jury instructions pertains to the omission of an explicit instruction stating that an underlying Fourth Amendment violation is necessary to sustain a *Monell* claim against the City. This argument is likewise without merit. The jury was instructed that to find the City liable under *Monell*, it needed to conclude that the City failed to adequately train its officers, that this failure reflected deliberate indifference to a constitutional right, and "the City of Philadelphia's failure to adequately train []proximately caused a violation of Ms. Alvarado's Fourth Amendment rights." DI 124 at 22:11-23. This instruction accurately states the law and, despite defendants' contention, does necessitate finding a constitutional violation for municipal liability.

Furthermore, the defendants do not demonstrate how our instruction could have affected the verdict such that a new trial is necessary. As explained above, the verdict sheet indicates

18

that the jury did find an underlying constitutional violation prior to finding municipal liability.
*See supra* § II.A.ii.a.  The jury's allocation of damages does not change the fact that they
answered "Yes" to the question of whether the individual officers violated Ms. Alvarado's
Fourth Amendment right to be free from unreasonable search.  *See* DI 107.  We fail to see how
the omission of an instruction directing the jury to reach the conclusion it ultimately reached
could constitute error, let alone one that affected the verdict.  Accordingly, defendants'
contention regarding the *Monell* instruction does not provide a basis for granting a new trial
under Rule 59.[2]

### ii.   *Exclusion of defendants' undisclosed witness was proper*

---

[2] Defendants urge us to nullify the verdict and order a new trial based on their view that it was legal error to permit the jury — though it did not do so — to find municipal liability without first finding individual officer liability.  While we need not address this argument because the jury did find individual liability, we note here that the instruction given was consistent with governing law.  Although neither party has identified a case squarely authorizing a finding of independent municipal liability for a Fourth Amendment search violation, defendants overlook the Third Circuit's holding in *Mervilus*, as explained in the prior footnote above.  *Mervilus* is binding precedent.  Its reasoning is not confined to any particular constitutional violation; it holds broadly that "[a] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict."  *Mervilus*, 73 F.4th at 196.

Here, eight individual officers participated in the entry into Ms. Alvarado's home.  It would not be inconsistent for a jury to conclude that each officer acted reasonably based on their individual understanding, while also concluding that the collective failure and constitutional violation resulted from the City's inadequate training.  Defendants' theory — that the officers reasonably believed they were entering a common area — would not foreclose municipal liability.  A jury could reasonably find that Ms. Alvarado's Fourth Amendment rights were violated as a result of the City's failure to train its officers, regardless of each individual officers' subjective beliefs about the reasonableness of their action.  The officers, as a group, forcibly entered the wrong apartment; in theory, that error could be solely attributable to either individual conduct or to deliberate indifference by the City.  *See Mervilus*, 73 F.4th at 196 ("[S]ituations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation." (quoting *Speer v. City of Wynne*, 276 F.3d 980, 985-86 (8th Cir. 2002)).

Defendants contend that it was error to exclude testimony from Sergeant John Ross, whom they offered to testify regarding the City's training practices.  *See* DI 134 at 14-16. However, as we explained in our previous order, the exclusion of Sergeant Ross was a direct result of defendants' failure to comply with their disclosure obligations under Rule 26.  *See* DI 79.

Rule 26(a) requires parties to provide "the name . . . of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i).  Defendants failed to identify Sergeant Ross in their initial disclosures, and they failed to supplement those disclosures under Rule 26(e), despite being obligated to do so in a timely manner once it became apparent that they intended to call him at trial.  The only allusion to Sergeant Ross identified by defendants in the discovery record was a single appearance on the carbon copy line of a letter to the Police Commissioner.  *See* DI 79; DI 73-3 at 2 (ECF).  That isolated reference, in a document with no explanation of Ross's relevance or role, was insufficient to put Ms. Alvarado on notice that Sergeant Ross might be a trial witness and did not give Ms. Alvarado the opportunity to depose and prepare for Sergeant Ross's testimony at trial.

Defendants' argument that listing "a Philadelphia Police Department designee" satisfied Rule 26 is equally unavailing.  Vague or placeholder references to witnesses are insufficient; they fail to meet the disclosure requirement because they do not give the opposing party a fair opportunity to prepare for those witnesses' testimony at trial.  *Cf. Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719-21 (3d Cir. 1997) (finding exclusion of witness proper because even if the defendant could have prepared for the witness in time for trial "by means of sufficient last-

minute scrambling," there was still prejudice because the defendant would have been forced "to focus its litigation resources on these efforts in the last days before trial").

Defendants argue that our ruling was one-sided and prejudicial because we permitted Ms. Alvarado to call trial witnesses whose names were not on her disclosures. However, as we explained in the prior order, the only witnesses Ms. Alvarado sought to call who were not listed in her initial disclosures were individuals whom defendants had actually deposed during discovery. *See* DI 79. Ms. Alvarado's witnesses were known to all parties and the same reasoning used to exclude Sergeant Ross did not apply those witnesses.

The exclusion of Sergeant Ross was therefore well within our discretion under Rule 37(c)(1), which authorizes exclusion of evidence where a party fails to comply with Rule 26(a) or (e) unless the failure was substantially justified or is harmless. *See Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) (explaining that Rule 37 is discretionary but "is designed to provide a strong inducement for disclosure of Rule 26(a) material" (quoting *Harlow v. Eli Lilly & Co.*, 1995 WL 319728, at *2 (N.D. Ill. May 25, 1995)); *Konstantopoulos*, 112 F.3d at 719 (3d Cir. 1997) (finding exclusion was not an abuse of discretion when "counsel did not advise opposing counsel that Dr. Jemail would be called as an expert witness until a pretrial conference . . . approximately three weeks prior to the scheduled trial date"). And importantly, defendants made no showing that their failure to identify Sergeant Ross was justified or that permitting Sergeant Ross to testify without notice to Ms. Alvarado would not have prejudiced Ms. Alvarado.

Accordingly, the exclusion of Sergeant Ross's testimony provides no basis for a new trial.

### iii. Ms. Alvarado's use of exhibits did not violate disclosure obligations or unfairly surprise defendants

To obtain relief under Rule 59 for evidentiary rulings or procedural irregularities, defendants bear the burden of showing not just error, but that the error was "so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." *See Marcum*, 658 F. Supp. 3d at 265 (quoting *Price v. Trans Union, L.L.C.*, 839 F. Supp.2d 785, 792 (E.D. Pa. 2012)); *Forrest*, 424 F.3d at 349. Defendants argue that Ms. Alvarado improperly used exhibits at trial without adequate disclosure, citing an overbroad pretrial exhibit list, late narrowing of that list, and the introduction of exhibits after Ms. Alvarado had rested. *See* DI 134 at 17-20. But defendants fail to explain how any of these alleged lapses affected the outcome of the trial, only referring to surprise and prejudice in a conclusory manner without explaining how any error or admission impaired their ability to present a defense or undermined the fairness of the proceeding. Because defendants fail to meet their burden to demonstrate sufficiently prejudicial error, we will not order a new trial under Rule 59(a)(1)(A).

Defendants identify several issues with Ms. Alvarado's use of trial exhibits. They complain that Ms. Alvarado's original exhibit list, submitted with the joint pretrial memorandum, was overbroad and included nearly the entirety of her discovery production. *See* DI 134 at 17-20. They also argue that Ms. Alvarado failed to provide a timely, narrowed version of that list and that certain exhibits were admitted after she had rested her case. *Id.* But we addressed each of these concerns before and during trial, and defendants fail to show how any of these matters prejudiced their ability to defend the case or affected the jury's verdict.

At the final pretrial conference, we instructed Ms. Alvarado to narrow her list and provide greater specificity, and to submit all documents that were relied upon by her expert. DI

22

118 at 81:6-82:18.  When issues resurfaced on the first day of trial, we directed Ms. Alvarado to

submit a pared-down list by 8:00 p.m. that evening.  *See* DI 87; DI 121 at 19:7-14.  Ms.

Alvarado further agreed to request permission from the court before presenting exhibits to the

jury and to clear every exhibit with defense counsel prior to presentation.  *See* DI 120 at 15:13-

22, 51:16-52:3, 162:2-165:1, 204:6-21; DI 121 at 4:19-15:3.  Ms. Alvarado complied with these

directives.  From that point forward, exhibits were vetted by defendants' counsel and no further

procedural irregularities were raised.  Defendants now object that the narrowed list was not

finalized until the second day of trial and that Ms. Alvarado's delay in producing documents was

prejudicial, but they identify no exhibit they had not already received in discovery, no exhibit

they were unable to respond to, and no instance in which the timing of disclosure affected their

ability to present their case.  Thus, defendants' generalized objections regarding timing are not a

basis for granting a new trial.

> iv.  *The admission of evidence related to Ms. Alvarado's dog and the denial*
> *of bifurcation were proper and not prejudicial*

Defendants argue that they were unfairly prejudiced by the admission of photographs

and testimony concerning Ms. Alvarado's deceased dog, Akuma.  They further argue that we

erred in denying their request to bifurcate the trial into separate liability and damages phases.

We disagree with both arguments.

Although we ruled before trial that the shooting of Akuma did not constitute an

independent Fourth Amendment violation, we also held that Ms. Alvarado could offer evidence

of the shooting and its aftermath to support her claim for emotional damages resulting from the

unconstitutional entry into her home.  *See* DI 38 at 20 n.19.  Ms. Alvarado testified that she

heard the shot that killed Akuma from a close distance, and that she later saw Akuma's body.

DI 122 at 198:20-204:25, 212:1-222:2.  That experience was directly tied to the unlawful search, and the jury was entitled to consider it as part of the injury caused by defendants' conduct. *See City of Los Angeles v. Mendez*, 581 U.S. 420, 430-31 (2017) (holding that § 1983 claims are a species of tort, and a plaintiff may "recover damages that are proximately caused by any Fourth Amendment violation" (citing *Heck v. Humphrey*, 512 U.S. 477, 483 (1994)); *see also Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000) (holding that "[v]ictims of unreasonable searches . . . may recover damages directly related to the invasion of their privacy," including damages outside of just physical injury and damage to property (quoting *Townes v. City of New York,* 176 F.3d 138, 148 (2d Cir. 1999))); *Kornegay*, 120 F.3d at 396, 399 (3d Cir. 1997) (finding that emotional harm, stemming from the individual's right of privacy and the sanctity of their home, is part of what the Fourth Amendment was intended to protect).

The photograph of Akuma was admitted for this limited purpose, and we took steps to ensure the jury did not rely on it for any improper reason.  We gave clear limiting instructions, both at the outset of trial and again during the final charge, explaining that Officer Song's shooting of the dog was not before the jury for purposes of liability, and that the jury could consider evidence of Akuma's death only in assessing damages if it first found a constitutional violation.  DI 120 at 22:21-23:9; DI 124 at 23:15-24:5.  In response to a misunderstanding between opposing counsel during trial that briefly led to the display of a second (similar) dog photo to the jury, we issued a curative instruction making clear that jurors should disregard any material not properly admitted.  DI 121 at 4:19-15:3, 31:8-32:2.  Defendants do not point to any evidence suggesting these measures were insufficient or that the jury was confused.

The argument that the dog-related evidence was unfairly prejudicial under Federal Rule

of Evidence 403 also fails.  Rule 403 allows exclusion only where the risk of unfair prejudice "substantially outweighs" the evidence's probative value.  We must apply this standard sparingly, and that the balance "should be struck in favor of admissibility."  *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992); *United States v. Guerrero*, 803 F.2d 783, 785 (3d Cir. 1986).  That some evidence may evoke a strong emotional response does not render it unfairly prejudicial — particularly where the emotional response reflects the actual injury alleged.  All graphic or emotional evidence in personal injury cases carries some prejudicial weight, but that prejudice is balanced here because the evidence reflected the reality of Ms. Alvarado's experience and thus was highly probative evidence of damages.

Defendants' final argument — that we should have bifurcated the trial to prevent the jury from considering the dog evidence before reaching a verdict on liability — is likewise unavailing.  Bifurcation is not the norm and should be ordered only where it would promote judicial economy and avoid unfair prejudice.  *See Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978) ("[S]eparation of issues for trial is not to be routinely ordered." (quoting Fed. R. Civ. P. 42(b) advisory committee's note to the 1966 Amendment)).  Courts in this Circuit have repeatedly rejected the idea that potentially sympathetic evidence requires bifurcation.  *See, e.g., Grosek v. Panther Transp., Inc.*, 2009 WL 905035, at *2 (M.D. Pa. Apr. 1, 2009) (rejecting bifurcation and trifurcation where plaintiff was severely injured in a car accident); *Marshall v. Overhead Door Corp.*, 131 F.R.D. 94, 97-98 (E.D. Pa. 1990) (rejecting bifurcation because "emotional overtones" were not unique or unusually prejudicial).  There was no reason to depart from that general rule here, and our instructions provided the proper remedy.  *See Sweigart v. Voyager Trucking Corp.*, No. 23-2397, 2024 WL 3565306, at *3 (3d Cir. July 29, 2024) ("We

25

must 'presume that the jury follow[ed] such instructions' to 'compartmentalize the evidence.'" (quoting *United States v. Urban*, 404 F.3d 754, 776 (3d Cir. 2005)).

Ultimately, defendants have not shown how the jury's exposure to evidence of Akuma's death affected its liability findings. The fact that the verdict presumably includes the cost to cremate Ms. Alvarado's dog only shows that the jury may have considered that amount for damages, which they were permitted to do. Nor have defendants identified any specific prejudice resulting from this evidence that would justify a new trial. The evidence was relevant, its use was controlled, and appropriate limiting instructions were given. No further action is warranted under Rule 59.

> v. *Ms. Alvarado's counsel did not engage in misconduct that warrants a new trial*

Defendants argue that a new trial is warranted based on allegedly improper statements made by Ms. Alvarado's counsel during closing argument. Defendants assert that Ms. Alvarado's counsel improperly shifted the burden of proof by commenting on the absence of City witnesses and that he made an inappropriate appeal to the City's financial resources. DI 134 at 16-17, 23-24. Neither assertion supports granting relief under Rule 59.

With respect to the burden-shifting argument, Ms. Alvarado's counsel noted during closing that defendants did not offer a witness to testify in rebuttal to Ms. Alvarado's *Monell* claim, alluding to the excluded witness Sergeant Ross. DI 124 at 92:5-93:1. The remark neither misstated the law nor implied that defendants bore the burden of proof; it merely accurately characterized the record. The jury received correct instructions on the applicable burdens, eliminating any risk of confusion. *See id.* at 16:15-17:5. Although it is true that we excluded Sergeant Ross on Rule 26 grounds, defendants cite no authority forbidding counsel from

pointing out a failure to produce evidence, and we find nothing improper in counsel's accurate observations of the record in closing.  Nor did defendants persuasively argue that the statement would be unfairly prejudicial even if it were improper.

Defendants also argue that Ms. Alvarado's counsel improperly invoked the City's financial resources during rebuttal.  But the record shows that is a mischaracterization.  Defense counsel said in its closing, "They don't want to put a number in your head.  They want you to run away on emotions."  DI 124 at 107:11-108:3.  Ms. Alvarado's counsel, in response to that statement, said, "we're not allowed to tell you how deep the pockets of Philadelphia are.  'Hey, look at what the pocket is.  Now, go ahead and —' we're not allowed to do all of that.  You're supposed to dispassionately look at the evidence, go with your feeling, and put down what you feel is appropriate, given the harm, and given the recklessness of their actions."  DI 124 at 126:21-127:9.  Ms. Alvarado's counsel statement was not an invitation to consider the City's financial status, in fact it told the jury to do the opposite.  Moreover, the statement was a direct rebuttal to the suggestion that Ms. Alvarado was appealing to emotion or relying on the jury's sympathies.  Counsel was entitled to respond, and he did so while expressly telling the jury not to base its verdict on extraneous factors like the City's resources.  No curative instruction was requested, and defendants raised no contemporaneous objection during or immediately after closing.

A party seeking a new trial must show that doing so is "*necessary* to prevent a miscarriage of justice."  *Roebuck*, 852 F.2d at 735-36 (emphasis added).  Defendants have failed to meet that burden.  Their objections overlook the context in which the challenged remarks were made and do not explain how those comments influenced the verdict.  Thus, we find no

misconduct in Ms. Alvarado's closing or rebuttal, and no basis for disturbing the jury's verdict.

### C. We will not remit the award because it is supported by the evidence and defendants did not demonstrate that it shocks the conscience

Defendants alternatively move for remittitur, arguing that the jury's $1,000,143.50 damages award against the City of Philadelphia is legally inconsistent, unsupported by the evidence, and tainted by prejudice. *See* DI 134 at 34-35. They contend that it was impermissible for the jury to assign compensatory damages to the City while awarding none against the individual officers, that the amount awarded was excessive considering the evidence presented, and that the verdict was improperly influenced by emotional reactions to the images and video of Ms. Alvarado's deceased dog, Akuma. *See id.*

The parties did not do much to help us here. Defendants cite no law to support their motion for remittitur, and Ms. Alvarado asserts that Pennsylvania state law should govern remittitur but does not offer any legal support for that assertion. *See id.*; DI 138-1 at 29-30. This case was brought pursuant to 42 U.S.C. § 1983, we have federal question jurisdiction over this case, and all damages are based on the violations of the Fourth Amendment of the United States Constitution. *See* DI 58 at 1; DI 107. We fail to see why Pennsylvania state law is implicated in this case and why it would have any bearing on remittitur, thus we apply federal law.[3] *Cf. Carey v. Piphus*, 435 U.S. 247, 254-57 (1978) (holding that damages in a § 1983 should compensate the plaintiff "for injuries caused by the deprivation of constitutional rights").

---

[3] We note that the Third Circuit has recognized that the Pennsylvania standard for remittitur and the federal standard are substantially the same. *See Olechna v. Dinoia*, 45 F. App'x 98, 100 n.3 (3d Cir. 2002) ("[T]he standard for denying a new trial under Pennsylvania law is substantially similar to the standard under federal law."); *Marcum*, 658 F. Supp. 3d at 268 n.11.

A remittitur under Rule 59(e) is appropriate when "a decision of the jury is clearly unsupported and/or excessive." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715-16 (3d Cir. 2010) (quoting *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir.1986)). We "*may not* vacate or reduce the award merely because [we] would have granted a lesser amount of damages." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989). We will alter the jury's verdict only if the damages are "so unreasonable as to offend the conscience of the Court." *Id.* (quoting *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979)). "Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy — including (where appropriate) damages for physical injury, property damage, injury to reputation, etc. . . ." *Hector*, 235 F.3d at 157 (quoting *Townes*, 176 F.3d at 148).

Ms. Alvarado provided very little, if any, support for a finding of a physical injury but she may still recover for property damage and emotional distress resulting from the unreasonable search and the City's failure to train. *See Sample v. Diecks*, 885 F.2d 1099, 1112 (3d Cir. 1989) (holding that we should not "require[] an accountant's methodology" of the harm suffered from a violation of a constitutional right). Her damages claim primarily stemmed from the killing of her dog and the emotional distress she endured, and continues to endure, as a result of the unconstitutional entry into her home. Defendants, as the moving party, make a conclusory argument that hardly addresses the facts of the case and only engages with the governing legal standard at a superficial level. *See* DI 134 at 34-35. They ask us to overturn a jury verdict — an extraordinary remedy — but devote a single paragraph to their argument that the verdict is unsupported by the record and excessive under applicable law. *See* DI 134 at 35;

29

*Motter*, 883 F.2d at 1230 ("In reviewing the propriety of a jury verdict, our obligation is to uphold the jury's award if there exists a reasonable basis to do so."); *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 351-52 (3d Cir. 2001) (holding that courts should seek to preserve the jury's verdict).

Ms. Alvarado, in contrast, points to specific testimony and trial evidence that support the jury's damages award — including testimony from Dr. Valliere, Ms. Alvarado's sister Yara, and Ms. Alvarado's own description of hearing the gunshot, finding her dog's body, and the lasting emotional impact of the entry. *See* DI 138-1 at 30-33. She also cites a decision from the Pennsylvania Superior Court involving similar facts and a comparable damages award. *Id.* at 32 (citing *Bailets v. Pa. Tpk. Comm'n*, 181 A.3d 324, 326, 335-336 (2018) (upholding a verdict finding liability under the Pennsylvania Whistleblower Law that awarded $1.6 million in non-economic damages due to hardships suffered after being fired, "such as embarrassment, humiliation, loss of reputation and mental anguish")); *see Motter*, 883 F.2d at 1230 ("[A]n examination of awards in other cases involving similar injuries serves as a helpful guide . . . . We are nonetheless mindful that each verdict revolves around a unique set of facts and circumstances."); *Harker v. Chan*, No. 15-277, 2018 WL 3599734, at *13 (W.D. Pa. July 27, 2018). While state law does not govern this issue, the principles for evaluating excessiveness are materially the same between the Pennsylvania and federal standards, and Ms. Alvarado's example is sufficiently similar to reinforce our finding that the verdict here was within the bounds of reason. *See Olechna*, 45 F. App'x at 100 n.3.

Defendants additionally argue that the verdict is internally inconsistent because the jury imposed no compensatory damages on the individual officers yet awarded more than $1 million

against the City.  *See* DI 134 at 34-35.  They cite no authority for this proposition, and we disagree with their reasoning.  The jury found that the officers violated Ms. Alvarado's Fourth Amendment rights and awarded nominal damages, and it separately found that the City's failure to train caused the same constitutional injury and therefore awarded compensatory damages under *Monell*.  *See* DI 107.  A sensible reading of the verdict is that the jury viewed the City's training deficiencies as the primary cause of Ms. Alvarado's harm while considering the officers' individual culpability minimal.  Defendants do not point to anything in the record that contradicts that interpretation.  We therefore decline to disturb the jury's award on this ground either.

Defendants do not offer a substantive basis for us to conclude that the verdict is unsupported by the evidence or so excessive as to "offend the conscience of the Court."  *Motter*, 883 F.2d at 1230.  Therefore, their alternative motion for remittitur is denied.

## III.    <u>Conclusion</u>

For the foregoing reasons, Defendants' motion for judgment as a matter of law, for a new trial, and for remittitur is denied in its entirety.  We will not disturb the final judgment currently on the docket.  *See* DI 109.